IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

DAVID DELL'AQUILA, on behalf of
himself and all others similarly situated,

Case No. _____

Plaintiffs,

v.

JURY TRIAL DEMANDED

3-19-0679

WAYNE LaPIERRE, the NATIONAL
RIFLE ASSOCIATION OF AMERICA, a
New York not-for-profit corporation, and
the NRA FOUNDATION, INC., a
Washington, D.C. not-for-profit
corporation,

Defendants.

## CIVIL COMPLAINT

The Plaintiff, David Dell'Aquila, individually and on behalf of himself and all those similarly situated, files this Complaint, by and through counsel, against Wayne LaPierre, the National Rife Association of America, a New York not-for-profit corporation, and the NRA Foundation, Inc., a Washington, D.C. not-for-profit corporation. In support hereof, the Plaintiff states as follows:

### Parties & Jurisdiction

1. The Plaintiff, David Dell'Aquila, is an adult individual residing at 862 Bresslyn Road, Nashville, TN 37205.

2. Defendant, Wayne LaPierre, is the Chief Executive Officer of the National Rifle Association ("LaPierre"). He maintains an office address at National Rifle Association of America, 11250 Waples Mill Road, Fairfax, VA 22030.

3. Defendant, National Rifle Association of America, is a New York not-for-profit corporation (the "NRA"). The NRA has a registered office at c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

4. Defendant, the NRA Foundation, Inc., is a Washington, D.C. not-for-profit corporation (the "NRA Foundation"). The NRA Foundation has a registered office at c/o Corporation Service Company, 1090 Vermont Avenue, N.W., Washington, D.C. 20005.

5. The Plaintiff is asserting jurisdiction in this Court pursuant to 28 U.S.C. § 1332, on grounds of diversity of citizenship between the parties. The amount in controversy is greater than $75,000.

## Background

6. This is a class action lawsuit for fraud in the solicitation of donations by the Defendants Wayne LaPierre, the National Rifle Association of America, and the NRA Foundation, Inc.

7. Plaintiff Dell'Aquila is a longtime donor and supporter of the NRA. Until recently, he had pledged to give seventy-five percent of his estate to the NRA and its subsidiaries, upon his death. Over the last four years, Dell'Aquila has given approximately $100,000 to the organization in the form of cash donations and gifts in kind. These donations were made to both the NRA and the NRA Foundation.

8. This complaint seeks the certification of two classes of Plaintiffs.

9. The first class is defined as all persons residing in the United States who have donated funds to the NRA from January 1, 2015 to the present (the "NRA Class").

10. The second class is defined as all persons residing in the United States who have donated funds to the NRA Foundation from January 1, 2015 to the present (the "NRA Foundation Class").

2

11. During such periods of time, Defendants solicited donations from Dell'Aquila and the members of the two Plaintiff Classes. In their solicitations, Defendants alleged that the donations would be used for gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States (collectively, the "NRA's core mission").

12. During the past three months, Plaintiff Dell'Aquila has learned that the solicitations that Defendants' made to the Plaintiff Classes concerning the proposed uses of the donated funds were intentionally and materially false.

13. Instead of spending the donated money on the solicited purposes, Defendants used significant portions of the donated funds for purposes unrelated to the NRA's core mission.

14. Plaintiff Dell'Aquila has learned this information from an investigation conducted by the NRA's former President, Lt. Col. Oliver North ("North").

15. North served as President of the NRA from September 2018 through April 2019.

16. After becoming President of the NRA, North learned of possible material financial misconduct by the NRA.

17. First, North learned that the NRA was paying its outside counsel, Texas attorney William Brewer, about $2 million per month. These expenditures had not been properly authorized by the NRA, or documented by the Brewer law firm. North further learned that the NRA had paid roughly $20 million to Brewer from April 2018 through March 2019. When North and others requested to see the invoices relating to these extraordinary payments, Defendants LaPierre and the NRA repeatedly denied North access to the information.

18. Second, on April 17, 2019, North learned of allegations in the New Yorker magazine that raised concerns about possible mismanagement of NRA funds. The New Yorker article quoted a former head of the IRS Exempt Organizations division as stating: "The litany of

3

red flags is just extraordinary;" and "The materials reflect one of the broadest arrays of likely transgressions that I've ever seen."

19. Third, on April 22, 2019, North learned of allegations that, over a period of years, LaPierre had received hundreds of thousands of dollars in clothing, private jet travel, and other personal benefits that were paid for by an NRA vendor. These reimbursements were not included as part of LaPierre's compensation on IRS Form 990, filed by the NRA.

20. North pressed the NRA to investigate the above allegations. North initially raised his concerns through internal-NRA channels, including the NRA's Audit Committee.

21. On April 18, 2019, North wrote a letter to the General Counsel of the NRA and to the Chairman of the Audit Committee, explaining his concerns with the NRA's multi-million dollar monthly payments to attorney Brewer. In that letter, North requested that the NRA conduct an outside, independent review of the millions of dollars in payments to Brewer.

22. On April 25, 2019, North wrote another letter -- this time to the Executive Committee of the NRA Board of Directors. In that letter, North stated his intention to form a "Crisis Management Committee," to investigate the allegations of extraordinary spending by the NRA.

23. Each time that North raised concerns about potential financial misconduct and tried to retain professionals to correct any wrongdoing, North's efforts were thwarted by Defendant LaPierre and the NRA's outside counsel, Brewer. Ultimately, LaPierre managed to shut down North's Crisis Management Committee. As of this date, there has been no independent investigation of the NRA's spending.

24. Meanwhile, LaPierre retaliated against North for attempting to investigate the organization's spending.

4

25. On April 24, 2019, LaPierre blocked North's re-nomination as President of the NRA, at the national convention for the NRA, held in Indianapolis, Indiana. Ultimately, North was forced out of the office of President.

26. On May 13, 2019, LaPierre sent a letter to North denying him indemnification for any legal issues that might arise, in connection with the growing number of state and federal investigations into the NRA.

27. On June 25, 2019, LaPierre terminated the NRA's agreement with its longtime public-relations agency, Ackerman McQueen.

28. Ackerman McQueen responded to the breach by disclosing information concerning certain financial improprieties raised in this lawsuit.

## Class Action Allegations

29. Pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, the Plaintiff brings this action on behalf of himself and two nationwide classes of Plaintiffs.

30. The first class of similarly situated persons is defined as: all persons residing in the United States who have donated funds to the NRA from January 1, 2015 to the present (the "NRA Class").

31. The second class of similarly situated persons is defined as: all persons residing in the United States who have donated funds to the NRA Foundation from January 1, 2015 to the present (the "NRA Foundation Class").

32. Excluded from each nationwide class are the Defendants, their legal representatives, heirs, successors, and assigns of Defendants, and all judges who may ever adjudicate this case.

33. This action is brought as a class action and may be so maintained pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure. The Plaintiff reserves the right to modify the two nationwide classes.

34. <u>Numerosity of the Nationwide Classes</u>: Each nationwide Class is so numerous that the individual joinder of all members, in this or any action is impracticable. The exact number of Class members is presently unknown to the Plaintiff; however, it is believed that the NRA Class numbers at least five million persons. The identity of the members of each class and their addresses maybe ascertained from the business records maintained by the NRA and the NRA Foundation. Class members may be informed of the pendency of this action by a combination of e-mail and/or public notice.

35. <u>Commonality</u>: There is a well-defined community of interest in the questions of law and fact involved affecting the members of each Class. These common legal and factual questions for the case involving the NRA Class include:

   a. Whether the Plaintiffs gave money to the NRA with the expectation that such funds would be spent to promote the NRA's core mission.

   b. Whether the NRA misspent such money, on matters unrelated to the NRA's core mission described in Defendants' solicitations.

   c. Whether Defendants LaPierre and the NRA should be liable to repay Plaintiffs the amount of their donations, together with costs and punitive damages.

36. These common legal and factual questions for the case involving the NRA Foundation Class include:

   a. Whether the Plaintiffs gave money to the NRA Foundation with the expectation that such funds would be spent to promote the NRA's core mission.

   b. Whether the NRA Foundation misspent such money, on matters unrelated to the NRA's core mission described in Defendants' solicitations.

   c. Whether Defendants LaPierre and the NRA Foundation should be liable to repay Plaintiffs the amount of their donations, together with costs and punitive damages.

6

37. <u>Typicality</u>: Plaintiff Dell'Aquila's claims are typical of the claims of the members of the NRA Class and the NRA Foundation Class. Dell'Aquila and each member of the NRA Class has, by definition, given funds to the NRA during the period from January 1, 2015 to the present. Dell'Aquila and each member of the NRA Foundation Class has, by definition, given funds to the NRA Foundation during the period from January 1, 2015 to the present. Plaintiff Dell'Aquila and all members of the each class have suffered similar harm arising from Defendants' violations, as alleged herein.

38. <u>Adequacy</u>: Plaintiff Dell'Aquila is an adequate representative of the NRA Class and the NRA Foundation Class because his interests do not conflict with the interests of the members of the classes he seeks to represent. Plaintiff Dell'Aquila intends to prosecute this action vigorously. Dell'Aquila will fairly and adequately protect the interest of the members of the Class.

39. <u>Predominance and Superiority</u>: This suit may also be maintained as a class action under pursuant to Rule 23(b)(3) of the Federal Rule of Civil Procedure because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member, depending on the circumstances, may be relatively small or modest, especially given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Furthermore, it would be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Moreover, even if Class members themselves could afford such individual litigation, the court system could not. Individual litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expenses to all parties and the court system presented by the complex legal issues of the case. By contrast, the class action device presents far fewer management difficulties and

7

Case 3:19-cv-00679    Document 1    Filed 08/06/19    Page 7 of 12 PageID #: 7

provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I

### Fraud

### Dell'Aquila and NRA Class
### v. LaPierre and the NRA

40.     The Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

41.     During the period from January 1, 2015 to the present, Defendants LaPierre and the NRA solicited funds from Plaintiff Dell'Aquila and each member of the NRA Class.

42.     When soliciting such funds, Defendants LaPierre and the NRA advised Plaintiffs that their funds would be used for gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States (collectively, the "NRA's core mission").

43.     Plaintiff Dell'Aquila and each member of the NRA Class reasonably relied upon the statements made by Defendants concerning the proposed use of the solicited funds.

44.     As a result of such reliance, Plaintiff Dell'Aquila and each member of the NRA Class donated funds to the NRA during the time period from January 1, 2015 to the present.

45.     Defendants' statements concerning the use of the solicited funds were materially false. In reality, the NRA used the solicited funds for alternative purposes, including without limitation, the following:

    a.    By spending over $97,000 per day for the legal services of William A. Brewer, III during the first quarter of 2019, without obtaining documentation justifying such expense.

b. By spending approximately $2 million per month for the legal services of the Brewer, over a thirteen-month period, without obtaining documentation justifying such expense.

c. By spending $274,695 for clothing purchases for Defendant LaPierre from a Beverly Hills clothing store, without reporting such expenses as income for LaPierre in the reports filed by the NRA with the Internal Revenue Service (the "IRS").

d. By spending $243,644 on luxury travel for Defendant LaPierre to the Bahamas; Palm Beach; Los Angeles; Reno, Nevada; Budapest, Hungary; and Italy, without reporting such compensation as income for LaPierre in the reports filed by the NRA with the IRS.

e. By making inflated payments to the NRA's advertising agency, Ackerman McQueen, without obtaining documentation justifying such expense.

f. By spending $5,446.16 per month for a luxury apartment for Megan Allen, an intern in Fairfax, Virginia.

g. By spending funds for a board meeting for the NRA, to be held in Alaska, rather than in Fairfax, Virginia.

h. By paying Defendant LaPierre an annual salary of $1.4 million.

46. Plaintiff Dell'Aquila and each member of the NRA Class has incurred damages as a result of the NRA's expenditures, unrelated to its mission.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter an order (a) certifying the NRA Class as a Class of Plaintiffs in this matter pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, and (b) awarding to Dell'Aquila and each member of the NRA Class damages equal to the amounts such persons donated to the NRA during the period from January 1, 2015 to the present, together with costs, punitive damages and attorneys fees.

## COUNT II

## Fraud

## Dell'Aquila and NRA Foundation Class
## v. LaPierre and the NRA Foundation

47. The Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

48. During the period from January 1, 2015 to the present, Defendants LaPierre and the NRA Foundation solicited funds from Plaintiff Dell'Aquila and each member of the NRA Foundation Class.

49. When soliciting such funds, Defendants LaPierre and the NRA Foundation advised Plaintiffs that their funds would be used for gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States (collectively, the "NRA's core mission").

50. Plaintiff Dell'Aquila and each member of the NRA Foundation Class reasonably relied upon the statements made by Defendants concerning the proposed use of the solicited funds.

51. As a result of such reliance, Plaintiff Dell'Aquila and each member of the NRA Foundation Class donated funds to the NRA Foundation during the time period from January 1, 2015 to the present.

52. Defendants' statements concerning the use of the solicited funds were materially false. In reality, the NRA Foundation used the solicited funds for alternative purposes, including without limitation, the following:

   a. By transferring approximately $80 million from the NRA Foundation (a tax-deductible charitable organization) to the NRA (a non-tax-deductible lobbying organization) over a ten-year period. Such funds then became subject to the financial improprieties described in Count I of this Complaint and jeopardized the tax-deductibility of the donations made by Plaintiffs.

b. By paying $425,000 *per year* for nine years to the Speedway Children's Charity, a non-profit organization not related to the NRA's core mission.

c. By paying at least $125,000 to Youth for Tomorrow, a non-profit organization not related to the NRA's core mission. Defendant LaPierre's wife, Susan LaPierre, served on the board of Youth for Tomorrow, and was its President from 2013 to 2018.

53. Plaintiff Dell'Aquila and each member of the NRA Foundation Class has incurred damages as a result of the NRA's Foundation's expenditures, unrelated to its mission.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter an order (a) certifying the NRA Foundation Class as Class of Plaintiffs in this matter pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, and (b) awarding to Plaintiff Dell'Aquila and each member of the NRA Foundation Class damages equal to the amounts such persons donated to the NRA Foundation during the period from January 1, 2015 to the present, together with costs, punitive damages and attorneys fees.

Respectfully submitted,

By: *David Dell'Aquila*
David Dell'Aquila

862 Bresslyn Road
Nashville, TN 37205
Phone: (615) 924-4295
E-mail: daquila862@gmail.com

## **VERIFICATION**

I, David Dell'Aquila, hereby swear and affirm that I have read the foregoing Complaint, and that the allegations and facts set forth in the Complaint are true and correct, to the best of my knowledge, information and belief.

_____
David Dell'Aquila