IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DAVID DELL'AQUILA, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| - against - | ) No: 3:19-cv-00679 ) Judge William L. Campbell Jr. ) |
| WAYNE LAPIERRE, NATIONAL RIFLE ASSOCIATION OF AMERICA, and NRA FOUNDATION, INC. | ) Magistrate Judge Jefferey S. Frensley ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE NRA'S MOTION TO DISMISS**

W. Allen McDonald
LACY, PRICE & WAGNER PC
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
(865)-246-0800

BREWER, ATTORNEYS & COUNSELORS
William A. Brewer (*pro hac vice* motion pending)
750 Lexington Avenue, 14th Floor
New York, NY 10022
(212)-489-1400

*ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................1
II. STATEMENT OF RELEVANT FACTS ....................................................................2
III. ARGUMENT................................................................................................................4
    A. Legal Standard for Motion to Dismiss......................................................................4
    B. Because Dell'Aquila Fails to Satisfy Rule 9(b) Pleading Requirements, All of His Claims Must Be Dismissed. ...........................................................................5
    C. Dell'Aquila Fails to Allege Common-Law Fraud (Or Fraudulent Inducement). .............................................................................................................6
        1. Falsity.............................................................................................................7
        2. Knowledge and Intent ...................................................................................8
        3. Reliance..........................................................................................................8
        4. Injury..............................................................................................................8
    D. Dell'Aquila Fails to Allege a RICO Violation. ........................................................9
        1. RICO Enterprise............................................................................................9
        2. Mail Fraud...................................................................................................10
IV. CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Bailey v. Memphis Bonding Company, Inc.*,
  2019 WL 1300092 (W.D. Tenn. Mar. 21, 2019) ................................................................11

*Baugh v. Novak*,
  340 S.W.3d 372 (Tenn. 2011) ..........................................................................................7, 8

*Blount Fin. Serv., Inc. v. Walter E. Heller & Co.*,
  819 F.2d 151 (6th Cir. 1987) ............................................................................................5, 6

*In re ClassicStar Mare Lease Litig.*,
  727 F.3d 473 (6th Cir. 2013) .............................................................................................10

*Coffey v. Foamex L.P.*,
  2 F.3d 157 (6th Cir. 1993) ....................................................................................................7

*Graham v. American Cyanamid Co.*,
  350 F.3d 496 (6th Cir. 2003) ................................................................................................9

*Hayes v. Burns*,
  2013 WL 4501464 (M.D. Tenn. Aug. 22, 2013) ...............................................................5, 6

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
  668 F.3d 393 (6th Cir. 2012) ................................................................................................9

*Kantz v. Rubin Lublin, PLLC*,
  2015 WL 1543531 (M.D. Tenn. Apr. 6, 2015) ..........................................................4, 5, 7, 11

*Moon v. Harrison Piping Supplies*,
  465 F.3d 719 (6th Cir. 2006) ................................................................................................9

*Pineda Transportation, LLC v. FleetOne Factoring, LLC*,
  2018 WL 2137760, at *5 (M.D. Tenn. May 9, 2018) .........................................................10

*Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*,
  447 F.3d 923 (6th Cir. 2006) ............................................................................................7, 8

*Smith v. Bank of America Corp*,
  485 Fed. Appx. 749, 752 (6th Cir. 2012) ..............................................................................5

*Tronsgard v. FBL Fin. Grp., Inc.*,
  312 F. Supp. 3d 982 (D. Kan. 2018) ..................................................................................10

*United States v. Frost*,
  125 F.3d 346 (6th Cir. 1997) ................................................................................................9

*Walburn v. Lockheed Martin Corp.*,
    431 F.3d 966 (6th Cir. 2005) ..................................................................................................6

*Zielger v. State of Michigan*,
    90 Fed. Appx. 808 (6th Cir. 2004)..........................................................................................1

**Statutes**

18 USC § 1341..............................................................................................................................2, 4, 9

18 USC § 1962(c) ...............................................................................................................................9

**Rules**

Federal Rule of Civil Procedure 9(b)..................................................................................2, 5, 9, 11

Federal Rule of Civil Prrocedure 12(b)(6)..........................................................................................4

Federal Rule of Civil Procedure 23(a) ...............................................................................................1

Federal Rule of Civil Procedure 23(b)...............................................................................................1

# I.

# PRELIMINARY STATEMENT

Earlier this year, Plaintiff David Dell'Aquila ("Dell'Aquila") embarked on a self-described "grass-roots effort" to impose personnel changes of his own upon the National Rifle Association of America (the "NRA").[1] At first, Dell'Aquila tried to rally NRA donors to withhold funds until his agenda was adopted. When that effort failed, Dell'Aquila filed this putative class action against the NRA, the NRA Foundation ("NRAF"), and NRA Executive Vice President and CEO Wayne LaPierre ("LaPierre"). Dell'Aquila's underlying grievances against the NRA's leadership are not only misguided but completely irrelevant here. To enlist the time and resources of this Court, Dell'Aquila must do more than offer vague, salacious accusations—he must satisfy federal pleading standards, including the heightened standards applicable to his fraud and RICO claims. That Dell'Aquila does not and cannot do.

On behalf of himself and two putative classes,[2] Dell'Aquila asserts that he donated to the NRA and the NRA Foundation based upon allegedly-false "solicitations" (made by unspecified persons, at unspecified times and places) that donor funds would be used to advance certain charitable purposes.[3] Without alleging that the NRA failed to fund those charitable purposes, Dell'Aquila accuses the NRA of fraud and racketeering based upon its alleged expenditures for

---

[1] Danny Hakim, "NRA Donor Directs a Revolt Against a 'Radioactive Leader," NYTIMES (July 2, 2019), https://www.nytimes.com/2019/07/02/us/nra-donors-wayne-lapierre.html
[2] Although a Rule 23 motion for class certification is not before the court, both of Dell'Aquila's classes, comprised of every American donor to the NRA or the NRAF since January 1, 2015, respectively, cannot meet the requirements imposed by the Federal Rules of Procedure. The putative classes fail the tests for all Rule 23(a) requirements and the predominance and superiority factor pursuant to Rule 23(b) on which Plaintiff bases them. Among other reasons, the putative classes fail because Dell'Aquila is a non-attorney, *pro se* plaintiff and therefore cannot adequately represent the classes. *See Zielger v. State of Michigan*, 90 Fed. Appx. 808, 810 (6th Cir. 2004).
[3] Complaint ¶ 11.

other, "alternative" purposes, including legal fees, advertising, and employee travel.[4] Dell'Aquila does not allege (nor can he) that the ordinary operational expenditures he attacks were inadequately disclosed in the NRA's financial statements. Nor does he allege that donations raised for specific programs or purposes were diverted.

Dell'Aquila fails to state a claim upon which relief can be granted for Counts I and III against the NRA for fraud and Violation of RICO, respectively. First, Dell'Aquila fails to plead the misrepresentation with particularity as required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). He fails to allege a single, specified misrepresentation by Defendants. That failure is fatal to both his fraud and RICO claims. Second, the Amended Complaint is devoid of allegations sufficient to satisfy the elements of a claim of fraud, including falsity of representation, knowledge, intent, reliance, or injury. Third, Dell'Aquila fails to properly plead a RICO violation, as he fails to allege a distinct enterprise and the elements of mail fraud pursuant to 18 USC § 1341. The Amended Complaint falls woefully short of its pleading requirements for each cause of action and therefore must be dismissed.

## II.

## STATEMENT OF RELEVANT FACTS

Plaintiff Dell'Aquila is an NRA donor. In early Summer of 2019, in the midst of the substantial media coverage of which the NRA has been the subject, Dell'Aquila embarked on a "grass-roots effort" to effect change at the NRA. As part of this effort, he appealed to other donors to withhold donations pending those "changes" coming into effect. Importantly, he sought

---

[4] Dell'Aquila bases his allegations in part on the inaccurate and self-serving assertions of former NRA President Lt. Col. Oliver North, who was ousted in the wake of a coup that included extortion demands made upon LaPierre for money in exchange for control of the NRA. The coup and the relationship between Lt. Col. North and the NRA have been the subject of extensive media coverage and multiple lawsuits currently pending in various jurisdictions.

2

attention from news outlets to spread his message.[5]  In early August of 2019, Dell'Aquila filed this lawsuit, earning more press coverage.[6]

In his Amended Complaint, Dell'Aquila alleges that Defendants solicited donations from himself and the members of two putative classes, consisting of all donors to the NRA and NRAF between January 1, 2015 and today.  Without specifying the identity of the speaker, the place of the statement, or the manner in which it was conveyed, Dell'Aquila alleges that Defendants advised that the donations would be used for "gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States," which he refers to as the "NRA's core mission." (the "Solicitations").[7]  These are Dell'Aquila's only allegations regarding a fraudulent statement (repeated in each Count).  He alleges that, in reliance on the Solicitations, Plaintiffs donated to the NRA and NRAF.[8]

Dell'Aquila asserts that he learned this information through media sources and an investigation conducted by the NRA's former President, Lt. Col. Oliver North ("North").[9]  Dell'Aquila seems to rely on the media coverage in the days leading up to and following North's ouster from his position, in the wake of an attempted coup that included extortion demands by North upon Defendant LaPierre offering money in exchange for control of the NRA.  The facts and circumstances surrounding these events are the subject of pending litigation.[10]

---

[5] Hakim, NYTIMES (July 2, 2019).
[6] Mark Maremont, "NRA Donor Files Suit Over CEO's Expenses," THE WALL STREET JOURNAL (Aug. 7, 2019), https://www.wsj.com/articles/nra-donor-files-suit-over-ceos-expenses-11565221846
[7] Complaint ¶¶ 42, 49, 57, 68.
[8] *See* Complaint ¶¶ 44, 51, 59, 70.
[9] *See* Complaint ¶¶ 12-19.
[10] *See* National Rifle Association of America v. Ackerman McQueen, Inc. et al. Civil Action No. 3:19-cv-02074-G (United States District Court for the Northern District of Texas – Dallas Division); National Rifle Association of America v. Ackerman McQueen, Inc. et al., Case No. CL19001757, CL19002067 (Va. Cir. Ct. Alexandria).

In support of his assertion that the Solicitations were intentionally false, Dell'Aquila alleges that Defendants used "significant portions of the donated funds for purposes unrelated" to the uses conveyed in the Solicitations.[11] As examples of allegedly fraudulent spending by Defendants, Dell'Aquila points to a number of expenditures, including: (1) fees and costs for legal services; (2) fees and costs for advertising and marketing services; (3) travel costs; and (4) charitable contributions, among others.[12]

Based on these allegations, Dell'Aquila asserts claims for fraud and racketeering, specifically mail fraud pursuant to 18 USC § 1341.

On August 6, 2019, Dell'Aquila filed this lawsuit on behalf of himself and all those similarly situated, forming two putative classes. On October 11, 2019, Dell'Aquila amended his complaint. On October 21, 2019, Dell'Aquila served the NRA. The NRA now files this motion to dismiss the Amended Complaint in its entirety.

### III.

### ARGUMENT

#### A. <u>Legal Standard for Motion to Dismiss.</u>

A complaint only survives a Rule 12(b)(6) motion to dismiss "if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[13] Although the court must accept a plaintiff's allegations as true on a motion to dismiss, the court "need not

---

[11] Complaint ¶ 13.
[12] *See* Complaint ¶¶ 45, 52, 60, 71.
[13] *Kantz v. Rubin Lublin, PLLC*, 2015 WL 1543531, at *7 (M.D. Tenn. Apr. 6, 2015) (quoting *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (internal citations and quotations omitted)).

4

accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."[14]

## B. Because Dell'Aquila Fails to Satisfy Rule 9(b) Pleading Requirements, All of His Claims Must Be Dismissed.

Where a plaintiff asserts a claim for fraud or a RICO claim sounding in fraud, plaintiff must state with particularity the circumstances constituting the fraud pursuant to Rule 9(b) or be dismissed.[15] In order to satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[16]

The allegations for each cause of action in the Amended Complaint fail each aspect of the Rule 9(b) pleading requirement. Dell'Aquila bases his fraud and mail fraud claims on an unspecified Solicitation, which he repeats uniformly for each Count, alleging that the NRA "advised Plaintiffs that their funds would be used for gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States," which he refers to collectively as the "NRA's core mission."[17] He alleges that, after Plaintiffs donated, the NRA and the NRAF used these funds for "alternative purposes," of which he identifies a handful.[18]

Dell'Aquila fails to specify the "time, place, and content" of the allegedly fraudulent misrepresentations.[19] A paraphrasing of Dell'Aquila's understanding of the NRA's goals or "core

---

[14] *Kantz*, 2015 WL 1543531, at *7 (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotations omitted)).
[15] *See Hayes v. Burns*, 2013 WL 4501464, at *5 (M.D. Tenn. Aug. 22, 2013) (fraud); *see also Blount Fin. Serv., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) (RICO).
[16] *Smith v. Bank of America Corp,* 485 Fed. Appx. 749, 752 (6th Cir. 2012) (internal citations and quotations omitted).
[17] Complaint at ¶¶ 42, 57.
[18] *See* Complaint at ¶¶ 45, 60.
[19] *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005); *Blount*, 819 F.2d at 152.

mission" is not a specifically identified statement made to Dell'Aquila upon which he may base a claim for fraud. He identifies no time or place of the alleged misrepresentation. He identifies no speakers.[20] Lastly, he offers no explanation beyond "broad and conclusory allegations" that the NRA or the NRAF are not fulfilling their core missions in allocating resources as their Boards and management saw fit.[21] Dell'Aquila fails to plead with particularity the fraud underlying the alleged common law fraud and mail fraud, requiring dismissal of those claims. Therefore, Dell'Aquila's Count I for Fraud and Count III for Violation of RICO must be dismissed.[22]

C. **Dell'Aquila Fails to Allege the Elements of Common-Law Fraud (Or Fraudulent Inducement).**

Although the Amended Complaint contains a Count for "Fraud," the assertions are more properly claims for fraudulent inducement. Under Tennessee law, a plaintiff asserting a claim for fraudulent inducement must establish that defendant "(1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance."[23] "Conclusory statements of reliance are not sufficient to explain with particularity how a plaintiff detrimentally relied on the alleged

---

[20] To the extent Dell'Aquila has identified Wayne LaPierre as a speaker, the NRA would dispute the veracity of this allegation. However, even accepting all of the allegations in the complaint as true, Dell'Aquila still fails to identify the time and manner of the alleged misrepresentation with respect to LaPierre.
[21] *Walburn*, 431 F.3d at 972.
[22] Dell'Aquila's *pro se* status does not save him. *See Hayes,* 2013 WL 4501464, at *5 ("Despite their pro se status, in the absence of particularized factual allegations supporting viable civil claims, Plaintiffs' disjointed legal arguments cannot salvage their complaint even under the most liberal construction") (dismissing fraud claims) (internal citations and quotations omitted).
[23] *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).

fraud."[24] Further, "reliance on a fraudulent misrepresentation must be reasonable; if one knows the truth and is not deceived, he is not defrauded."[25]

Where a fraud claim relates to the alleged promise of some future action by defendants, there must be a "misrepresentation[] made without the present intention to carry it out."[26] "Neither the failure to in fact keep the promise, nor the plaintiff's subjective impression will demonstrate that there was no present intention to carry out the promise."[27] Even if Dell'Aquila had adequately pleaded a fraudulent misrepresentation, he fails to properly plead the elements of a fraud claim.

### 1. Falsity

It is impossible to assess the veracity of the representation upon which Dell'Aquila bases this action because he does not identify an actual fraudulent statement. Notwithstanding that fatal pleading deficiency, Dell'Aquila's conclusory assertion that the Solicitations were false because the NRA spent resources in a way that Dell'Aquila does not believe meets the NRA's "core mission" is also insufficient. Not one of the "statements" identified by Dell'Aquila addresses how the NRA must allocate resources—that is up to the NRA's Board of Directors and management subject to their fiduciary duties and other applicable law. Thus, even if the representation or statement was pleaded adequately (and existed exactly as Dell'Aquila pleaded them), Dell'Aquila would still fail to meet the falsity requirement because he fails to allege why the expenditures do not meet the uses conveyed in the Solicitations. Though Dell'Aquila may disagree with the NRA's expenditures, the NRA's decision to devote certain resources as it sees fit is not actionable fraud. Moreover, although Dell'Aquila points to a handful of specific expenditures of which he

---

[24] *Kantz*, 2015 WL 1543531, at *6 (internal citations and quotations omitted).
[25] *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (internal citations and quotations omitted).
[26] *Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006).
[27] *Id.*

7

apparently does not approve, the vast majority of expenditures may very well fit his definition of the NRA's "core mission" and therefore representations regarding their intended use are not "false" (again, according to his definitions, which are not actionable statements by the NRA) and cannot constitute fraud.

### 2. Knowledge and Intent

In any event, Dell'Aquila fails to allege in more than a passing, conclusory assertion that the NRA knew of and intended the alleged falsity of its statements.[28] He does not allege that the NRA acted with an utter disregard for their truth, or that they intended to induce his reliance upon such alleged misrepresentations.[29] Moreover, he does not allege, as he must, that the NRA made a representation that at the time it did not intend to carry out.[30]

### 3. Reliance

Dell'Aquila fails to adequately allege that he reasonably relied upon what he describes as the NRA's "core mission." All nonprofits have expenditures to which, in the discretion of management, they must devote resources in order to function. Take, for example, Dell'Aquila's assertion that paying outside counsel was somehow fraudulent: It is not reasonable for Dell'Aquila to have donated money to the NRA (in reliance on what representations he has not alleged) and relied on the idea that the NRA would not pay lawyers to protect itself in litigation.

### 4. Injury

Dell'Aquila conclusorily asserts that he has been injured by the NRA's expenditures. Where there is no fraudulent misrepresentation, there can be no causation. Even assuming Dell'Aquila adequately pleaded a misrepresentation by the NRA, which he does not and cannot

---

[28] *See* Complaint ¶ 12.
[29] S*ee Baugh*, 340 S.W.3d at 388.
[30] *See SunTrust*, 447 F.3d at 931.

do, and assuming that he actually and reasonably relied upon that representation, which he does not, it is only the specific monies donated by Dell'Aquila and allegedly misapplied by the NRA that would qualify as the harm—a very small sum.[31]

The Amended Complaint's Count I for Fraud must therefore be dismissed.

## D. Dell'Aquila Fails to Allege a RICO Violation.

In order to plead a RICO violation under 18 USC § 1962(c), a plaintiff must adequately allege that defendant conducted an enterprise through a pattern of racketeering activity.[32] A RICO violation may be predicated on mail fraud. To state a claim for a mail fraud in violation of RICO pursuant to 18 USC § 1341, a plaintiff must allege (1) a scheme to defraud involving the use of mail (2) for the purpose of executing the scheme.[33] In pleading the predicate fraudulent misrepresentations, a plaintiff must meet the Rule 9(b) pleading standard, including time, place, and content.[34] A plaintiff alleging mail fraud "must also demonstrate *scienter* to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information."[35] In addition, the predicate act must be a "proximate cause" of the injury.[36]

Dell' Aquila fails to properly plead a RICO enterprise and fails to adequately allege the predicate acts of mail fraud, each of which is required to survive a motion to dismiss.

### 1. RICO Enterprise

A RICO "person" can be either an individual or a corporation, and a RICO "enterprise" may consist of any legal or *de facto* association. However, "[t]he enterprise itself is not liable for

---

[31] *See Graham v. American Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003).
[32] *See Moon v. Harrison Piping Supplies*, 465 F.3d 719, 723 (6th Cir. 2006).
[33] *See United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997).
[34] *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012).
[35] *Id.* at 404.
[36] *Id.* at 405.

9

RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable."[37] Accordingly, to establish RICO liability, a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."[38] This principle is known as the "non-identity" or "distinctiveness" requirement, and its consequence is that "a corporation may not be liable under [RICO] for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself."[39]

Dell'Aquila's Count III for RICO Violation asserts that the NRA, through its own employees, including Wayne LaPierre, conducted an enterprise in violation of RICO. Where, as here, a complaint "alleges an enterprise consisting of affiliated entities [and/or agents]," but fails to allege "that the entities were conducting the affairs of a separate 'enterprise,'" any RICO claims fail.[40] Dell'Aquila "cannot maintain an action against [the corporation] as both the 'enterprise' and the 'person' subject to liability under RICO."[41] That is, however, exactly what he has attempted to do. Dell'Aquila's RICO claim against the NRA must therefore be dismissed.

### 2. **Mail Fraud**

Further, a plaintiff alleging mail fraud must adequately allege a scheme to defraud, use of the mails in furtherance of the scheme, scienter, and proximate cause. As discussed above,

---

[37] *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013).
[38] *Id.*, citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).
[39] *Id.* (internal citations and quotation marks omitted); *see also Pineda Transportation, LLC v. FleetOne Factoring, LLC*, 2018 WL 2137760, at *5 (M.D. Tenn. May 9, 2018) (cannot allege simultaneously that "corporation is a RICO enterprise" and that "corporation is also a person illegally engaged in racketeering activity").
[40] *See, e.g.*, *Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 998 (D. Kan. 2018)
[41] *Bailey v. Memphis Bonding Company, Inc.*, 2019 WL 1300092, at *4 (W.D. Tenn. Mar. 21, 2019).

10

Dell'Aquila fails to meet Rule 9(b) particularity requirements for alleging the requisite predicate fraudulent statements. Dell'Aquila's failure to adequately allege the underlying fraudulent activity is fatal to his claim.[42] Further, the Amended Complaint's sole allegation of state of mind is that "the proposed uses of the donated funds were intentionally and materially false."[43] This conclusory allegation does not adequately plead recklessness or specific intent and is a classic example of a "legal conclusion masquerading as [a] factual allegation" and "will not suffice."[44] Lastly, Dell'Aquila clearly fails to allege, and cannot establish, proximate cause. Where there is no satisfactory allegation of a predicate fraudulent act, there can of course be no direct causal link between the defendant's conduct and the alleged injury.

Count III for Violation of RICO must therefore be dismissed.

## IV.

## CONCLUSION

For the foregoing reasons, the NRA respectfully requests that the Court dismiss Counts I and III of the Amended Complaint.

By:     */s/ W. Allen McDonald*
LACY, PRICE & WAGNER PC
W. Allen McDonald
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
(865)-246-0800

BREWER, ATTORNEYS & COUNSELORS

---

[42] *See* Section B, *supra.*
[43] Complaint ¶ 12.
[44] *Kantz*, 2015 WL 1543531, at *7.

William A. Brewer (*pro hac vice* motion pending)
750 Lexington Avenue, 14th Floor
New York, NY 10022
(212)-489-1400

*ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA*

**CERTIFICATE OF SERVICE**

   I do hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's electronic filing system. A copy was also sent via U.S. Mail to the following:

DAVID DELL'AQUILA
862 BRESSLYN RD.
NASHVILLE, TN 37205

Date: November 12, 2019

                */s/ W. Allen McDonald*
                W. Allen McDonald