UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID DELL'AQUILA, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:19-cv-00679 |
| WAYNE LAPIERRE, the NATIONAL RIFLE ASSOCIATION OF AMERICA, and the NRA FOUNDATION, INC., | ) ) ) ) ) | Judge Campbell Magistrate Judge Frensley JURY DEMAND |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF NRA FOUNDATION, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant NRA Foundation, Inc. ("NRA Foundation") respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint. As explained below, this Court should grant the NRA Foundation's Motion for three independent reasons: (1) Plaintiff lacks standing to challenge the NRA Foundation's administration of donated funds; (2) Plaintiff's Amended Complaint does not comply with the heightened pleading requirements of Rule 9(b); and (3) Plaintiff has not plausibly alleged the elements of his fraud and RICO claims (Counts II and IV).

## I. INTRODUCTION

Plaintiff's lawsuit is frivolous and lacks any legally cognizable claims against the NRA Foundation. All of Plaintiff's claims center around the allegation that he made <u>unrestricted</u> donations to the NRA Foundation based on supposedly false (but unidentified) "solicitations" that those funds would be used for certain purposes. Without alleging the NRA Foundation failed to

fund those purposes, Plaintiff alleges it still somehow misused some (but not all) donated funds by: (1) transferring money to the NRA (where it was allegedly misused) and (2) contributing to two youth-oriented nonprofits. These allegations do not give rise to any cause of action. As detailed below, the Court should dismiss the Amended Complaint against the NRA Foundation for three independent reasons:

**First**, Plaintiff lacks standing. Tennessee law states that a nonprofit corporation's authority to act may only be challenged by the Attorney General, a director, or member(s) in a derivative proceeding. Plaintiff is none of these things. Additionally, donors of unrestricted charitable funds lack standing to later challenge how those funds are administered.

**Second**, Plaintiff's Amended Complaint does not satisfy Rule 9(b)'s heightened pleading standards. Although Plaintiff allegedly made unrestricted donations to the NRA Foundation based on supposedly false or misleading "solicitations," he does not specify any statements, identify the speaker(s), or state where/when the statements were made.

**Third**, Plaintiff fails to plausibly allege the elements of his fraud and RICO claims. For example, he does not allege the NRA Foundation knowingly made any false representations. He also fails to allege any specific affirmative misrepresentations or identify any basis for inferring scienter (as required under RICO).

## II. FACTUAL ALLEGATIONS

Plaintiff purports to be a "longtime donor and supporter of the NRA." [D.E. 5, Am. Compl. at ¶ 7]. Over the last four years, he allegedly donated "approximately $100,000" to both the NRA and the NRA Foundation (although he does not provide any breakdown of these donations). [*Id.*]. Plaintiff does not allege, however, that he made any of these donations subject to any restrictions or reversionary interests. Thus, *all of Plaintiff's charitable donations were unrestricted gifts*.

2

Plaintiff alleges the NRA Foundation "solicited" these donations for use in gun safety education, promotion of shooting sports and hunter safety, fostering of wildlife conservation, and protection of gun ownership rights (what he calls the "NRA's Core Mission"). [*Id.* at ¶ 11]. All of Plaintiff's claims hinge on the allegation that the NRA Foundation used *some* (but not all) of these donated funds for other purposes. [*See id.* at ¶ 13 ("Instead of spending the donated money on the solicited purposes, Defendants used significant portions of the donated funds for purposes unrelated to the NRA's Core Mission."), ¶¶ 17-28]. As to the NRA Foundation, Plaintiff alleges the following uses of donated funds were somehow improper: (1) transferring money to the NRA (where it was then allegedly misapplied) and (2) contributing to two youth-oriented nonprofits. [*Id.* at ¶¶ 52, 71]. Plaintiff does not allege, however, that the NRA Foundation failed to disclose these expenditures or diverted funds raised for specific programs or purposes.

Plaintiff does not bring any individual causes of action. Instead, he seeks certification of two separate classes: (1) persons who donated funds directly to the NRA and (2) persons who donated funds to the NRA Foundation. [*Id.* at ¶¶ 30-31]. His Amended Complaint brings claims of fraud and RICO violations against all Defendants. [*Id.* at ¶¶ 40-75]. Plaintiff seeks restitution of all donated funds as well as costs, punitive damages, and attorney's fees (even though he filed his Amended Complaint *pro se*). [*Id.* at ¶¶ 11, 15].

### III. LEGAL STANDARDS

#### A. Article III Standing

"Standing is a jurisdictional requirement. If no plaintiff has standing, then the court lacks subject-matter jurisdiction." *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (citations omitted). Thus, courts should dismiss complaints for lack of subject matter jurisdiction under Rule 12(b)(1) if the plaintiff lacks standing

3

to bring suit. *See, e.g.*, *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) ("Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (citations omitted)); *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012) (affirming district court's grant of Rule 12(b)(1) motion to dismiss for lack of standing); *cf.* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Standing "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum of standing" requires a plaintiff to show three elements:

> [A] plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). When a case "is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 581 (1975)). "[I]n all standing inquiries, the critical question is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2000)) (emphasis in original).

**B.     Rule 12(b)(6)**

Dismissal pursuant to Rule 12(b)(6) is proper where a complaint lacks sufficient facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hensley Mfg. v. ProPride, Inc.*, 597 F.3d 603, 609 (6th Cir. 2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. That is, while a plaintiff need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded facts must be accepted as true, a "formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-247 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "[A] legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal quotations and citations omitted).

## IV. ARGUMENT

### A. Plaintiff Lacks Standing

#### *1. Plaintiff Lacks Standing to Challenge the NRA Foundation's Actions*

At bottom, Plaintiff contends that the NRA Foundation's use of *some* (but not all) donated funds for purposes outside the "NRA's Core Mission" is an *ultra vires* act. [*See* D.E. 5, Am. Compl. at ¶¶ 4, 11-28]. Under Tennessee law, however, a nonprofit corporation's authority to act may only be challenged by the Attorney General, a director, or by member(s) in a derivative proceeding. *See* Tenn. Code Ann. § 48-53-104. Because Plaintiff is none of these things, he lacks standing to challenge any of the NRA Foundation's actions. *See, e.g.*, *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 470 (Tenn. 2012) ("Tennessee law restricts the parties who may challenge corporate action on the ground that the corporation lacks or lacked power to so act. Those parties who may bring such challenges generally include the Attorney General and Reporter, a director of

the corporation, or a member of the corporation in a derivative proceeding. Simply put, [plaintiffs] are not qualified to assert that [defendant's actions are] invalid because such action violates its charter." (citing Tenn. Code Ann. § 48-53-104; 7A Fletcher Cyc. Corp. § 3448)); *State ex rel. Adventist Health Care Sys./Sunbelt Health Care Corp. v. Nashville Mem'l Hosp., Inc.*, 914 S.W.2d 903, 908 (Tenn. Ct. App. 1995) ("The plaintiffs . . . lack standing to bring any challenge to the sale . . . on grounds of either the reasonableness of the price or the corporation's power to sell . . . because they were not the Attorney General or directors or members of the corporation . . . ."). The Court should dismiss Plaintiff's Amended Complaint against the NRA Foundation on these grounds alone.

### 2. *Plaintiff Lacks Standing to Challenge the NRA Foundation's Administration of Donated Charitable Funds*

Plaintiff, as an ordinary donor, also lacks standing to challenge the NRA Foundation's administration of donated funds. Courts routinely dismiss cases for lack of standing where (as here) a plaintiff makes an unrestricted charitable gift and then files suit to challenge the administration of those donated funds. *See, e.g.*, *Wilding v. DNC Servs. Corp.*, 2017 WL 6345492, at *5 (S.D. Fla. Aug. 25, 2017) ("The act of donating to an organization does not, of itself, create a legally protected interest in the organization's operations." (citing *Orient v. Linus Pauling Inst. of Sci and Med.*, 936 F. Supp. 704, 707 (D. Ariz. 1996) ("Funding research does not automatically confer a legally protected interest in that organization's assets on a donor."))); *Leonard v. Campbell*, 189 So. 839, 840 (Fla. 1939) (observing that delivery of a gift "divest[s] the donor of all present control and dominion over [the gift], absolutely and irrevocably")).[1]

---

[1] *See also Skokie Valley Prof'l Bldg., Inc. v. Skokie Valley Cmty. Hosp.*, 393 N.E.2d 510, 513-14 (Ill. 1979) (holding that "unrestricted contributions to charitable corporations do not provide donors with standing to challenge ultra vires acts of the corporation"); *Hart v. Vitae Found., Inc.*, 302 S.W.3d 133, 135 (Mo. Ct. App. 2010) (holding that donors did not have standing to

6

Critically, Plaintiff does not allege that he (or any putative class members) donated funds to the NRA Foundation subject to any restrictions or reversionary interests. Because all his donations were unrestricted gifts, Plaintiff no longer has any property interest in those funds. As a result, he lacks standing to bring any action to enforce the NRA Foundation's administration of those donations. *See, e.g.*, *Carl J. Herzog Found., Inc. v. Univ. of Bridgeport*, 699 A.2d 995, 999 (Conn. 1997) ("[I]t is clear that the general rule at common law was that a donor had no standing to enforce the terms of a completed charitable gift unless the donor had expressly reserved a property interest in the gift."); Iris J. Goodwin, *Donor Standing to Enforce Charitable Gifts: Civil Society v. Donor Empowerment*, 58 Vand. L. Rev. 1093, 1145 (2005) ("To return to the particulars of the current law with respect to donor standing, nearly all the modern American authorities—decisions, model acts, statutes, and commentaries—deny a donor standing to enforce a restricted gift to public charity absent express retention of a reversion in the donative instrument."). The Court should also dismiss Plaintiff's Amended Complaint on these grounds.

**B.  Plaintiff's Amended Complaint Fails to Satisfy Rule 9(b)**

Beyond the standing issue, Plaintiff's Amended Complaint also fails to satisfy the heightened pleading requirements for fraud and RICO claims.[2] *See Republic Bank*, 683 F.3d at 247 (stating that fraud-based claims are subject to heightened pleading standard because they pose "a high risk of abusive litigation" (quoting *Twombly*, 550 U.S. at 569 n.14)); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (stating that the heightened pleading standards of Rule 9(b) apply to RICO claims).

---

bring an action enforcing the gift).

[2]  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

"The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (citation omitted). "Compliance with Rule 9(b) should be reviewed as to each of the elements of the claim of fraud in a complaint and as to each of the named defendants." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1114 (W.D. Mich. 1996). Thus, Rule 9(b) requires plaintiffs: "(1) to specify the alleged fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank*, 683 F.3d at 247. "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (cited with approval in *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). It has been noted elsewhere that "the purpose of [9(b)'s] particularity requirement is to 'discourage a "sue first, ask questions later" philosophy.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

Plaintiff bases his claims on unspecified "solicitations" alleging that the NRA Foundation would use donated funds for certain purposes (the "NRA's Core Mission"). He alleges that after he made unrestricted donations, the NRA Foundation used some (but not all) of these donated funds for "alternative purposes," which involve: (1) transferring money to the NRA itself (where it was allegedly misused); and (2) contributing to youth-oriented nonprofits. [D.E. 5, Am. Compl. at ¶¶ 52, 71].

These general and conclusory allegations against the NRA Foundation do not meet Rule 9(b)'s particularity requirements. Plaintiff fails to specify the "time, place, and content" of the

allegedly fraudulent misrepresentations. *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005). Plaintiff does not identify <u>any</u> specific statements, the speaker, where and when the allegedly fraudulent "solicitations" were made, or why they were allegedly fraudulent. The Court should dismiss Plaintiff's Amended Complaint against the NRA Foundation because Plaintiff fails to plead with particularity the alleged fraud underlying his claims. *See, e.g.*, *House v. Bristol Myers Squibb Co.*, 2017 WL 55876, at *9 (W.D. Ky. Jan. 4, 2017) ("The Complaint does not specify the statements in question, identify the speaker, or allege, beyond highly generalized allegations, when or where the alleged statements were made. It therefore fails to meet Rule 9(b)'s particularity requirements.").

**C.     Plaintiff Fails to Plausibly Allege the Elements of Fraud (Count II)**

In Count II, Plaintiff alleges the NRA Foundation committed "fraud"[3] by using unrestricted donations for "alternative purposes" other than the "NRA's Core Mission." [D.E. 5, Am. Compl. at ¶¶ 47-53]. A plaintiff asserting a claim for fraud under Tennessee law, however, must plausibly allege the following six elements:

> (1) [T]he defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied upon the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*PNC Multifamily Capital Inst. Fund v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012). In this case, the Amended Complaint fails to plausibly allege at least five of these elements:

---

[3]   It is unclear whether Count II asserts a claim of common law fraud or fraudulent inducement. [D.E. 5, Am. Compl. at ¶¶ 47-53]. This is irrelevant to the Court's analysis, however, because the elements lacking from Plaintiff's "fraud" claim overlap with the elements lacking from any fraudulent inducement claim.

***(1) False Representation:***  In entirely conclusory fashion (and without specifying any statements) Plaintiff alleges the NRA Foundation's "solicitations" were false because *some* donated funds were used for "alternative purposes" outside the "NRA's Core Mission." [D.E. 5, Am. Compl. at ¶¶ 49, 52]. Plaintiff does not allege, however, that the NRA Foundation ever solicited funds for use exclusive to the "NRA's Core Mission." Similarly, Plaintiff does not allege the NRA Foundation failed to devote sufficient resources to the "NRA's Core Mission." Although Plaintiff may take issue with some uses of donated funds, the NRA Foundation's decision to devote resources to certain areas does not make its alleged solicitations false. Put another way, the NRA Foundation's *subsequent* decision to administer funds in a manner Plaintiff disagrees with does not render the alleged solicitations false *at the time they were made*. Plaintiff has failed to plausibly allege the NRA Foundation made any false representations.

***(2) Materiality:***  "[A] statement is material or involves a material fact if it will likely affect the conduct of a reasonable person." *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003). Plaintiff does not allege, however, that the NRA Foundation's supposedly false "solicitations" affected his conduct in any way (nor can he, because he does not allege the NRA Foundation ever failed to fund the "NRA's Core Mission"). Plaintiff has failed to plausibly allege that the NRA's supposedly false representations were material.

***(3) Knowledge of Falsity:***  Nowhere in the Amended Complaint does Plaintiff allege that the NRA Foundation's "solicitations" were knowingly false (or made without belief in their truth or recklessly). Nor can he, because he never alleges the NRA Foundation failed to fund the "NRA's Core Mission." Plaintiff has failed to plausibly allege this element as well.

***(4) Reasonable Reliance:***  Given the timeline alleged, Plaintiff could not have reasonably relied on the NRA Foundation's supposedly false representations. Plaintiff alleges that from

January 1, 2015, the NRA Foundation solicited funds for the "NRA's Core Mission." [D.E. 5, Am. Compl. at ¶¶ 48-49]. Plaintiff later alleges, however, that the NRA Foundation's use of donated funds for "alternative purposes" <u>began as early as 2009</u>. [*Id.* at ¶ 52(a) (alleging the NRA Foundation transferred funds to the NRA "over a ten-year period"); *id.* at ¶ 52(b) (alleging the NRA Foundation contributed funds to the Speedway Children's Charity for the past nine years)]. Taken as true, this means the NRA Foundation began funding these "alternative purposes" years *before* it made any allegedly false representations. As a result, Plaintiff does not plausibly allege he reasonably relied on the NRA Foundation's supposedly false "solicitations."

<u>*(5) Damages:*</u>  Plaintiff's only allegation related to damages is that he "incurred damages as a result of the NRA Foundation's expenditures, unrelated to its mission." [*Id.* at ¶ 53]. This conclusory assertion amounts to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 129 S. Ct. at 1949, or "'naked assertion[]' devoid of 'further factual enhancement,'" *id.* (quoting *Twombly*, 550 U.S. at 557), of the type the Supreme Court has deemed insufficient to state a claim for relief that is plausible on its face. Plaintiff's conclusory allegations of unspecified damages "will not suffice" to state a cause of action. *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## D. Plaintiff Fails to Plausibly Allege the Elements of RICO (Count IV)

In Count IV, Plaintiff alleges that the NRA Foundation committed mail fraud in violation of 18 U.S.C. § 1341 by soliciting funds for certain purposes but using them for other "alternative purposes." [D.E. 5, Am. Compl. at ¶¶ 68-71]. To plead a RICO violation under 18 U.S.C. § 1962(c),[4] a plaintiff must plausibly allege: "(1) conduct (2) of an enterprise (3) through a pattern

---

[4] This section makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern

11

(4) of racketeering activity." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 422 (6th Cir. 2013). Where (as here) a RICO claim is premised on mail fraud, a plaintiff must plausibly allege: (1) a scheme to defraud involving use of mail; and (2) for the purpose of executing the scheme. *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997).

"Because RICO claims require proof of mail or wire fraud as an element, the plaintiff[] must also satisfy the heightened particularity requirements of [Rule 9(b)] with respect to the elements of fraud." *Wyndam Vacation Resorts, Inc. v. Consultant Grp.*, 2014 WL 1922791 at *11 (M.D. Tenn. May 14, 2014) (citing *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 699 F.3d 466, 476 (6th Cir. 2012)). Thus, a plaintiff must allege specific affirmative misrepresentations and identify the basis for inferring scienter to satisfy the heightened pleading standards of Rule 9(b). *See Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 607 (E.D. Mich. 2015); *see also Heinrich*, 668 F.3d at 406 ("Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter.").

In this case (and as discussed above), Plaintiff's Amended Complaint fails to allege <u>any</u> specific affirmative misrepresentations or identify <u>any</u> basis for inferring scienter. Plaintiff's RICO allegations are conclusory, speculative at best, and lack particularity. "As did *Twombly*, this case involves a federal statute under which there is significant risk, absent careful review at the motion-to-dismiss stage of proceedings, of plaintiffs transforming garden-variety commercial disputes into something significantly more burdensome to the opposing party simply by invoking certain labels in a complaint." *CSX Transp., Inc. v. Meserole St. Recycling, Inc.*, 570 F. Supp. 2d 966, 970 (W.D. Mich. 2008). While Plaintiff may now disapprove of the NRA Foundation's allocations of its resources, despite his having previously provided the NRA Foundation with

---

of racketeering activity . . . ." 18 U.S.C. § 1962(c).

unrestricted donations, nothing in the Amended Complaint remotely amounts to a plausible RICO claim—especially one stated with Rule 9(b) particularity.  The Court should dismiss Plaintiff's RICO claim against the NRA Foundation on these grounds.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint fails to state any claim against the NRA Foundation.  The Court should dismiss Counts II and IV against the NRA Foundation with prejudice.

Dated:	December 30, 2019	Respectfully Submitted,

**NEAL & HARWELL, PLC**

 /s/ *Aubrey B. Harwell, Jr.*
Aubrey B. Harwell, Jr. (BPR # 2559)
John E. Quinn (BPR # 12220)
William J. Harbison II (BPR # 33330)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
aharwell@nealharwell.com
jquinn@nealharwell.com
jharbison@nealharwell.com

*Counsel for Defendant NRA Foundation, Inc.*

# CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court on December 30, 2019, using the CM/ECF system, which will send notification to all counsel of record as listed below.

| *Attorneys for the NRA and LaPierre Defendants:* | *Attorney for Plaintiff:* |
|---|---|
| LACY, PRICE & WAGNER, P.C.<br>Wallace A. McDonald (BPR # 16210)<br>249 N. Peters Road, Suite 101<br>Knoxville, TN 37926<br>(865) 246-0800<br>amcdonald@lpwpc.com<br><br>BREWER, ATTORNEYS & COUNSELORS<br>William A. Brewer (admitted *pro hac vice*)<br>750 Lexington Ave., 14th Floor<br>New York, NY 10022<br>(212) 527-3024<br>wbb@brewerattorneys.com | SCHUCHARDT LAW FIRM<br>Elliott J. Schuchardt (BPR # 27016)<br>6223 Highland Place Way, Suite 201<br>Knoxville, TN 37919<br>(865) 304-4374<br>elliott016@gmail.com |

              /s/ Aubrey B. Harwell, Jr.