UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID DELL'AQUILA, <br> LORANNDA BORJA, <br> TODD CHESNEY, and <br> BRENT WEBER, on behalf of themselves <br> and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WAYNE LAPIERRE, the NATIONAL <br> RIFLE ASSOCIATION OF AMERICA, <br> and the NRA FOUNDATION, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br><br><br> No. 3:19-cv-00679 <br><br> Judge Campbell <br> Magistrate Judge Frensley <br><br> JURY DEMAND |

**MEMORANDUM IN SUPPORT OF NRA FOUNDATION, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant NRA Foundation, Inc. ("NRA Foundation") submits this Memorandum in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint (D.E. 43). As explained below, Plaintiffs have not cured any of the legal deficiencies from the First Amended Complaint, and the Court should grant the NRA Foundation's Motion for three independent reasons: (1) Plaintiffs lack standing because: (i) they are not authorized under Tennessee law to challenge a nonprofit corporation's authority to act; and (ii) as donors of unrestricted charitable funds, they cannot challenge the NRA Foundation's subsequent administration of those funds; (2) the Second Amended Complaint does not comply with the heightened pleading requirements of Rule 9(b); and (3) Plaintiffs have not plausibly alleged the elements of their fraud and RICO claims against the NRA Foundation (Counts II and IV).

## I.    INTRODUCTION

Plaintiffs' third bite at the apple is still frivolous and lacks any legally cognizable claim against the NRA Foundation. All of Plaintiffs' claims center around the allegation that they made <u>unrestricted charitable donations</u> to the NRA Foundation based on supposedly false "solicitations" that those funds would be used for certain purposes. Without alleging any failure to fund those purposes fully, Plaintiffs allege the NRA Foundation still somehow misused some (but not all) donated funds by: (1) transferring money to the NRA (where it was allegedly misused); and (2) contributing to two youth-oriented nonprofits. These allegations do not give rise to any cause of action against the NRA Foundation. As detailed below, the Court should dismiss the Second Amended Complaint against the NRA Foundation for three independent reasons:

**First,** Plaintiffs lack standing. Tennessee law states that a nonprofit's authority to act may only be challenged by the Attorney General, a director, or member(s) in a derivative proceeding. *See* Tenn. Code Ann. § 48-53-104. Plaintiffs are none of these things. Additionally, donors of unrestricted charitable funds lack standing to later challenge how those funds are administered.

**Second,** the Second Amended Complaint does not satisfy Rule 9(b)'s heightened pleading standards. Although Plaintiffs allegedly made unrestricted charitable donations to the NRA Foundation based on supposedly false or misleading "solicitations," they do not specify a single statement *made by the NRA Foundation*, identify the speaker(s), or state where/when the statements were made.

**Third,** Plaintiffs fail to plausibly allege the elements of their fraud and RICO claims. For example, they do not allege the NRA Foundation knowingly made any false representations. Nor is there any allegation the NRA Foundation ever made any "solicitations" via the U.S. Postal Service. They also fail to identify any basis for inferring scienter (as required under RICO).

## II. FACTUAL ALLEGATIONS

Plaintiffs are putative class representatives and alleged donors and supporters of the NRA. [D.E. 43, Second Am. Compl. at ¶¶ 36-40]. Although Plaintiffs bring claims against the NRA, Wayne LaPierre, and the NRA Foundation, only Plaintiff David Dell'Aquila ever allegedly made any donations to the NRA Foundation. [*Id.* at ¶¶ 37-39]. Mr. Dell'Aquila has not alleged, however, that he made any of these donations subject to any restrictions or reversionary interests. Thus, *all of his charitable donations to the NRA Foundation were unrestricted gifts*.

Plaintiffs allege the NRA Foundation "solicited" these charitable donations for use in gun safety education, promotion of shooter sports and hunter safety, fostering of wildlife conservation, and protection of gun ownership rights (what they call the "NRA's Core Mission"). [*Id.* at ¶¶ 80, 104]. Plaintiffs do not identify, however, a single "solicitation" made *by the NRA Foundation*— even though they allege in conclusory fashion they "were exposed to" and "reasonably relied upon" these unidentified "solicitations." [*Id.* at ¶¶ 35-35]. Instead, they point to the NRA Foundation's mission statement, descriptions of grant funding, and "Donor Bill of Rights." [*Id.* at ¶¶ 17-20]. The NRA Foundation's mission statement, however, expressly provides that it may contribute to a variety of causes—including youth education:

> Since our establishment in 1990, we've awarded nearly $398 million in grant funding in support of the shooting sports. These grants provide essential funding that benefits programs *such as* youth *education*, law enforcement training, hunter education, conservation, firearms and marksmanship training and safety, *and much more*.

[*Id.* at ¶ 17 (emphasis added); *see also id.* at ¶ 19 (describing the "general focus" but nonexclusive scope of the NRA Foundation's grant program)].

As a result, Plaintiffs do not allege the NRA Foundation ever promised exclusively how it would administer these funds. Instead, all of Plaintiffs' claims hinge upon the allegation that the

NRA Foundation used *some* (but not all) of these donated funds for other purposes. [*See id.* at ¶ 42 ("Instead of spending the donated money on the solicited purposes, Defendants used significant portions of the donated funds for purposes unrelated to the NRA's core mission.")]. As to the NRA Foundation, Plaintiffs allege the following uses of donated funds were somehow improper: (1) transferring money to the NRA (where it was allegedly misused); and (2) contributing to two youth-oriented nonprofits. [*Id.* at ¶¶ 83, 107]. Plaintiffs do not allege, however, that the NRA Foundation failed to disclose these expenditures or diverted funds raised for specific programs or purposes.

Plaintiffs do not bring any individual causes of action. Instead, they seek certification of two separate classes: (1) persons who donated funds directly to the NRA; and (2) persons who donated funds to the NRA Foundation. [*Id.* at ¶¶ 56-57]. The Second Amended Complaint brings claims of fraud and RICO violations against all Defendants. [*Id.* at ¶¶ 69-114]. Plaintiffs seek restitution of all donated funds as well as costs, punitive damages, and attorney's fees. [*Id.* at ¶¶ 86, 114].

### III.  LEGAL STANDARDS

**A.  Article III Standing**

"Standing is a jurisdictional requirement. If no plaintiff has standing, then the court lacks subject-matter jurisdiction." *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (citations omitted). Thus, courts should dismiss complaints for lack of subject matter jurisdiction under Rule 12(b)(1) if the plaintiff lacks standing to bring suit. *See, e.g.*, *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) ("Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (citations omitted)); *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012) (affirming

4

district court's grant of Rule 12(b)(1) motion to dismiss for lack of standing); *cf.* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Standing "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum of standing" requires a plaintiff to show three elements:

> [A] plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). When a case "is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 581 (1975)). "[I]n all standing inquiries, the critical question is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2000)) (emphasis in original).

**B.     Rule 12(b)(6)**

Dismissal pursuant to Rule 12(b)(6) is proper where a complaint lacks sufficient facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hensley Mfg. v. ProPride, Inc.*, 597 F.3d 603, 609 (6th Cir. 2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. That is, while a plaintiff

need not plead "detailed factual allegations," the complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded facts must be accepted as true, a "formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-247 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "[A] legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal quotations and citations omitted).

## IV. ARGUMENT

### A. Plaintiffs Lack Standing

#### *1. Plaintiffs Lack Standing to Challenge the NRA Foundation's Actions*

At bottom, Plaintiffs contend that the NRA Foundation's use of *some* (but not all) donated funds for purposes outside the "NRA's Core Mission" is an *ultra vires* act. [*See* D.E. 43, Second Am. Compl. at ¶¶ 62, 80-83, 104-106]. Under Tennessee law, however, a nonprofit corporation's authority to act may only be challenged by the Attorney General, a director, or by member(s) in a derivative proceeding. *See* Tenn. Code Ann. § 48-53-104. Because Plaintiffs are none of these things, they lack standing to challenge any of the NRA Foundation's actions. *See, e.g.*, *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 470 (Tenn. 2012) ("Tennessee law restricts the parties who may challenge corporate action on the ground that the corporation lacks or lacked power to so act. Those parties who may bring such challenges generally include the Attorney General and Reporter, a director of the corporation, or a member of the corporation in a derivative proceeding. Simply put, [plaintiffs] are not qualified to assert that [defendant's actions are] invalid because such action violates its charter." (citing Tenn. Code Ann. § 48-53-104; 7A Fletcher Cyc. Corp. § 3448)); *State*

*ex rel. Adventist Health Care Sys./Sunbelt Health Care Corp. v. Nashville Mem'l Hosp., Inc.*, 914 S.W.2d 903, 908 (Tenn. Ct. App. 1995) ("The plaintiffs . . . lack standing to bring any challenge to the sale . . . on grounds of either the reasonableness of the price or the corporation's power to sell . . . because they were not the Attorney General or directors or members of the corporation . . . ."). The Court should dismiss Plaintiffs' Second Amended Complaint against the NRA Foundation on these grounds alone.

### 2. *Plaintiffs Lack Standing to Challenge the NRA Foundation's Administration of Unrestricted Charitable Donations*

Plaintiffs, as ordinary donors, also lack standing to challenge the NRA Foundation's administration of donated charitable funds. Courts routinely dismiss cases for lack of standing where (as here) a plaintiff makes an unrestricted charitable gift and then files suit to challenge the administration of those donated funds. *See, e.g.*, *Wilding v. DNC Servs. Corp.*, 2017 WL 6345492, at *5 (S.D. Fla. Aug. 25, 2017) ("The act of donating to an organization does not, of itself, create a legally protected interest in the organization's operations." (citing *Orient v. Linus Pauling Inst. of Sci and Med.*, 936 F. Supp. 704, 707 (D. Ariz. 1996) ("Funding research does not automatically confer a legally protected interest in that organization's assets on a donor."))); *Leonard v. Campbell*, 189 So. 839, 840 (Fla. 1939) (observing that delivery of a gift "divest[s] the donor of all present control and dominion over [the gift], absolutely and irrevocably").[1]

Critically, Plaintiffs do not allege that they (or any putative class members) donated funds to the NRA Foundation subject to any restrictions or reversionary interests. Because all of the

---

[1] *See also Skokie Valley Prof'l Bldg., Inc. v. Skokie Valley Cmty. Hosp.*, 393 N.E.2d 510, 513-14 (Ill. 1979) (holding that "unrestricted contributions to charitable corporations do not provide donors with standing to challenge ultra vires acts of the corporation"); *Hart v. Vitae Found., Inc.*, 302 S.W.3d 133, 135 (Mo. Ct. App. 2010) (holding that donors did not have standing to bring an action enforcing the gift).

donations alleged in the Second Amended Complaint were unrestricted gifts, Plaintiffs no longer have any property interest in those funds. As a result, they lack standing to bring any action to enforce the NRA Foundation's administration of those donations. *See, e.g.*, *Carl J. Herzog Found., Inc. v. Univ. of Bridgeport*, 699 A.2d 995, 999 (Conn. 1997) ("[I]t is clear that the general rule at common law was that a donor had no standing to enforce the terms of a completed charitable gift unless the donor had expressly reserved a property interest in the gift."); Iris J. Goodwin, *Donor Standing to Enforce Charitable Gifts: Civil Society v. Donor Empowerment*, 58 Vand. L. Rev. 1093, 1145 (2005) ("To return to the particulars of the current law with respect to donor standing, nearly all the modern American authorities—decisions, model acts, statutes, and commentaries—deny a donor standing to enforce a restricted gift to public charity absent express retention of a reversion in the donative instrument."). The Court should also dismiss Plaintiffs' Second Amended Complaint on these grounds.

**B.      Plaintiffs' Second Amended Complaint Fails to Satisfy Rule 9(b)**

Beyond the standing issue, Plaintiffs' Second Amended Complaint also fails to satisfy the heightened pleading requirements for their fraud and RICO claims.[2] *See Republic Bank*, 683 F.3d at 247 (stating that fraud-based claims are subject to heightened pleading standard because they pose "a high risk of abusive litigation" (quoting *Twombly*, 550 U.S. at 569 n.14)); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (stating that the heightened pleading standards of Rule 9(b) apply to RICO claims).

"The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for*

---

[2]   Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

*Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (citation omitted). "Compliance with Rule 9(b) should be reviewed as to each of the elements of the claim of fraud in a complaint and as to each of the named defendants." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1114 (W.D. Mich. 1996). Thus, Rule 9(b) requires plaintiffs: "(1) to specify the alleged fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank*, 683 F.3d at 247. "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (cited with approval in *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). It has been noted elsewhere that "the purpose of [Rule 9(b)'s] particularity requirement is to 'discourage a "sue first, ask questions later" philosophy.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

Plaintiffs base their claims on allegations of unspecified "solicitations" that the NRA Foundation would use donated funds for certain purposes (*i.e.*, the "NRA's Core Mission"). Plaintiffs do not allege, however, that the NRA Foundation ever failed to fund these purposes. Instead, they allege that after making unrestricted charitable donations, the NRA Foundation used *some* (but not all) of these funds for "alternative purposes," which involve: (1) transferring money to the NRA itself (where it was allegedly misused); and (2) contributing to two youth-oriented nonprofits. [D.E. 43, Second Am. Compl. at ¶¶ 83, 107].

These general and conclusory allegations against the NRA Foundation do not meet Rule 9(b)'s particularity requirements. Plaintiffs fail to specify the "time, place, and content" of the allegedly fraudulent misrepresentations. *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966,

972 (6th Cir. 2005). Plaintiffs do not identify <u>any</u> specific statements *made by the NRA Foundation*, the speaker, where and when the allegedly fraudulent "solicitations" were made, or why they were allegedly fraudulent. The Court should dismiss Plaintiffs' Second Amended Complaint against the NRA Foundation because Plaintiffs fail to plead with particularity the alleged fraud underlying their claims. *See, e.g.*, *House v. Bristol Myers Squibb Co.*, 2017 WL 55876, at *9 (W.D. Ky. Jan. 4, 2017) ("The Complaint does not specify the statements in question, identify the speaker, or allege, beyond highly generalized allegations, when or where the alleged statements were made. It therefore fails to meet Rule 9(b)'s particularity requirements.").

### C. Plaintiffs Fail to Plausibly Allege the Elements of Fraud (Count II)

In Count II, Plaintiffs allege the NRA Foundation committed "fraud"[3] by using their unrestricted charitable donations for "alternative purposes" other than the "NRA's Core Mission." [D.E. 43, Second Am. Compl. at ¶¶ 80-83]. A plaintiff asserting a claim for fraud under Tennessee law, however, must plausibly allege the following six elements:

> (1) [T]he defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied upon the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*PNC Multifamily Capital Inst. Fund v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012). In this case, Plaintiffs fail to plausibly allege at least five of these elements:

*<u>**(1) False Representation:**</u>* In entirely conclusory fashion (and without specifying any statements), Plaintiffs allege the NRA Foundation's "solicitations" were false because *some*

---

[3] It is unclear whether Count II asserts a claim of common law fraud or fraudulent inducement. [D.E. 43, Second Am. Compl. at ¶¶ 78-86]. This is irrelevant to the Court's analysis, however, because the elements lacking from Plaintiffs' "fraud" claim overlap with the elements lacking from any fraudulent inducement claim.

10
Case 3:19-cv-00679 Document 47 Filed 02/19/20 Page 10 of 16 PageID #: 245

donated funds were used for "alternative purposes" outside the "NRA's Core Mission." [D.E. 43, Second Am. Compl. at ¶¶ 80-83]. Plaintiffs do <u>not</u> allege, however, that the NRA Foundation ever solicited funds for use <u>exclusive to</u> the "NRA's Core Mission." In fact, they allege the exact opposite, as the NRA Foundation's "Mission Statement" expressly states that it may contribute to a variety of causes. [*Id.* at ¶ 17 ("These grants provide essential funding that benefits programs *such as youth education*, law enforcement training, hunter education, conservation, firearms and marksmanship training and safety, *and much more*."); *see also id.* at ¶ 19 (describing the "general focus" but nonexclusive scope of the NRA Foundation's grant program). Plaintiffs' own allegations are fatal to their fraud claim.

Similarly, Plaintiffs do not allege the NRA Foundation failed to devote sufficient resources to the "NRA's Core Mission." Although Plaintiffs may take issue with some uses of their donated funds, the NRA Foundation's decision to devote resources to certain areas does not make its alleged (yet unidentified) "solicitations" false. Nor does the NRA Foundation's *subsequent* decision to administer funds in a manner Plaintiffs disagree with render the alleged "solicitations" false *at the time they were made*. Plaintiffs have failed to plausibly allege the NRA Foundation made any false representation.

*(2) Materiality:* "[A] statement is material or involves a material fact if it will likely affect the conduct of a reasonable person." *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003). Because Plaintiffs do not allege the NRA Foundation ever failed to fund the "NRA's Core Mission," they cannot plausibly allege that the NRA Foundation's supposedly false "solicitations" affected their conduct in any way. Plaintiffs have therefore failed to plausibly allege that the NRA's supposedly false representations were material.

*(3) **Knowledge of Falsity:*** Similarly, Plaintiffs cannot plausibly allege the NRA Foundation's "solicitations" were knowingly false (or made without belief in their truth or recklessly) because they never allege the NRA Foundation failed to fund the "NRA's Core Mission." Plaintiffs have failed to plausibly allege this element as well.

*(4) **Reasonable Reliance:*** Given the timeline alleged, Plaintiffs could not have reasonably relied on the NRA Foundation's supposedly false "solicitations." Plaintiffs allege that <u>from November 30, 2015 to January 26, 2019</u>, the NRA Foundation solicited funds for the "NRA's Core Mission." [D.E. 43, Second Am. Compl. at ¶¶ 79-80]. Plaintiffs later allege, however, that the NRA Foundation's use of donated funds for "alternative purposes" <u>began as early as 2009</u>. [*Id.* at ¶ 83(a) (alleging the NRA Foundation transferred funds to the NRA "over a ten-year period"); *id.* at ¶ 83(b) (alleging the NRA Foundation contributed funds to the Speedway Children's Charity for the past nine years)]. Taken as true, this means the NRA Foundation began funding these "alternative purposes" years *before* it made any allegedly false statements. As a result, Plaintiffs do not plausibly allege they reasonably relied on the NRA Foundation's supposedly false "solicitations."

*(5) **Damages:*** Plaintiffs' only allegation related to damages is that they "incurred damages as a result of the NRA Foundation's expenditures, unrelated to its mission." [*Id.* at ¶ 85]. This conclusory assertion amounts to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, or "'naked assertion[]' devoid of 'further factual enhancement,'" *id.* (quoting *Twombly*, 550 U.S. at 557), of the type the Supreme Court has deemed insufficient to state a claim for relief that is plausible on its face. Plaintiffs' conclusory allegations of unspecified damages "will not suffice" to state a cause of action. *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

**D.      Plaintiffs Fail to Plausibly Allege the Elements of RICO (Count IV)**

In Count IV, Plaintiffs allege the NRA Foundation committed mail fraud in violation of 18 U.S.C. § 1341 by soliciting funds for certain purposes but using them for other "alternative purposes." [D.E. 43, Second Am. Compl. at ¶¶ 101-114]. To plead a RICO violation under 18 U.S.C. § 1962(c),[4] a plaintiff must plausibly allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 422 (6th Cir. 2013). Where (as here) a RICO claim is premised on mail fraud, a plaintiff must plausibly allege: (1) a scheme to defraud involving use of mail; and (2) for the purpose of executing the scheme. *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997).

"Because RICO claims require proof of mail or wire fraud as an element, the plaintiff[] must also satisfy the heightened particularity requirements of [Rule 9(b)] with respect to the elements of fraud." *Wyndam Vacation Resorts, Inc. v. Consultant Grp.*, 2014 WL 1922791 at *11 (M.D. Tenn. May 14, 2014) (citing *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 699 F.3d 466, 476 (6th Cir. 2012)). Thus, a plaintiff must allege specific affirmative misrepresentations and identify the basis for inferring scienter to satisfy the heightened pleading standards of Rule 9(b). *See Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 607 (E.D. Mich. 2015); *see also Heinrich*, 668 F.3d at 406 ("Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter.").

In this case (and as discussed above), Plaintiffs' Second Amended Complaint fails to allege <u>any</u> specific affirmative misrepresentations or identify <u>any</u> basis for inferring scienter. *Nor is there*

---

[4]   This section makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).

*any allegation the NRA Foundation ever made any "solicitations" via the U.S. Postal Service.* [*See* D.E. 43, Second. Am. Compl. at ¶¶ 27-34 (describing alleged "solicitations" the NRA—*not the NRA Foundation*—sent via the U.S. Postal Service)]. Plaintiffs' RICO allegations are conclusory, speculative at best, and lack particularity. "As did *Twombly*, this case involves a federal statute under which there is significant risk, absent careful review at the motion-to-dismiss stage of proceedings, of plaintiffs transforming garden-variety commercial disputes into something significantly more burdensome to the opposing party simply by invoking certain labels in a complaint." *CSX Transp., Inc. v. Meserole St. Recycling, Inc.*, 570 F. Supp. 2d 966, 970 (W.D. Mich. 2008). While Plaintiffs may now disapprove of the NRA Foundation's allocations of its resources, despite having previously provided the NRA Foundation with unrestricted donations, nothing in the Second Amended Complaint remotely amounts to a plausible RICO claim—especially one stated with Rule 9(b) particularity. The Court should dismiss Plaintiffs' RICO claim against the NRA Foundation on these grounds.

## V. CONCLUSION

Plaintiffs' Second Amended Complaint does not cure any of the legal deficiencies from the First Amended Complaint and states no valid claim against the NRA Foundation. The Court should dismiss Counts II and IV against the NRA Foundation with prejudice.

Dated: February 19, 2020 Respectfully Submitted,

**NEAL & HARWELL, PLC**

 /s/ *Aubrey B. Harwell, Jr.*
Aubrey B. Harwell, Jr. (BPR # 2559)
John E. Quinn (BPR # 12220)
William J. Harbison II (BPR # 33330)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
aharwell@nealharwell.com
jquinn@nealharwell.com
jharbison@nealharwell.com

*Counsel for Defendant NRA Foundation, Inc.*

# CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court on February 19, 2020, using the CM/ECF system, which will send notification to all counsel of record as listed below.

| ***Counsel for the NRA and LaPierre Defendants:*** | ***Counsel for Plaintiffs:*** |
|---|---|
| LACY, PRICE & WAGNER, P.C. <br> Wallace A. McDonald (BPR # 16210) <br> 249 N. Peters Road, Suite 101 <br> Knoxville, TN 37926 <br> (865) 246-0800 <br> amcdonald@lpwpc.com <br><br> BREWER, ATTORNEYS & COUNSELORS <br> William A. Brewer IV (admitted *pro hac vice*) <br> 750 Lexington Ave., 14th Floor <br> New York, NY 10022 <br> (212) 527-3024 <br> wbb@brewerattorneys.com | SCHUCHARDT LAW FIRM <br> Elliott J. Schuchardt (BPR # 27016) <br> 6223 Highland Place Way, Suite 201 <br> Knoxville, TN 37919 <br> (865) 304-4374 <br> elliott016@gmail.com |

                                                              /s/ Aubrey B. Harwell, Jr.

16
Case 3:19-cv-00679   Document 47   Filed 02/19/20   Page 16 of 16   PageID #: 251