IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

DAVID DELL'AQUILA, LORANNDA )
BORJA, TODD CHESNEY, and BRENT )
WEBER, on behalf of )
themselves and all others similarly situated, )
)
                 Plaintiffs, )
) No: 3:19-cv-00679
   - against - ) Judge William L. Campbell Jr.
)
WAYNE LAPIERRE, NATIONAL RIFLE ) Magistrate Judge Jefferey S. Frensley
ASSOCIATION OF AMERICA, and )
NRA FOUNDATION, INC. )
)
                 Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF THE NRA'S MOTION TO DISMISS**

LACY, PRICE & WAGNER PC
Allen McDonald
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
(865)-246-0800

BREWER, ATTORNEYS &
COUNSELORS
William A. Brewer IV (admitted *pro hac vice*)
750 Lexington Avenue, 14th Floor
New York, NY 10022
(212)-489-1400

*ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................................1

II. STATEMENT OF RELEVANT FACTS .....................................................................................2

III. ARGUMENT ..............................................................................................................................6

    A.    Legal Standards for Motion to Dismiss. ..............................................................................6

        1.    Rule 12(b)(1): Lack of Subject Matter Jurisdiction. ...............................................6

        2.    Rule 12(b)(6): Failure to State a Claim. ..................................................................7

    B.    Plaintiffs Lack Standing. .......................................................................................................7

    C.    Plaintiffs Fail to State a Claim for Fraud. ............................................................................8

        1.    Falsity. .....................................................................................................................9

        2.    Knowledge and Intent. ..........................................................................................10

        3.    Reliance. ................................................................................................................11

        4.    Injury. ....................................................................................................................12

    D.    Plaintiffs Fail to State a Claim for a RICO Violation. .......................................................12

        1.    RICO Enterprise. ...................................................................................................13

        2.    Mail Fraud. ............................................................................................................14

IV. CONCLUSION .........................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bailey v. Memphis Bonding Company, Inc.*,
  2019 WL 1300092 (W.D. Tenn. Mar. 21, 2019) ...................................................................14

*Baugh v. Novak*,
  340 S.W.3d 372 (Tenn. 2011) ..........................................................................................8, 10

*Blount Fin. Serv., Inc. v. Walter E. Heller & Co.*,
  819 F.2d 151 (6th Cir. 1987) ..................................................................................................8

*Carl J. Herzog Found., Inc. v. Univ. of Bridgeport*,
  699 A.2d 995 (Conn. 1997) ....................................................................................................8

*In re ClassicStar Mare Lease Litig.*,
  727 F.3d 473 (6th Cir. 2013) ................................................................................................13

*Coffey v. Foamex L.P.*,
  2 F.3d 157 (6th Cir. 1993) ....................................................................................................11

*Fritz v. Charter Twp. of Comstock*,
  592 F.3d 718 (6th Cir. 2010) ..................................................................................................7

*Graham v. American Cyanamid Co.*,
  350 F.3d 496 (6th Cir. 2003) ................................................................................................12

*Hayes v. Burns*,
  2013 WL 4501464 (M.D. Tenn. Aug. 22, 2013) ....................................................................8

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
  668 F.3d 393 (6th Cir. 2012) ................................................................................................12

*Horne v. Flores*,
  557 U.S. 433 (2009) ................................................................................................................6

*Kantz v. Rubin Lublin, PLLC*,
  2015 WL 1543531 (M.D. Tenn. Apr. 6, 2015) ...........................................................7, 11, 14

*Lyshe v. Levy*,
  854 F.3d 855 (6th Cir. 2017) ..................................................................................................6

*Moon v. Harrison Piping Supplies*,
  465 F.3d 719 (6th Cir. 2006) ................................................................................................12

*Pineda Transportation, LLC v. FleetOne Factoring, LLC*,
   2018 WL 2137760 (M.D. Tenn. May 9, 2018) .................................................................13

*PNC Multifamily Capital Inst. Fund v. Bluff County Dev. Corp.*,
   387 S.W.3d 525 (Tenn. Ct. App. 2012) .........................................................................8

*Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*,
   447 F.3d 923 (6th Cir. 2006) .................................................................................10, 11

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
   683 F.3d 239 (6th Cir. 2012) ........................................................................................7

*Smith v. Bank of America Corp*,
   485 Fed. Appx. 749 (6th Cir. 2012) ..............................................................................8

*State by and through Tennessee Gen. Assembly v. United States Dep't of State*,
   931 F.3d 499 (6th Cir. 2019) ........................................................................................6

*Tronsgard v. FBL Fin. Grp., Inc.*,
   312 F. Supp. 3d 982 (D. Kan. 2018) ...........................................................................13

*United States v. Frost*,
   125 F.3d 346 (6th Cir. 1997) ......................................................................................12

*Walburn v. Lockheed Martin Corp.*,
   431 F.3d 966 (6th Cir. 2005) ........................................................................................9

*Wilding v. DNC Servs. Corp.*,
   2017 WL 6345492 (S.D. Fla. Aug. 25, 2017) ...............................................................7

**Statutes**

18 USC § 1341 ..........................................................................................................2, 6, 12

18 USC § 1962(c) ............................................................................................................12

New York Not-for-Profit Corporation Law § 717 ...........................................................11

New York Not-for-Profit Corporation Law § 720 .............................................................7

RICO .......................................................................................................................*passim*

**Rules**

Rule 9(b) ................................................................................................................8, 9, 12

Rule 12(b)(1) ..................................................................................................................6, 7

Rule 12(b)(6) ..................................................................................................................6, 7

12

Rule 23(a) ............................................................................................................................. 1

Rule 23(b) ............................................................................................................................ 1

# I.

# PRELIMINARY STATEMENT

Last summer, Plaintiff David Dell'Aquila ("Dell'Aquila") embarked on a self-described "grass-roots effort" to impose personnel changes of his own upon the National Rifle Association of America (the "NRA").[1] At first, Dell'Aquila tried to rally NRA donors to withhold funds until his agenda was adopted.[2] When that effort failed, Dell'Aquila filed this putative class action against the NRA, the NRA Foundation ("NRAF"), and NRA Executive Vice President Wayne LaPierre ("LaPierre"). Now, in his Second Amended Complaint ("Complaint"), Dell'Aquila adds three additional named plaintiffs. Plaintiffs' underlying grievances against the NRA's leadership, which take up pages of the Complaint but are irrelevant to the claims asserted, are misguided and irrelevant here. To enlist the time and resources of this Court, Plaintiffs must do more than offer vague, salacious accusations full of invective—they must satisfy federal pleading standards applicable to their fraud and RICO claims. That Plaintiffs do not and cannot do.

On behalf of themselves and two putative classes,[3] Plaintiffs assert that they donated to the NRA and the NRA Foundation based upon allegedly-false statements that those funds would be used on certain charitable purposes.[4] Without alleging that the NRA failed to fund those charitable purposes, Plaintiffs accuse the NRA of fraud and racketeering based upon its alleged expenditures for other, "alternative" purposes, including legal services, advertising and marketing, travel, and

---

[1] Danny Hakim, "NRA Donor Directs a Revolt Against a 'Radioactive Leader," NYTIMES (July 2, 2019), https://www.nytimes.com/2019/07/02/us/nra-donors-wayne-lapierre.html
[2] *Id*.
[3] Although a Rule 23 motion for class certification is not before the Court, Plaintiffs' putative classes, comprised of every American donor to the NRA or the NRAF from November 30, 2015 to January 26, 2019, respectively, cannot meet the requirements imposed by the Federal Rules of Procedure. The putative classes fail the tests for all Rule 23(a) requirements and the predominance and superiority factor pursuant to Rule 23(b) on which Plaintiffs base them.
[4] Complaint ¶ 36.

personnel.[5]  Notably, Plaintiffs do not allege that donations raised for specific programs or purposes were diverted.

Because Plaintiffs lack standing to challenge Defendants' expenditures, their claims must be dismissed for lack of subject-matter jurisdiction. Plaintiffs also fail to state a claim upon which relief can be granted for Counts I and III against the NRA for Fraud and Violation of RICO, respectively. First, the Complaint is devoid of allegations sufficient to satisfy the elements of a claim for fraud, including falsity of representation, knowledge, intent, reliance, or injury. Second, Plaintiffs fail to properly plead a RICO violation, as they fail to allege a distinct enterprise and the elements of mail fraud pursuant to 18 USC § 1341. The Complaint falls woefully short of its pleading requirements for each cause of action and therefore must be dismissed.

## II.

## STATEMENT OF RELEVANT FACTS

Plaintiffs are allegedly NRA donors. In early Summer of 2019, in the midst of substantial false media coverage promoted by enemies of the NRA, Plaintiff Dell'Aquila embarked on a "grass-roots effort" to effect change at the NRA. As part of this effort, he appealed to other donors to withhold donations pending those "changes" coming into effect. Importantly, he sought attention from news outlets to spread his message.[6] In August of 2019, Dell'Aquila filed this lawsuit, earning more press coverage.[7] In his original and First Amended Complaint, Dell'Aquila was the sole class representative and represented himself pro se. After Defendants moved to

---

[5] Complaint ¶¶ 74, 93.
[6] Hakim, NYTIMES (July 2, 2019).
[7] Mark Maremont, "NRA Donor Files Suit Over CEO's Expenses," THE WALL STREET JOURNAL (Aug. 7, 2019), https://www.wsj.com/articles/nra-donor-files-suit-over-ceos-expenses-11565221846

12

dismiss, Dell'Aquila, having retained counsel, amended his Complaint, adding three additional named plaintiffs.

Plaintiffs allege that Defendants solicited Plaintiffs to make donations to the NRA and NRAF.[8] Plaintiffs allege that Defendants advised via various statements that the donations "would be used for gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States," which collectively Plaintiffs refer to as the "NRA's core mission."[9]

Plaintiffs assert that they relied on the following (or similar) web pages, e-mail solicitations, and postal solicitations by the NRA and its employees (collectively, the "Solicitations"[10]):

- The NRA website's FAQ section "What is the NRA?"[11]
- The NRA website's FAQ section "How does the NRA use my membership dues?", including the following quote: "Your support will help us defend your Second Amendment freedom whenever and wherever it comes under attack. In addition, your membership dues will help the NRA cultivate the next generation of sportsmen and women through our youth firearms trainings… empower women with our self-defense programs…and support our police officers with our world-class law enforcement training programs."[12]

---

[8] Complaint ¶¶ 11, 27.
[9] Complaint ¶¶ 71, 80, 90, 104.
[10] Plaintiffs' remaining allegations concerning the content of solicitations are attributed to the NRAF.
[11] Complaint ¶ 11.
[12] Complaint ¶ 13.

12

- The NRA's "Uniform Disclosure Statement," including the following quote: "Contributions raised will be used to advance the mission of the NRA."[13]

- The NRA website's "About the NRA" from January 6, 2016, including the emphasized quote: "While widely recognized today as a major political force and as America's foremost defender of Second Amendment rights . . ."[14]

- Emails from Wayne LaPierre dated July 21, 2014 and July 18, 2019, encouraging membership renewal in advance of elections.[15]

- Letters from the NRA Office of Advancement dated April 28, 2016, May 8, 2017, and May 23, 2018, thanking Plaintiff Dell'Aquila for donating and reminding him of his next scheduled gift.[16]

- Letter from the former Executive Director of the NRA to Plaintiff Dell'Aquila dated March 15, 2018, stating, "Your leadership is vital to the future of the Second Amendment. It is the dedication of patriots like you that inspires others to stand up for freedom."[17]

- Letter from Wayne LaPierre to Plaintiff Dell'Aquila dated July 3, 2018 stating, "Your leadership inspires so many to stand up and fight for the values we hold dear."[18]

- Letter from the former Executive Director of the NRA dated July 11, 2018, thanking Plaintiff Dell'Aquila for donating and encouraging further donations.[19]

---

[13] Complaint ¶ 14.
[14] Complaint ¶ 23.
[15] Complaint ¶¶ 25-26.
[16] Complaint ¶¶ 28-29, 31.
[17] Complaint ¶ 30.
[18] Complaint ¶ 32.
[19] Complaint ¶ 33.

- Membership renewal notifications sent by mail and received by all named Plaintiffs, including the statement: "Contributions raised will be used to advance the mission of the NRA."[20]
- Exposure to "marketing messages" of unidentified time, place or content.[21]

Plaintiffs allege that, in reasonable reliance on the Solicitations, Plaintiffs donated to the NRA and NRAF between November 30, 2015 and January 26, 2019.[22] Each Plaintiff's contributions are contained in the allegations in the Complaint. In summary, Plaintiffs' "donations" allegedly consist of purchase of NRA license plates, unrestricted donations, and membership upgrades.[23]

Plaintiffs contend that they learned[24] that the NRA's Solicitations were "intentionally and materially false," instead using "significant portions of the donated funds for purposes unrelated to the NRA's core mission."[25] As examples of purportedly fraudulent spending by the NRA, Plaintiffs point to a number of alleged expenditures for "alternative purposes," including: (1) legal services; (2) advertising and marketing services; (3) travel; (4) and personnel.[26]

---

[20] Complaint ¶ 34.
[21] Complaint ¶ 35.
[22] Complaint ¶¶ 73, 82, 92, 106.
[23] Complaint ¶¶ 37-40.
[24] Plaintiffs allege that they learned about the purportedly fraudulent activity through media sources and an investigation conducted by the NRA's former President, Lt. Col. Oliver North ("North"). Apparently, Plaintiffs rely on media from the days leading up to and following North's ouster from his position, in the wake of an attempted coup that included extortion demands by North upon Defendant LaPierre offering money in exchange for control of the NRA. The facts and circumstances surrounding these events are the subject of pending litigation. *See*, *e.g.*, National Rifle Association of America v. Ackerman McQueen, Inc. et al. Civil Action No. 3:19-cv-02074-G (United States District Court for the Northern District of Texas – Dallas Division); National Rifle Association of America v. Ackerman McQueen, Inc. et al., Case No. CL19001757, CL19002067 (Va. Cir. Ct. Alexandria).
[25] Complaint ¶¶ 41-42.
[26] Complaint ¶¶ 74, 93.

Based on these allegations, Plaintiffs assert claims for fraud and racketeering, specifically mail fraud pursuant to 18 USC § 1341. The NRA now files this motion to dismiss the Second Amended Complaint.

## III.

## ARGUMENT

### A. Legal Standards for Motion to Dismiss.

The NRA moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

#### 1. Rule 12(b)(1): Lack of Subject Matter Jurisdiction.

Plaintiffs must establish that the Court has subject-matter jurisdiction in order to survive a motion to dismiss pursuant to Rule 12(b)(1). Standing to sue is a requirement of jurisdiction.[27] Thus, "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction" and "cannot proceed at all in any cause."[28] Courts must dismiss complaints for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) if the plaintiffs lack standing.[29]

In order to establish standing, plaintiff must show that "(1) it has suffered injury in fact that (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[30] The "critical question is whether at least one petitioner has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction."[31]

---

[27] *State by and through Tennessee Gen. Assembly v. United States Dep't of State,* 931 F.3d 499, 507 (6th Cir. 2019) (internal quotations and citations omitted).
[28] *Id.*
[29] *See, e.g., Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017); *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).
[30] *Tennessee General Assembly*, 931 F.3d at 507.
[31] *Horne v. Flores*, 557 U.S. 433, 445 (2009) (internal quotations and citations omitted).

12

### 2. Rule 12(b)(6): Failure to State a Claim.

A complaint only survives a Rule 12(b)(6) motion to dismiss "if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[32] Although the court must accept a plaintiff's allegations as true on a motion to dismiss, the court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."[33] A "formulaic recitation of the elements of a cause of action will not do"[34] nor will a "legal conclusion couched as a factual allegation."[35]

### B. Plaintiffs Lack Standing.

This Court lacks subject-matter jurisdiction over this case because Plaintiffs lack standing to challenge the NRA's use of donated funds. First, the New York Not-for-Profit Corporation Law limits those that may challenge nonprofit corporate action to certain individuals, including the attorney general, directors, officers, and other limited groups suing "in the right of the corporation."[36] Plaintiffs are not included in any of the statutory groups and therefore lack standing.

Moreover, courts routinely hold that donors lack standing where they make contributions to nonprofits without some restriction or contingent ownership interest in place.[37] Plaintiffs do not

---

[32] *Kantz v. Rubin Lublin, PLLC*, 2015 WL 1543531, at *7 (M.D. Tenn. Apr. 6, 2015) (quoting *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (internal citations and quotations omitted)).
[33] *Kantz*, 2015 WL 1543531, at *7 (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotations omitted)).
[34] *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-47 (6th Cir. 2012).
[35] *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal quotations and citations omitted).
[36] *See* New York Not-for-Profit Corporation Law § 720.
[37] *See, e.g., Wilding v. DNC Servs. Corp.*, 2017 WL 6345492, at *5 (S.D. Fla. Aug. 25, 2017) ("The act of donating to an organization does not, of itself, create a legally protected interest in the organization's operations") (citing *Orient v. Linus Pauling Inst. Of Sci. and Med.*, 936 F.Supp.

allege that their donations, in the form of unrestricted donations, membership upgrades, and license plate purchases, were subject to any restrictions or subject to any continuing ownership interest.[38] Plaintiffs therefore lack standing and this action must be dismissed in its entirety.

**C.      Plaintiffs Fail to State a Claim for Fraud.**

A plaintiff asserting a claim for fraud or a RICO claim sounding in fraud must state with particularity the circumstances constituting the fraud pursuant to Rule 9(b) or be dismissed.[39] In order to satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[40]

Under Tennessee law, a plaintiff asserting a claim for fraud[41] must establish that defendant (1) made a false statement concerning a material fact (2) with knowledge of the statement's falsity

---

704, 707 (D. Ariz. 1996) ("Funding research does not automatically confer a legally protected interest in that organization's assets on a donor, absent independent rights such as those that might arise in a contractual relationship").

[38] *See, e.g., Carl J. Herzog Found., Inc. v. Univ. of Bridgeport*, 699 A.2d 995, 999 (Conn. 1997) ("[I]t is clear that the general rule at common law was that a donor had no standing to enforce the terms of a completed charitable gift unless the donor had expressly reserved a property interest in the gift."); Iris J. Goodwin, Donor Standing to Enforce Charitable Gifts: Civil Society v. Donor Empowerment, 58 Vand. L. Rev. 1093, 1145 (2005) ("To return to the particulars of the current law with respect to donor standing, nearly all the modern American authorities—decisions, model acts, statutes, and commentaries—deny a donor standing to enforce a restricted gift to public charity absent express retention of a reversion in the donative instrument.").

[39] *See Hayes v. Burns*, 2013 WL 4501464, at *5 (M.D. Tenn. Aug. 22, 2013) (fraud); *see also Blount Fin. Serv., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) (RICO).

[40] *Smith v. Bank of America Corp*, 485 Fed. Appx. 749, 752 (6th Cir. 2012) (internal citations and quotations omitted).

[41] Although it is unclear whether Plaintiffs are asserting a claim for common law fraud or fraudulent inducement, it is irrelevant for the Court's purposes because the elements lacking from Plaintiffs' allegations are necessary for either claim.  *See Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).

12

or reckless disregard for its truth (3) the statement was reasonably relied upon, and (4) an injury resulted from this reliance.[42]

1. **Falsity.**

Plaintiffs fail to allege that the statements[43] made by the NRA were false. Rather, Plaintiffs allege in conclusory fashion that the Solicitations were false because the NRA spent resources on "alternative purposes" that Plaintiffs allege do not meet the "NRA's core mission." That bare assertion is plainly insufficient at the pleading stage.

First, most of the so-called Solicitations actually contain no promise on behalf of the NRA as to how any donated funds will ultimately be used. Rather, they consist of general information about the NRA and its history, rallying calls before key elections, and thank you letters for past contributions. Plaintiffs' claim for fraud is limited only to the portions of those Solicitations that potentially speak to how donated funds may be used.

Plaintiffs fail to allege why the expenditures complained of fail to meet the uses conveyed by the Solicitations (to the extent they specify any). Although Plaintiffs point to specific expenditures of which they apparently do not approve, the vast majority of the NRA's expenditures are not alleged to fall without Plaintiff's definition of the "NRA's core mission." Of course, there can be no dispute that the NRA spends its funds on gun safety education, promotion of shooting sports and hunter safety, wildlife conservation, and Second Amendment advocacy. Moreover,

---

[42] *See PNC Multifamily Capital Inst. Fund v. Bluff County Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012).

[43] Although the Second Amended Complaint does, unlike the original and First Amended Complaint, allege some specific statements by the NRA, to the extent Plaintiffs allege that they were "exposed to the marketing messages of Defendants," or any other such unparticularized allegations, Plaintiffs have failed to plead with particularity the time, place, and content of the allegedly fraudulent statement. Any claims arising from these "statements" must therefore be dismissed pursuant to Rule 9(b). *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005).

12

though Plaintiffs may disagree with the NRA's expenditures, simply declaring certain areas of spending not within the NRA's core mission (or deciding how best to achieve the goals of that mission) is not Plaintiffs' prerogative. The NRA's decision to devote certain resources as it determines in its business judgment are appropriate is not actionable in fraud simply because Plaintiffs disagree with certain, isolated expenditures.

However, even putting aside what constitutes expenditures that fit within the "NRA's core mission," the NRA's statements cited by Plaintiffs are unquestionably true. Not a single Solicitation alleged by Plaintiffs states that donated funds will be *exclusively* (or even mostly) used to fund the "NRA's core mission."[44] Therefore, Plaintiffs complaint, at most, is essentially that *some* donations were used for purposes that Plaintiffs dislike. Even if that is true, it does not constitute fraud.

## 2. **Knowledge and Intent.**

Plaintiffs fail to allege in more than a passing, conclusory assertion that the NRA knew of and intended the alleged falsity of its statements.[45] They fail to allege that the NRA acted with a reckless disregard for their truth, nor that the NRA intended to induce Plaintiffs' reliance upon any alleged misrepresentations.[46]

When a fraud claim relates to the alleged promise of some future action by defendant, there must be a "misrepresentation[] made without the present intention to carry it out."[47] "Neither the

---

[44] *See, e.g.,* "Your support will help us defend your Second Amendment freedom whenever and wherever it comes under attack. In addition, your membership dues will help the NRA cultivate the next generation of sportsmen and women through our youth firearms trainings…empower women with our self-defense programs…and support our police officers with our world-class law enforcement training programs" (Complaint 13), "Contributions raised will be used to advance the mission of the NRA" (Complaint 14).
[45] Complaint ¶ 12.
[46] S*ee Baugh*, 340 S.W.3d at 388.
[47] *Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006).

12

failure to in fact keep the promise, nor the plaintiff's subjective impression will demonstrate that there was no present intention to carry out the promise."[48] Plaintiffs do not allege, as they must, that the NRA made a representation that *at the time* it did not intend to fulfill. Nor could they: the NRA unquestionably used and uses donated funds to fulfill its mission, even as defined by Plaintiffs. However, even assuming *arguendo* that Plaintiffs had alleged a misrepresentation (which they do not), they cannot plead the element of intent for any future expenditures that were not in contemplation at the time of the Solicitation.[49] Plaintiffs fail to allege knowledge or intent.

### 3. <u>Reliance.</u>

"Conclusory statements of reliance are not sufficient to explain with particularity how a plaintiff detrimentally relied on the alleged fraud."[50] Further, "reliance on a fraudulent misrepresentation must be reasonable; if one knows the truth and is not deceived, he is not defrauded."[51]

Plaintiffs fail to allege reliance, baldly asserting that they "reasonably relied upon the statements made."[52] The Solicitations Plaintiffs allege that they relied on in making donations consist of general information about the NRA and its history, rallying calls before key elections, and (perhaps most bizarre) thank you letters for past contributions. Most of the Solicitations do not convey a message related to how donated funds will be used at all. As discussed above, even the Solicitations that *do* provide some remote indication of how funds may be used convey that those funds will be used to "help" or "advance" the NRA's goals.[53] All nonprofits have

---

[48] *Id*.
[49] *Id*.
[50] *Kantz*, 2015 WL 1543531, at *6 (internal citations and quotations omitted).
[51] *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (internal citations and quotations omitted).
[52] Complaint ¶ 36.
[53] *See* Section III.C.1, *supra*.

12

expenditures to which, in the business judgment of management,[54] they must devote resources in order to function. Thus, Plaintiffs' assertions that the NRA's expenditures on legal or marketing services is somehow fraudulent is without merit.

### 4. Injury.

Plaintiffs' conclusory assertion that they have been injured by the NRA's expenditures fails to allege this element, as well. When there is no fraudulent misrepresentation, there can be no causation. Even assuming Plaintiffs adequately pleaded a misrepresentation by the NRA, which they do not and cannot do, and assuming that they actually and reasonably relied upon that representation, which they do not, it is only the specific monies donated by Plaintiffs and allegedly misapplied by the NRA that would qualify as the harm—a very small sum.[55]

The Amended Complaint's allegations of fraud must therefore be dismissed.

### D. Plaintiffs Fail to State a Claim for a RICO Violation.

In order to plead a RICO violation under 18 USC § 1962(c), a plaintiff must adequately allege that defendant conducted an enterprise through a pattern of racketeering activity.[56] A RICO violation may be predicated on mail (or wire) fraud. To state a claim for a mail fraud in violation of RICO pursuant to 18 USC § 1341, a plaintiff must allege (1) a scheme to defraud involving the use of mail (2) for the purpose of executing the scheme.[57] In pleading the predicate fraudulent misrepresentations, a plaintiff must meet the Rule 9(b) pleading standard.[58] A plaintiff alleging mail fraud "must also demonstrate *scienter* to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with

---

[54] New York Not-for-Profit Corporation Law § 717 (Duty of directors, officers, and key persons).
[55] *See Graham v. American Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003).
[56] *See Moon v. Harrison Piping Supplies*, 465 F.3d 719, 723 (6th Cir. 2006).
[57] *See United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997).
[58] *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012).

12

respect to potentially misleading information."[59] In addition, the predicate act must be a "proximate cause" of the injury.[60]

Plaintiffs fail to properly plead a RICO enterprise and fails to adequately allege the predicate acts of mail fraud, each of which is required to survive a motion to dismiss.

### 1. RICO Enterprise.

A RICO "person" can be either an individual or a corporation, and a RICO "enterprise" may consist of any legal or *de facto* association. However, "[t]he enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable."[61] Accordingly, to establish RICO liability, a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."[62] This principle is known as the "non-identity" or "distinctiveness" requirement, and its consequence is that "a corporation may not be liable under [RICO] for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself."[63]

Plaintiffs' Count III for RICO Violation asserts that the NRA, through its own employees, including LaPierre, conducted an enterprise in violation of RICO. Where, as here, a complaint "alleges an enterprise consisting of affiliated entities [and/or agents]," but fails to allege "that the

---

[59] *Id.* at 404.
[60] *Id.* at 405.
[61] *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013).
[62] *Id.*, citing *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001).
[63] *Id.* (internal citations and quotation marks omitted); *see also Pineda Transportation, LLC v. FleetOne Factoring, LLC*, 2018 WL 2137760, at *5 (M.D. Tenn. May 9, 2018) (cannot allege simultaneously that "corporation is a RICO enterprise" and that "corporation is also a person illegally engaged in racketeering activity").

12

entities were conducting the affairs of a separate 'enterprise,'" any RICO claims fail.[64] Plaintiffs "cannot maintain an action against [the corporation] as both the 'enterprise' and the 'person' subject to liability under RICO."[65] That is, however, exactly what they have attempted to do. Plaintiffs' RICO claim against the NRA must therefore be dismissed.

### 2. Mail Fraud.

Further, a plaintiff alleging mail fraud must adequately allege a scheme to defraud, use of the mails in furtherance of the scheme, scienter, and proximate cause. As discussed above, Plaintiffs fail to adequately allege fraud. Plaintiffs' failure to adequately allege the underlying fraudulent activity is fatal to their claim.[66] Further, the Second Amended Complaint's sole allegation of state of mind is that the NRA "knew" that its statements were "intentionally false."[67] This conclusory allegation does not adequately plead recklessness or specific intent and is a classic example of a "legal conclusion masquerading as [a] factual allegation" and "will not suffice."[68] Lastly, Plaintiffs clearly fail to allege, and cannot establish, proximate cause. Where there is no satisfactory allegation of a predicate fraudulent act or reliance upon that act, there can of course be no direct causal link between the defendant's conduct and the alleged injury.

Count III for Violation of RICO must therefore be dismissed.

### IV.

### CONCLUSION

For the foregoing reasons, the NRA respectfully requests that the Court dismiss Counts I and III of the Second Amended Complaint.

---

[64] *See, e.g.*, *Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 998 (D. Kan. 2018)
[65] *Bailey v. Memphis Bonding Company, Inc.*, 2019 WL 1300092, at *4 (W.D. Tenn. Mar. 21, 2019).
[66] *See* Section C, *supra.*
[67] Complaint ¶ 12.
[68] *Kantz*, 2015 WL 1543531, at *7.

12

By:    */s/ W. Allen McDonald*
LACY, PRICE & WAGNER PC
W. Allen McDonald
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
(865)-246-0800

BREWER, ATTORNEYS & COUNSELORS
William A. Brewer IV (admitted *pro hac vice*)
750 Lexington Avenue, 14th Floor
New York, NY 10022
(212)-489-1400

*ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA*

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's electronic filing system.

Date: February 19, 2020

*/s/ W. Allen McDonald*