# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DAVID DELL'AQUILA, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| - against - | ) No: 3:19-cv-00679<br>) Judge William L. Campbell Jr.<br>) |
| WAYNE LAPIERRE, NATIONAL RIFLE ASSOCIATION OF AMERICA, and NRA FOUNDATION, INC. | ) Magistrate Judge Jefferey S. Frensley<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OF LAW IN SUPPORT
## OF WAYNE LAPIERRE'S MOTION TO DISMISS

LACY, PRICE & WAGNER PC
Allen McDonald
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
(865)-246-0800

BREWER, ATTORNEYS & COUNSELORS
William A. Brewer IV (admitted *pro hac vice*)
750 Lexington Avenue, 14th Floor
New York, NY 10022
(212)-489-1400

*ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA AND WAYNE LAPIERRE*

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | STATEMENT OF RELEVANT FACTS | | 2 |
| III. | ARGUMENT | | 4 |
| | A. | Legal Standards for Motion to Dismiss. | 4 |
| | | 1. Rule 12(b)(1): Lack of Subject Matter Jurisdiction. | 5 |
| | | 2. Rule 12(b)(6): Failure to State a Claim. | 5 |
| | B. | Plaintiffs Lack Standing. | 6 |
| | C. | Plaintiffs Fail to State a Claim for Fraud. | 7 |
| | | 1. Falsity. | 7 |
| | | 2. Knowledge and Intent. | 9 |
| | | 3. Reliance. | 10 |
| | | 4. Injury. | 10 |
| | D. | Plaintiffs Fail to State a Claim for a RICO Violation. | 11 |
| IV. | CONCLUSION | | 12 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baugh v. Novak*,
　340 S.W.3d 372 (Tenn. 2011) ................................................................................... 7, 9

*Blount Fin. Serv., Inc. v. Walter E. Heller & Co.*,
　819 F.2d 151 (6th Cir. 1987) ........................................................................................ 7

*Carl J. Herzog Found., Inc. v. Univ. of Bridgeport*,
　699 A.2d 995 (Conn. 1997) ......................................................................................... 6

*Coffey v. Foamex L.P.*,
　2 F.3d 157 (6th Cir. 1993) ......................................................................................... 10

*Courie v. Alcoa Wheel & Forged Prods.*,
　577 F.3d 625 (6th Cir. 2009) ....................................................................................... 5

*Fritz v. Charter Twp. of Comstock*,
　592 F.3d 718 (6th Cir. 2010) ....................................................................................... 6

*Graham v. American Cyanamid Co.*,
　350 F.3d 496 (6th Cir. 2003) ..................................................................................... 11

*Hayes v. Burns*,
　2013 WL 4501464 (M.D. Tenn. Aug. 22, 2013) .......................................................... 7

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
　668 F.3d 393 (6th Cir. 2012) ..................................................................................... 11

*Horne v. Flores*,
　557 U.S. 433 (2009) ..................................................................................................... 5

*In re Travel Agent Comm'n Antitrust Litig.*,
　583 F.3d 896 (6th Cir. 2009) ....................................................................................... 6

*Kantz v. Rubin Lublin, PLLC*,
　2015 WL 1543531 (M.D. Tenn. Apr. 6, 2015) ............................................. 5, 6, 10, 12

*Lyshe v. Levy*,
　854 F.3d 855 (6th Cir. 2017) ....................................................................................... 5

*Moon v. Harrison Piping Supplies*,
　465 F.3d 719 (6th Cir. 2006) ..................................................................................... 11

*Orient v. Linus Pauling Inst. Of Sci. and Med.*,
 936 F.Supp. 704 (D. Ariz. 1996) ..................................................................................................6

*PNC Multifamily Capital Inst. Fund v. Bluff County Dev. Corp.*,
 387 S.W.3d 525 (Tenn. Ct. App. 2012) .......................................................................................7

*Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*,
 447 F.3d 923 (6th Cir. 2006) ...................................................................................................9, 10

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
 683 F.3d 239 (6th Cir. 2012) .........................................................................................................6

*Smith v. Bank of America Corp*,
 485 Fed. Appx. 749 (6th Cir. 2012).............................................................................................7

*State by and through Tennessee Gen. Assembly v. United States Dep't of State*,
 931 F.3d 499 (6th Cir. 2019) .........................................................................................................5

*United States v. Frost*,
 125 F.3d 346 (6th Cir. 1997) .......................................................................................................11

*Walburn v. Lockheed Martin Corp.*,
 431 F.3d 966 (6th Cir. 2005) ....................................................................................................3, 7

*Wilding v. DNC Servs. Corp.*,
 2017 WL 6345492 (S.D. Fla. Aug. 25, 2017)..............................................................................6

**Statutes**

18 USC § 1341................................................................................................................................4, 11

18 USC § 1962(c) ...............................................................................................................................11

New York Not-for-Profit Corporation Law § 717 .......................................................................10

New York Not-for-Profit Corporation Law § 720 .........................................................................6

RICO ................................................................................................................................ *passim*

**Rules**

Rule 9(b) ......................................................................................................................................3, 7, 11

Rule 12(b)(1)................................................................................................................................2, 4, 5

Rule 12(b)(6)................................................................................................................................2, 4, 5

Rule 23(a)..............................................................................................................................................1

Rule 23(b) ........................................................................................................................1

# I.

# PRELIMINARY STATEMENT

Last summer, Plaintiff David Dell'Aquila ("Dell'Aquila") embarked on a self-described "grass-roots effort" to impose personnel changes of his own upon the National Rifle Association of America (the "NRA").[1] At first, Dell'Aquila tried to rally NRA donors to withhold funds until his agenda was adopted.[2] When that effort failed, Dell'Aquila filed this putative class action against the NRA, the NRA Foundation ("NRAF"), and NRA Executive Vice President Wayne LaPierre ("LaPierre"). Now, in his Second Amended Complaint ("Complaint"), Dell'Aquila adds three additional named plaintiffs. Plaintiffs' underlying grievances against the NRA's leadership, which take up pages of the Complaint but are irrelevant to the claims asserted, are misguided and irrelevant here. To enlist the time and resources of this Court, Plaintiffs must do more than offer vague, salacious accusations full of invective—they must satisfy federal pleading standards applicable to their fraud and RICO claims. That Plaintiffs do not and cannot do.

On behalf of themselves and two putative classes,[3] Plaintiffs assert that they donated to the NRA and the NRA Foundation based upon allegedly-false statements that these funds would be used on certain charitable purposes.[4] Without alleging that Defendants failed to fund those charitable purposes, Plaintiffs accuse Defendants of fraud and racketeering based upon alleged expenditures for other, "alternative" purposes, including charitable donations, legal services,

---

[1] Danny Hakim, "NRA Donor Directs a Revolt Against a 'Radioactive Leader," NYTIMES (July 2, 2019), https://www.nytimes.com/2019/07/02/us/nra-donors-wayne-lapierre.html
[2] *Id.*
[3] Although a Rule 23 motion for class certification is not before the Court, Plaintiffs' putative classes, comprised of every American donor to the NRA or the NRAF from November 30, 2015 to January 26, 2019, respectively, cannot meet the requirements imposed by the Federal Rules of Procedure. The putative classes fail the tests for all Rule 23(a) requirements and the predominance and superiority factor pursuant to Rule 23(b) on which Plaintiffs base them.
[4] Complaint ¶ 36.

advertising and marketing, travel, and personnel.[5] Notably, Plaintiffs do not allege that donations raised for specific programs or purposes were diverted.

Because Plaintiffs lack standing to challenge Defendants' corporate actions, their claims must be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. In addition, Plaintiffs fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) against Wayne LaPierre for Fraud and Violations of RICO. First, the Complaint is devoid of allegations sufficient to satisfy the elements of a claim for fraud, including falsity of representation, knowledge, intent, reliance, or injury. Second, Plaintiffs fail to properly plead a RICO violation. The Complaint falls woefully short of its pleading requirements for each cause of action and therefore must be dismissed.

## II.

## STATEMENT OF RELEVANT FACTS

Plaintiffs are allegedly NRA donors. In early Summer of 2019, in the midst of substantial false media coverage promoted by enemies of the NRA, Plaintiff Dell'Aquila embarked on a "grass-roots effort" to effect change at the NRA. As part of this effort, he appealed to other donors to withhold donations pending those "changes" coming into effect. Importantly, he sought attention from news outlets to spread his message.[6] In August of 2019, Dell'Aquila filed this lawsuit, earning more press coverage.[7] In his original and First Amended Complaint, Dell'Aquila was the sole class representative and represented himself pro se. After Defendants moved to

---

[5] Complaint ¶¶ 74, 83, 93, 107.
[6] Hakim, NYTIMES (July 2, 2019).
[7] Mark Maremont, "NRA Donor Files Suit Over CEO's Expenses," THE WALL STREET JOURNAL (Aug. 7, 2019), https://www.wsj.com/articles/nra-donor-files-suit-over-ceos-expenses-11565221846

12

dismiss, Dell'Aquila, having retained counsel, amended his Complaint, adding three additional named plaintiffs.

Plaintiffs allege that Defendants solicited Plaintiffs to make donations to the NRA and NRAF.[8] Plaintiffs allege that Defendants advised via various statements that the donations "would be used for gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States," which collectively Plaintiffs refer to as the "NRA's core mission."[9]

Plaintiffs assert that they relied on the following (or similar) solicitations by Mr. LaPierre (collectively, the "Solicitations"[10]):

- Emails from Wayne LaPierre dated July 21, 2014 and July 18, 2019, encouraging membership renewal in advance of elections.[11]

- A letter from Wayne LaPierre to Plaintiff Dell'Aquila dated July 3, 2018 stating, "Your leadership inspires so many to stand up and fight for the values we hold dear."[12]

- Exposure to "marketing messages" of unidentified time, place or content.[13]

Plaintiffs allege that, in reasonable reliance on the Solicitations, Plaintiffs donated to the NRA and NRAF between November 30, 2015 and January 26, 2019.[14] Each Plaintiff's contributions are contained in the allegations in the Complaint. In summary, Plaintiffs'

---

[8] Complaint ¶¶ 11, 27.
[9] Complaint ¶¶ 71, 80, 90, 104.
[10] Plaintiffs' remaining allegations concerning the content of solicitations are attributed to the NRA and NRAF. They are not representations allegedly attributable to Mr. LaPierre.
[11] Complaint ¶¶ 25-26.
[12] Complaint ¶ 32.
[13] Plaintiffs also allege exposure to "marketing messages" of unidentified time, place or content attributable to Mr. LaPierre. Complaint ¶ 35. Because of this lack of particularity, however, these statements cannot be the basis for fraud or RICO violations pursuant to Rule 9(b). *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005).
[14] Complaint ¶¶ 73, 82, 92, 106.

"donations" allegedly consist of purchase of NRA license plates, unrestricted donations, and membership upgrades.[15]

Plaintiffs contend that they learned[16] that the Solicitations were "intentionally and materially false," instead using "significant portions of the donated funds for purposes unrelated to the NRA's core mission."[17] As examples of purportedly fraudulent spending, Plaintiffs point to a number of alleged expenditures for "alternative purposes," including: (1) charitable donations; (2) legal services; (3) advertising and marketing services; (4) travel; (5) and personnel.[18]

Based on these allegations, Plaintiffs assert claims for fraud and racketeering, specifically mail fraud pursuant to 18 USC § 1341. Mr. LaPierre now files this motion to dismiss the Second Amended Complaint in its entirety.

## III.

## ARGUMENT

### A. Legal Standards for Motion to Dismiss.

Mr. LaPierre moves to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

---

[15] Complaint ¶¶ 37-40.
[16] Plaintiffs allege that they learned about the purportedly fraudulent activity through media sources and an investigation conducted by the NRA's former President, Lt. Col. Oliver North ("North"). Apparently, Plaintiffs rely on media from the days leading up to and following North's ouster from his position, in the wake of an attempted coup that included extortion demands by North upon Defendant LaPierre offering money in exchange for control of the NRA. The facts and circumstances surrounding these events are the subject of pending litigation. *See, e.g.,* National Rifle Association of America v. Ackerman McQueen, Inc. et al. Civil Action No. 3:19-cv-02074-G (United States District Court for the Northern District of Texas – Dallas Division); National Rifle Association of America v. Ackerman McQueen, Inc. et al., Case No. CL19001757, CL19002067 (Va. Cir. Ct. Alexandria).
[17] Complaint ¶¶ 41-42.
[18] Complaint ¶¶ 74, 83, 93, 107.

12

### 1. Rule 12(b)(1): Lack of Subject Matter Jurisdiction.

Plaintiffs must establish that the Court has subject-matter jurisdiction in order to survive a motion to dismiss pursuant to Rule 12(b)(1). Standing to sue is a requirement of jurisdiction.[19] Thus, "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction" and "cannot proceed at all in any cause."[20] Courts must dismiss complaints for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) if the plaintiffs lack standing.[21]

In order to establish standing, plaintiff must show that "(1) it has suffered injury in fact that (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[22] The "critical question is whether at least one petitioner has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction."[23]

### 2. Rule 12(b)(6): Failure to State a Claim.

A complaint only survives a Rule 12(b)(6) motion to dismiss "if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[24] Although the court must accept a plaintiff's allegations as true on a motion to dismiss, the court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations

---

[19] *State by and through Tennessee Gen. Assembly v. United States Dep't of State,* 931 F.3d 499, 507 (6th Cir. 2019) (internal quotations and citations omitted).
[20] *Id.*
[21] *See, e.g., Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017); *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).
[22] *Tennessee General Assembly*, 931 F.3d at 507.
[23] *Horne v. Flores*, 557 U.S. 433, 445 (2009) (internal quotations and citations omitted).
[24] *Kantz v. Rubin Lublin, PLLC*, 2015 WL 1543531, at *7 (M.D. Tenn. Apr. 6, 2015) (quoting *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (internal citations and quotations omitted)).

or legal conclusions masquerading as factual allegations will not suffice."[25] A "formulaic recitation of the elements of a cause of action will not do"[26] nor will a "legal conclusion couched as a factual allegation."[27]

**B.      Plaintiffs Lack Standing.**

This Court lacks subject-matter jurisdiction over this case because Plaintiffs lack standing to challenge the Defendants' use of donated funds. First, the New York Not-for-Profit Corporation Law limits those that may challenge corporate action to certain individuals, including the attorney general, directors, officers, and other limited groups suing "in the right of the corporation."[28] Plaintiffs are not included in any of the statutory groups and therefore lack standing.

Moreover, courts routinely hold that donors lack standing where they make contributions to nonprofits without some restriction or contingent ownership interest in place.[29] Plaintiffs' do not allege that their donations, in the form of unrestricted donations, membership upgrades, and license plate purchases, were subject to any restrictions or subject to any continuing ownership interest.[30] Plaintiffs therefore lack standing and this action must be dismissed in its entirety.

---

[25] *Kantz*, 2015 WL 1543531, at *7 (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotations omitted)).
[26] *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-47 (6th Cir. 2012).
[27] *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal quotations and citations omitted).
[28] New York Not-for-Profit Corporation Law § 720.
[29] *See, e.g., Wilding v. DNC Servs. Corp.*, 2017 WL 6345492, at *5 (S.D. Fla. Aug. 25, 2017) ("The act of donating to an organization does not, of itself, create a legally protected interest in the organization's operations") (citing *Orient v. Linus Pauling Inst. Of Sci. and Med.*, 936 F.Supp. 704, 707 (D. Ariz. 1996) ("Funding research does not automatically confer a legally protected interest in that organization's assets on a donor, absent independent rights such as those that might arise in a contractual relationship")).
[30] *See, e.g., Carl J. Herzog Found., Inc. v. Univ. of Bridgeport*, 699 A.2d 995, 999 (Conn. 1997) ("[I]t is clear that the general rule at common law was that a donor had no standing to enforce the terms of a completed charitable gift unless the donor had expressly reserved a property interest in the gift."); Iris J. Goodwin, Donor Standing to Enforce Charitable Gifts: Civil Society v. Donor Empowerment, 58 Vand. L. Rev. 1093, 1145 (2005) ("To return to the particulars of the current law with respect to donor standing, nearly all the modern American authorities—decisions, model

## C. Plaintiffs Fail to State a Claim for Fraud.

A plaintiff asserting a claim for fraud or a RICO claim sounding in fraud must state with particularity the circumstances constituting the fraud pursuant to Rule 9(b) or be dismissed.[31] In order to satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[32]

Under Tennessee law, a plaintiff asserting a claim for fraud[33] must establish that defendant (1) made a false statement concerning a material fact (2) with knowledge of the statement's falsity or reckless disregard for its truth (3) the statement was reasonably relied upon, and (4) an injury resulted from this reliance.[34]

### 1. Falsity.

Plaintiffs fail to allege that the statements[35] made by Mr. LaPierre were false. Rather, Plaintiffs allege in conclusory fashion that the Solicitations were false because Defendants spent

---

acts, statutes, and commentaries—deny a donor standing to enforce a restricted gift to public charity absent express retention of a reversion in the donative instrument.").

[31] *See Hayes v. Burns*, 2013 WL 4501464, at *5 (M.D. Tenn. Aug. 22, 2013) (fraud); *see also Blount Fin. Serv., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) (RICO).

[32] *Smith v. Bank of America Corp*, 485 Fed. Appx. 749, 752 (6th Cir. 2012) (internal citations and quotations omitted).

[33] Although it is unclear whether Plaintiffs are asserting a claim for common law fraud or fraudulent inducement, it is irrelevant for the Court's purposes because the elements lacking from Plaintiffs' allegations are necessary for either claim. *See Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).

[34] *See PNC Multifamily Capital Inst. Fund v. Bluff County Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012).

[35] Although the Second Amended Complaint does, unlike the original and First Amended Complaint, allege some specific statements by Mr. LaPierre, to the extent Plaintiffs allege that they were "exposed to the marketing messages of Defendants," or any other such unparticularized allegations, Plaintiffs fail to plead with particularity the time, place, and content of the allegedly fraudulent statement. Any claims arising from these "statements" must therefore be dismissed pursuant to Rule 9(b). *See Walburn*, 431 F.3d at 972.

12

resources on "alternative purposes" that Plaintiffs allege do not meet the "NRA's core mission." That bare assertion is plainly insufficient at the pleading stage.

First, the so-called Solicitations actually contain no promise on behalf of Mr. LaPierre as to how any donated funds will ultimately be used by Defendants. Rather, they consist of general information about the NRA and its history, rallying calls before key elections, and thank you letters for past contributions. Because Plaintiffs fail to allege a single representation by Mr. LaPierre of how funds will be used in the future, Plaintiffs also fail to allege falsity with respect to any such representation. Plaintiffs' claims therefore fail on this basis alone.

Even assuming *arguendo* that the statements allegedly attributable to Mr. LaPierre did convey some future intended use of donated funds (which they do not), Plaintiffs fail to allege why the expenditures complained of fail to meet the uses conveyed by the Solicitations (to the extent they specify any). Although Plaintiffs point to specific expenditures of which they apparently do not approve, the vast majority of Defendants' expenditures are not alleged to fall without Plaintiffs' definition of the "NRA's core mission." Of course, there can be no dispute that Defendants spend funds on gun safety education, promotion of shooting sports and hunter safety, wildlife conservation, and Second Amendment advocacy. Moreover, though Plaintiffs may disagree with Defendants' expenditures, simply declaring certain areas of spending not within the NRA's core mission (or deciding how best to achieve the goals of that mission) is not Plaintiffs' prerogative. Defendants' decision to devote certain resources as it determines in its business judgment are appropriate is not actionable in fraud simply because Plaintiffs disagree with certain, isolated expenditures.

However, even putting aside what constitutes expenditures that fit within the "NRA's core mission," any solicitations cited by Plaintiffs are unquestionably true. Not a single solicitation

12

alleged by Plaintiffs states that donated funds will be *exclusively* (or even mostly) used to fund the "NRA's core mission."[36] Therefore, Plaintiffs complaint, at most, is essentially that *some* donations were used for purposes that Plaintiffs dislike. Even if that is true, it does not constitute fraud.

### 2. **Knowledge and Intent.**

Plaintiffs fail to allege in more than a passing, conclusory assertion that Mr. LaPierre knew of and intended the alleged falsity of his statements.[37] They fail to allege that Mr. LaPierre acted with a reckless disregard for their truth, nor that Mr. LaPierre intended to induce Plaintiffs' reliance upon any alleged misrepresentations.[38]

When a fraud claim relates to the alleged promise of some future action by defendant, there must be a "misrepresentation[] made without the present intention to carry it out."[39] "Neither the failure to in fact keep the promise, nor the plaintiff's subjective impression will demonstrate that there was no present intention to carry out the promise."[40] Plaintiffs do not allege, as they must, that Mr. LaPierre made a representation that *at the time* he did not intend to fulfill. Nor could they: Defendants unquestionably used and use donated funds to fulfill the NRA's mission, even as defined by Plaintiffs. However, even assuming *arguendo* that Plaintiffs had alleged a misrepresentation (which they do not), they cannot plead the element of intent for any future

---

[36] *See, e.g.,* "Your support will help us defend your Second Amendment freedom whenever and wherever it comes under attack. In addition, your membership dues will help the NRA cultivate the next generation of sportsmen and women through our youth firearms trainings…empower women with our self-defense programs…and support our police officers with our world-class law enforcement training programs" (Complaint 13), "Contributions raised will be used to advance the mission of the NRA" (Complaint 14).
[37] Complaint ¶ 12.
[38] S*ee Baugh*, 340 S.W.3d at 388.
[39] *Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc*., 447 F.3d 923, 931 (6th Cir. 2006).
[40] *Id*.

12

expenditures that were not in contemplation at the time of the Solicitation.[41] Plaintiffs fail to allege knowledge or intent.

### 3. Reliance.

"Conclusory statements of reliance are not sufficient to explain with particularity how a plaintiff detrimentally relied on the alleged fraud."[42] Further, "reliance on a fraudulent misrepresentation must be reasonable; if one knows the truth and is not deceived, he is not defrauded."[43]

Plaintiffs fail to allege reliance, baldly asserting that they "reasonably relied upon the statements made."[44] The Solicitations Plaintiffs allege that they relied on in making donations consist of general information about the NRA and its history, rallying calls before key elections, and (perhaps most bizarre) thank you letters for past contributions. Mr. LaPierre's Solicitations do not convey a message related to how donated funds will be used at all. All nonprofits have expenditures to which, in the business judgment of management,[45] they must devote resources in order to function. Thus, Plaintiffs' assertions that Defendants' expenditures on legal or marketing services is somehow fraudulent is without merit.

### 4. Injury.

Plaintiffs' conclusory assertion that they have been injured by Defendants' expenditures fails to allege this element, as well. When there is no fraudulent misrepresentation, there can be no causation. Even assuming Plaintiffs adequately pleaded a misrepresentation by Mr. LaPierre, which they do not and cannot do, and assuming that they actually and reasonably relied upon that

---

[41] *Id.*
[42] *Kantz*, 2015 WL 1543531, at *6 (internal citations and quotations omitted).
[43] *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (internal citations and quotations omitted).
[44] Complaint ¶ 36.
[45] New York Not-for-Profit Corporation Law § 717 (Duty of directors, officers, and key persons).

representation, which they do not, it is only the specific monies donated by Plaintiffs and allegedly misapplied by Defendants' that would qualify as the harm—a very small sum.[46]

The Amended Complaint's Fraud allegations must therefore be dismissed.

**D.      Plaintiffs Fail to State a Claim for a RICO Violation.**

In order to plead a RICO violation under 18 USC § 1962(c), a plaintiff must adequately allege that defendant conducted an enterprise through a pattern of racketeering activity.[47] A RICO violation may be predicated on mail (or wire) fraud. To state a claim for a mail fraud in violation of RICO pursuant to 18 USC § 1341, a plaintiff must allege (1) a scheme to defraud involving the use of mail (2) for the purpose of executing the scheme.[48] In pleading the predicate fraudulent misrepresentations, a plaintiff must meet the Rule 9(b) pleading standard.[49] A plaintiff alleging mail fraud "must also demonstrate *scienter* to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information."[50] In addition, the predicate act must be a "proximate cause" of the injury.[51]

A plaintiff alleging mail fraud must adequately allege a scheme to defraud, use of the mails in furtherance of the scheme, scienter, and proximate cause. As discussed above, Plaintiffs fail to adequately allege fraud. Plaintiffs' failure to adequately allege the underlying fraudulent activity is fatal to their claim.[52] Further, the Second Amended Complaint's sole allegation of state of mind is that Mr. LaPierre "knew" that his statements were "intentionally false."[53] This conclusory

---

[46] *See Graham v. American Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003).
[47] *See Moon v. Harrison Piping Supplies*, 465 F.3d 719, 723 (6th Cir. 2006).
[48] *See United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997).
[49] *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012).
[50] *Id.* at 404.
[51] *Id.* at 405.
[52] *See* Section C, *supra*.
[53] Complaint ¶ 12.

12

allegation does not adequately plead recklessness or specific intent and is a classic example of a "legal conclusion masquerading as [a] factual allegation" and "will not suffice."[54] Lastly, Plaintiffs clearly fail to allege, and cannot establish, proximate cause. Where there is no satisfactory allegation of a predicate fraudulent act or reliance upon that act, there can of course be no direct causal link between the defendant's conduct and the alleged injury.

Plaintiffs' causes of action for Violations of RICO must therefore be dismissed.

## IV.

## CONCLUSION

For the foregoing reasons, Wayne LaPierre respectfully requests that the Court dismiss the Amended Complaint in its entirety.

By:     */s/ W. Allen McDonald*
LACY, PRICE & WAGNER PC
W. Allen McDonald
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
(865)-246-0800

BREWER, ATTORNEYS & COUNSELORS
William A. Brewer IV (admitted *pro hac vice*)
750 Lexington Avenue, 14th Floor
New York, NY 10022
(212)-489-1400

*ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA AND WAYNE LAPIERRE*

---

[54] *Kantz*, 2015 WL 1543531, at *7.

## CERTIFICATE OF SERVICE

      I do hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's electronic filing system.

    Date: February 19, 2020

                                              */s/ W. Allen McDonald*