UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID DELL'AQUILA, ) | |
| LORANNDA BORJA, ) | |
| TODD CHESNEY, and ) | |
| BRENT WEBER, on behalf of themselves ) | |
| and all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:19-cv-00679 |
| ) | |
| WAYNE LAPIERRE, the NATIONAL ) | Judge Campbell |
| RIFLE ASSOCIATION OF AMERICA, ) | Magistrate Judge Frensley |
| and the NRA FOUNDATION, INC., ) | |
| ) | JURY DEMAND |
| Defendants. ) | |

**REPLY IN SUPPORT OF THE NRA FOUNDATION'S
MOTION TO DISMISS**

Dated:       March 18, 2020             Respectfully Submitted,

**NEAL & HARWELL, PLC**

 /s/ Aubrey B. Harwell, Jr.
Aubrey B. Harwell, Jr. (BPR # 2559)
John E. Quinn (BPR # 12220)
William J. Harbison II (BPR # 33330)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
aharwell@nealharwell.com
jquinn@nealharwell.com
jharbison@nealharwell.com

*Counsel for Defendant NRA Foundation, Inc.*

## I. INTRODUCTION

Plaintiffs' Response does not clarify their pleading deficiencies. Instead, it highlights these deficiencies and contradictions by asserting simple conclusions (rather than pointing to required factual allegations). Plaintiffs also ignore—and thus *concede*—many of the NRA Foundation's arguments. Critically, Plaintiffs ignore their allegations that the NRA Foundation could use donated funds for a variety of causes. Plaintiffs' inability and refusal to refute the NRA Foundation's arguments confirms that the Court should grant the NRA Foundation's Motion to Dismiss.

## II. ARGUMENT

### A. Plaintiffs' Response Confirms They Lack Standing

Plaintiffs first argue they have standing because a line of New York decisions grants donors standing to sue charitable organizations. This argument is without merit for several reasons.

**First,** Plaintiffs contend that "[c]laims that involve the internal affairs of a corporation should be resolved in accordance with the law of the state of incorporation." [D.E. 54, Opp'n at 5]. Even assuming this is correct, New York law cannot apply *to the NRA Foundation*, which is chartered in Washington, D.C. [*See* D.E. 43, Second Am. Compl. at ¶ 7].[1] Moreover, this argument <u>confirms</u> that this case is actually about a challenge to the NRA Foundation's actions and decisions involving the use of charitable donations. This concession proves that the Court should dismiss all claims against the NRA Foundation.

**Second,** the Court should apply Tennessee law. The <u>only</u> named Plaintiff who made any donations to the NRA Foundation is Mr. Dell'Aquila, who is a Tennessee resident. [D.E. 43, Am.

---

[1] Although Plaintiffs argue New York law applies to the standing issue, they later contend that Washington D.C. law applies to the NRA Foundation. [*See* D.E. 54, Opp'n at 10].

Compl. at ¶¶ 1, 37-40]. Because Tennessee has the most significant relationship to this litigation, Tennessee law applies to the NRA Foundation. *See In re Bridgestone/Firestone*, 138 S.W.3d 202, 208 (Tenn. Ct. App. 2003). And under Tennessee law, Plaintiffs lack standing to challenge the NRA Foundation's decisions (which they concede is what this case is really about). *See* Tenn. Code Ann. § 48-53-104.

**Third,** the result is the same even if Washington D.C. law applies—Plaintiffs still lack standing to challenge the NRA Foundation's actions. *See* D.C. Code Ann. § 29-403.04 (prohibiting challenges to validity of nonprofit corporation's actions as *ultra vires* except by certain specified individuals, *e.g.*, the Attorney General, directors, or members).

**Fourth,** the New York decisions cited by Plaintiffs are inapposite. In *Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, 281 A.D.2d 127 (N.Y. App. Div. 2001), the court conferred donor standing because the donors specifically reserved rights when they made charitable contributions—something not present here. In *Marcus v. Jewish Nat'l Fund, Inc.*, 158 A.D.2d 101 (N.Y. App. Div. 1990), the court found donor standing because the charity never allocated any resources to areas it claimed it would—again, something not present in this case.[2] The NRA Foundation's opening brief contains better-reasoned (and more on-point) decisions, all of which confirm that Plaintiffs lack standing. [*See* D.E. 47, Mem. in Supp. at 7-8].

## B. The Second Amended Complaint Fails to Satisfy Rule 9(b)

Plaintiffs next contend their Second Amended Complaint satisfies Rule 9(b)'s particularity requirements because paragraphs 11-34 "very specifically state[] the statements made by Defendants, the speaker of such statements, and the time that such statements were made." [D.E.

---

[2] There is no allegation in the Second Amended Complaint that the NRA Foundation ever failed to fund what Plaintiffs call the "NRA's Core Mission."

54, Opp'n at 15-16]. This conclusory argument is simply not true *as to the NRA Foundation*, and Plaintiffs cannot conflate statements made by others to make it so. In fact, the bulk of these allegations concern statements made by other Defendants—*not the NRA Foundation*. Plaintiffs' Response confirms their failure to identify any specific "solicitation" made *by the NRA Foundation*, the speaker(s), where/when the statement was made, or why it was allegedly fraudulent. Put another way, Plaintiffs fail to specify the "time, place, and content of the alleged misrepresentation" as required by Rule 9(b). *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 505 (6th Cir. 2007).

Nor can they, because the NRA Foundation never "solicited" donations for use exclusive to the "NRA's Core Mission" (thus, there can be no fraud). In fact, Plaintiffs' own allegations confirm the NRA Foundation ***specifically informed donors it could use donated funds for a variety of causes***. For example, the NRA Foundation's "Mission Statement" states it "***focuses on***" shooting sports but also benefits programs "***such as youth education***, law enforcement training, hunter education, conservation, firearms and marksmanship training and safety, ***and much more***."[3] [D.E. 43, Second Am. Compl. at ¶ 17 (emphasis added)]. Similarly, the NRA Foundation's website describes the "***general focus***"—but nonexclusive—scope of its grant program. [*Id.* at ¶ 19 (emphasis added)]. These allegations are fatal to Plaintiffs' claims against the NRA Foundation. *See, e.g.*, *In re Wheland Foundry, LLC*, 2008 WL 2952483, at *3 (Bankr. E.D. Tenn. July 29, 2008) (granting motion to dismiss and stating "the court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out . . . if these allegations are contradicted by the description itself." (internal quotations and citations omitted)).

---

[3] This also refutes Plaintiffs' allegations that the NRA Foundation somehow misused donated funds by contributing to two youth-oriented charities—something its own "Mission Statement" expressly permits.

## C. Plaintiffs Fail to Plausibly Allege the Elements of Fraud (Count II)

Without analysis or attempt to rebut the NRA Foundation's arguments, Plaintiffs next contend their Second Amended Complaint plausibly alleges the elements of fraud. [D.E. 54, Opp'n at 14-15]. This conclusory argument fares no better than Plaintiffs' conclusory allegations. Plaintiffs fail to plausibly allege the following elements of their fraud claim (Count II):

*(1) Falsity:* Any alleged "solicitations" cannot be false because there is no allegation the NRA Foundation promised to use donated funds <u>exclusively</u> for the "NRA's Core Mission." As discussed above, Plaintiffs actually allege the exact opposite—*i.e.*, the NRA Foundation expressly reserved the right to use donated funds for a variety of causes. [*See* D.E. 43, Second Am. Compl. at ¶¶ 17-19].

*(2) Materiality:*[4] As there is no allegation of any failure to fund the "NRA's Core Mission," Plaintiffs cannot plausibly allege the NRA Foundation's "solicitations" affected their conduct.

*(3) Knowledge of Falsity:* Plaintiffs do not plausibly allege this element because there is no allegation that the NRA Foundation failed to fund the "NRA's Core Mission."

*(4) Reasonable Reliance:* Plaintiffs could not have reasonably relied on the NRA Foundation's allegedly misleading "solicitations" from 2015-2019 because they also allege the NRA Foundation began misusing donated funds as early as 2009. [*Id.* at ¶¶ 79-80, 83].

*(5) Damages:* Plaintiffs' Response fails to address the conclusory nature of their damages allegations, which "will not suffice" to state a cause of action. *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Nor can Plaintiffs have any damages if the NRA

---

[4] Plaintiffs' Response does not address this argument.

Foundation used donated funds in accordance with its Mission Statement—which Plaintiffs apparently concede. [D.E. 43, Second Am. Compl. at ¶¶ 17-19].

### D. Plaintiffs Fail to Plausibly Allege the Elements of RICO (Count IV)

Plaintiffs' final argument is that their Second Amended Complaint states a valid RICO claim because it adequately pleads scienter. [D.E. 54, Opp'n at 20-21]. The conclusory allegations Plaintiffs point to are insufficient. *See, e.g.*, *Jones v. Ameriquest Mortg.*, 2016 WL 2866213, at *4 (M.D. Tenn. May 17, 2016) ("Similarly, Plaintiff's RICO claim is not supported by factual allegations. Although Plaintiff has recited the statutory language of the RICO statute, she has not pled any actual fact supporting a RICO claim. Such conclusory allegations will not support a claim for relief."). There is also no basis for inferring scienter because Plaintiffs' allegations confirm that the NRA Foundation *specifically told donors it could use donated funds for a variety of causes*. [D.E. 43, Second Am. Compl. ¶¶ 17-19]. Moreover, the Second Amended Complaint is devoid of any specific allegation the NRA Foundation ever made any "solicitations" via the U.S. Postal Service. [*See* D.E. 43, Second. Am. Compl. at ¶¶ 27-34, 101-114]. Plaintiffs ignore this argument, which alone dooms their RICO claim.

### III. CONCLUSION

Rather than respond to the substantive arguments contained in the NRA Foundation's Motion to Dismiss, Plaintiffs' Response either ignores them or continues asserting naked labels and conclusions devoid of any factual support. The Court should dismiss all claims against the NRA Foundation.

5

Case 3:19-cv-00679 Document 60 Filed 03/18/20 Page 6 of 7 PageID #: 345

Dated: March 18, 2020                     Respectfully Submitted,

**NEAL & HARWELL, PLC**

 */s/ Aubrey B. Harwell, Jr.*
Aubrey B. Harwell, Jr. (BPR # 2559)
John E. Quinn (BPR # 12220)
William J. Harbison II (BPR # 33330)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
aharwell@nealharwell.com
jquinn@nealharwell.com
jharbison@nealharwell.com

*Counsel for Defendant NRA Foundation, Inc.*

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court on March 18, 2020, using the CM/ECF system, which will send notification to all counsel of record as listed below.

| *Counsel for the NRA and LaPierre Defendants:* | *Counsel for Plaintiffs:* |
|---|---|
| LACY, PRICE & WAGNER, P.C.<br>Wallace A. McDonald (BPR # 16210)<br>249 N. Peters Road, Suite 101<br>Knoxville, TN 37926<br>(865) 246-0800<br>amcdonald@lpwpc.com<br><br>BREWER, ATTORNEYS & COUNSELORS<br>William A. Brewer IV (admitted *pro hac vice*)<br>750 Lexington Ave., 14th Floor<br>New York, NY 10022<br>(212) 527-3024<br>wbb@brewerattorneys.com | SCHUCHARDT LAW FIRM<br>Elliott J. Schuchardt (BPR # 27016)<br>6223 Highland Place Way, Suite 201<br>Knoxville, TN 37919<br>(865) 304-4374<br>elliott016@gmail.com |

 */s/ Aubrey B. Harwell, Jr.*