IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DAVID DELL'AQUILA, LORANNDA BORJA, TODD CHESNEY, and BRENT WEBER, on behalf of themselves and all others similarly situated,<br>      Plaintiff,<br><br>v.<br><br>the NATIONAL RIFLE ASSOCIATION OF AMERICA, a New York not-for-profit corporation<br><br>      Defendants. | Case No. 3:19-cv-00679<br><br>Judge William L. Campbell, Jr. Magistrate Jefferey S. Frensley<br><br>JURY TRIAL DEMANDED |

**MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Plaintiffs DAVID DELL'AQUILA, LORANNDA BORJA, TODD CHESNEY, and BRENT WEBER, on behalf of themselves and all others similarly situated, by and through their attorneys, respectfully move pursuant to Federal Rules of Civil Procedure 15(a) and (c) for leave to file a Third Amended Complaint, attached to this Motion as Exhibit 1, stating in support as follows:

**INTRODUCTION**

Plaintiffs ask this Court for leave to amend their complaint to add newly discovered facts that directly support their claims, including claims that were previously dismissed in this Court. In addition to including these new material facts, the proposed amended complaint repleads critical legal theories that were improperly pled by prior counsel and adds defendants that are necessary parties in light of the scope of the misconduct at issue in this case. Moreover, Plaintiffs' proposed amendment is the first pleading Plaintiffs have sought to file with the benefit of this Court's guidance in its order on Defendants' motion to dismiss. Because granting

1

Plaintiffs leave to amend under these circumstances would be in the interests of justice, Plaintiffs ask this Court to grant their motion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint is to be granted liberally in the interest of justice at any time before judgment. FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires,' this mandate is to be heeded."). The Sixth Circuit has repeatedly recognized that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002) (citing *Foman*, 371 U.S. at 178.); *see also Seals v. General Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) ("Under Rule 15(a), leave to amend a pleading shall be freely given "when justice so requires." Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment.").

## BACKGROUND

In their proposed Third Amended Complaint, Plaintiffs, who are donors to the National Rifle Association of America ("NRA") and the NRA Foundation, bring claims for fraud, breach of contract, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs allege that the Defendants solicited donations from Plaintiffs along with millions of

other donors under false pretenses and then unlawfully used the donated money for illicit purposes.

Plaintiffs originally filed this lawsuit in August 2019. The Amended Complaint and the Second Amended Complaint, which is the operative complaint, were filed in quick succession, with the latter filed in January 2020. Plaintiffs were then represented by counsel who, unbeknownst to them, had recently been suspended from practicing in the United States District Court for the Eastern District of Tennessee. *See In re Schuchardt*, No. 3:18-MC-39, 2019 WL 6716992 (E.D. Tenn. Dec. 10, 2019).

A year after the filing of the operative complaint, this case was administratively closed, with leave to reopen, in light of Defendant NRA's filing of a bankruptcy petition. Dkt. 73. A few months later, Defendant NRA filed notice that its bankruptcy case had been dismissed. Dkt. 75. But Plaintiffs' prior counsel, who still had not informed Plaintiffs of his earlier suspension from practice, did not move to reopen the case. Instead, this lawsuit was left to languish for months. By the time prior counsel finally withdrew from the case and Plaintiffs were able to retain new representation, the case was on the verge of dismissal. But with current counsel in place, this Court reopened the case on August 29, 2022. Dkts. 94, 95.

Since then, Plaintiffs' new lawyers have diligently worked to familiarize themselves with the issues and the evidence and have moved the case forward in discovery. Through these efforts, counsel have learned that, in the time since Plaintiffs filed their Second Amended Complaint in 2020, new material facts about the NRA's fraudulent scheme have been revealed. These facts were not available to Plaintiffs at the time of filing their Second Amended Complaint.

Some of these new facts have come to light in other litigation, including the NRA's failed bankruptcy case, the New York Attorney General's civil action against the NRA for violations of New York's nonprofit laws, and litigation between the NRA and its former advertising firm and co-conspirator, Ackerman McQueen. All have yielded important information relevant to Plaintiffs' claims. The litigation with Ackerman McQueen in particular has made clear that Ackerman was complicit in the illicit financial transactions between NRA and Ackerman, lending additional support to Plaintiffs' fraud and RICO claims.

Additionally, Plaintiffs have recently received documents in discovery that provide support for their claims. These documents, which Defendant NRA did not produce until after this Court ordered them to do so on February 15, 2023, *see* Dkt. 120, highlight the central role played by Wayne LaPierre in soliciting donations for the NRA and making false promises to the entire NRA donor base.

These newly revealed facts bolster the fraud claim this Court previously allowed to proceed over Defendants' motion to dismiss. They also support Plaintiffs' previously dismissed claims and point to the liability of previously dismissed defendants as well as to the liability of new defendant Ackerman McQueen.

## DISCUSSION

In seeking to file their Third Amended Complaint, Plaintiffs are acting in good faith and without undue delay or dilatory motive. They seek leave to amend because newly discovered material facts, unavailable to them at the time of the filing of the operative complaint, have come to light. Plaintiffs also seek leave to amend so as to implement the guidance this Court gave in its order on Defendants' motion to dismiss. Dkt. 63. Because permitting the proposed amendment would be in the interests of justice, this motion for leave should be granted.

4

Case 3:19-cv-00679   Document 131   Filed 06/30/23   Page 4 of 15 PageID #: 1385

## I. Granting Leave to Amend Promotes Resolution of the Case on the Merits

Plaintiffs are entitled under the Federal Rules of Civil Procedure to an "opportunity to be heard on the merits," and allowing Plaintiffs to present their claims in the most fulsome way possible allows them that opportunity. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986); *Inge v. Rock Financial Corp.*, 388 F.3d 930, 937 (6th Cir. 2004) ("Rule 15 reinforces the principle that cases should be tried on their merits rather than the technicalities of pleadings."). Granting Plaintiffs the opportunity to amend their complaint will allow for a genuine resolution of their claims on the merits because the complaint: (1) adds newly discovered facts from multiple reliable sources; (2) repairs and repleads Plaintiffs' RICO claims, taking into account these newly discovered facts; and (3) adds defendants who were deeply involved in the fraudulent scheme and whose involvement, in the case of Ackerman McQueen, was previously unknown to Plaintiffs. Each of these amendments to Plaintiffs' complaint will lead to a more just resolution on the merits

### A. Additional Allegations

As explained above, since the filing of Plaintiffs' Second Amended Complaint in January 2020, significant information about the fraudulent scheme perpetrated by Defendants has come to light. These newly discovered facts materially relate to and support Plaintiffs' claims.

First, eight months after Plaintiffs filed the operative complaint, the New York Attorney General (NYAG) brought a suit against the NRA in state court, challenging the NRA's non-profit status. *People of the State of New York by James vs. The National Rifle Association, Inc.*, 165 N.Y.S. 3d 234 (N.Y. Aug. 2020). The NYAG's lawsuit alleges that top NRA executives illegally diverted tens of millions of dollars from the organization for improper purposes. The complaint filed by the NYAG and the subsequent litigation in that case unearthed facts material

to this lawsuit, including that Wayne LaPierre used millions of dollars of donated funds to the NRA to pay for lavish private travel for his friends and family, yachting trips to the Bahamas, and other personal expenditures like extravagant Christmas gifts. These facts are further detailed in Plaintiffs' proposed Third Amended Complaint.

The litigation undertaken by the NYAG also revealed that the NRA hid these illicit expenditures by maintaining a "pass-through" arrangement with Ackerman McQueen, an advertising agency. Under this arrangement, the NRA paid donor funds to Ackerman that Ackerman in turn used to fund Wayne LaPierre and his associates' personal travel and other expenses unrelated to the mission of the NRA. Prior to the NYAG lawsuit and the subsequent litigation, Plaintiffs did not know the extent of the NRA's fraud, nor were they aware of Ackerman McQueen's critical role in perpetrating it.

Second, several months after the NYAG litigation began, and well after the Plaintiffs filed the operative complaint, the NRA filed for bankruptcy in the United States District Court for the Northern District of Texas. The case ultimately was dismissed on the basis that the NRA was acting in bad faith. *In re National Rifle Association of America*, 628 B.R. 262 (N.D. Tex. 2021). The court in that case ruled that the NRA was seeking to use the bankruptcy system for an improper purpose, *i.e.*, to reorganize under Texas law and evade the NYAG's legal action. As part of the bankruptcy case, former NRA officers gave testimony that further detailed Defendants' fraudulent scheme to improperly use donations and to conceal up their rampant misconduct. This testimony included a deposition from the NRA's former treasurer, Wilson Phillips, in which he repeatedly asserted his Fifth Amendment privilege against self-incrimination—indicating that the NRA is well aware its conduct at issue in this case was unlawful.

Third, since the filing of the operative complaint, litigation between the NRA and Ackerman McQueen has revealed substantial information material to this lawsuit. The litigation between the NRA and Ackerman, which began in August 2019, ballooned into a complex and wide-ranging case, tracing the deterioration of the business relationship between NRA and Ackerman. Multiple depositions of NRA officers and employees occurred throughout 2021—including the deposition of Wayne LaPierre—and revealed or confirmed newly discovered facts about the fraudulent scheme alleged in this action. In one instance, a co-CEO of Ackerman revealed that outside counsel had warned Ackerman employees that the company committed RICO violations in connection with its arrangement with the NRA. In another deposition, Wayne LaPierre admitted that millions of dollars flowed from the NRA Foundation to the NRA and was not repaid.

Finally, beginning after February 2023 and continuing for some months, Defendant NRA provided documents in response to Plaintiffs' initial discovery requests. These documents, which included donation solicitations sent to the NRA donor base over the relevant time period, bolster Plaintiffs' fraud and RICO theories. These solicitations reveal that the NRA and Wayne LaPierre repeatedly assured donors that their money would be used to support the mission of the NRA. As detailed in the proposed Third Amended Complaint, those assurances were false.

These newly discovered facts all support and expand upon Plaintiffs' original claims, including previously dismissed claims, as discussed further below. Plaintiffs should therefore be granted leave to include them as part of their Third Amended Complaint. Rule 15 liberally allows plaintiffs to amend a complaint to add newly discovered facts in support of their claims. *See, e.g.*, *Ewalt v. Gatehouse Media Ohio Holding II, Inc.*, 2020 WL 1904744 at *1-2 (S.D. Ohio) (granting Plaintiffs' motion for leave to amend after discovery of new facts).

7

### B. Additional Claims

#### 1. RICO

This Court determined that the RICO counts in the operative complaint were deficient because they were insufficiently pled by prior counsel and were not supported with sufficient factual allegations. *See* Dkt. 63. But Plaintiffs' proposed Third Amended Complaint repleads their RICO Counts and supports them with the newly discovered facts discussed above.

Plaintiffs' new counsel has worked diligently to repair the structure of their RICO counts. The operative complaint failed to properly plead the person/enterprise distinction that is critical to a well-pleaded RICO claim. Plaintiffs' proposed amended complaint, by contrast, follows this Court's guidance in its order granting the Defendants' motion to dismiss their RICO claims, and it is well-established that plaintiffs should be permitted to follow court guidance in seeking to repair deficiencies in their legal theories. *See, e.g., Morse v. McWhorter*, 290 F.3d 795, 801 (6th Cir. 2002) (finding that the district court improperly denied plaintiffs leave to amend their complaint to cure its deficiencies as identified in a magistrate's recommendation); *see also Inge*, 281 F.3d at 626 (6th Cir. 2002) ("Further, because Plaintiff's request to amend was a prompt effort to remedy pleading deficiencies identified by the district court in the dismissal order… we envision no prejudice to Defendant from granting leave to amend."). Rule 15 liberally allows plaintiffs to remedy legal theories when necessary—and only disallows amendment upon repeated failure to repair deficiencies. *See Roskam*, 288 F.3d at 906. Because Plaintiffs, upon acquiring new counsel and uncovering new material information, have promptly remedied the previous deficiencies in their RICO claims, justice requires that Plaintiffs be given the opportunity to have those claims heard on the merits.

8

Case 3:19-cv-00679   Document 131   Filed 06/30/23   Page 8 of 15 PageID #: 1389

### 2. Breach of Contract

Plaintiff's proposed Third Amended Complaint adds new breach of contract claims. Breach of contract is a new legal theory based on substantially the same set of facts supporting the existing fraud claim and proposed RICO claims. In the Sixth Circuit as elsewhere, parties may add new legal theories to amended complaints, provided the new theories arise from the same transaction or occurrence as existing claims. *See Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000) ("[A] court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence."). Because Plaintiffs' breach of contract claim arises from the same transaction or occurrence as their other claims, Plaintiffs' request to amend their complaint to add breach of contract claims should be granted.

### C. Additional Defendants

Plaintiffs' proposed Third Amended Complaint adds Ackerman McQueen as a defendant in this case and reinstates Wayne LaPierre and the NRA Foundation, who were dismissed from the case in September 2020, as defendants. Rule 15 contemplates that an amended pleading may change the party against whom a claim is asserted, and requires that if the "amendment changes the party or the naming of the party against whom a claim is asserted," the proposed amendment must "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," and the party to be brought in as part of the amendment must have "received such notice of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c).

Because Wayne LaPierre and NRA Foundation were originally defendants in this case, they are on notice under Rule 15 and will not be prejudiced by being reinstated. As for

Ackerman McQueen, because the proposed claims against it are within the statute of limitations and because Ackerman has been on notice of its liability for some time, there is no barrier to adding it as a defendant.

1. **Wayne LaPierre**

Plaintiffs seek to reinstate Wayne LaPierre as a defendant because the newly discovered facts demonstrate his centrality to the alleged fraudulent scheme and pattern of racketeering activity, to the point where proceeding without him would be manifestly unjust to Plaintiffs. Newly discovered information has revealed that LaPierre personally solicited donations from NRA and NRA Foundation donors and directed the misuse of those funds for the benefit of himself and his family.

In compliance with Rule 15(c), Plaintiffs' proposed amended complaint only asserts claims that arose out of the core conduct at issue in its original pleading—specifically that the NRA and NRA Foundation, headed by LaPierre, solicited donations under false pretenses and then misused the donated funds. Plaintiffs' proposed amended complaint merely expands on that operative nucleus of fact based on recently uncovered information regarding the NRA and NRA Foundation's fraudulent practices and the role played in the scheme by Ackerman McQueen. LaPierre has been on notice because he was an original defendant in this case and will not be prejudiced because this litigation is still at an early stage.

2. **NRA Foundation**

Plaintiffs seek to reinstate the NRA Foundation as a defendant because of its important role in the fraudulent scheme alleged by Plaintiffs. Since the filing of the operative complaint, significant additional evidence has come to light demonstrating the NRA Foundation's involvement. The NRA Foundation was originally dismissed from this action because the

10

Plaintiffs' allegations failed to rise to the heightened pleading standards of Rule 9(b). However, additional information in the proposed Third Amended Complaint describes the false promises the Foundation made and adds LaPierre's own admission that funds were transferred from the Foundation to the NRA.

As with LaPierre, the NRA Foundation would not be prejudiced as a result of being reinstated as a defendant in this action. Plaintiffs' proposed amended complaint only asserts claims that arose out of the core conduct at issue in its original pleading—specifically that the NRA and NRA Foundation improperly misused donated funds. Rather than allege claims based on an entirely new set of conduct, Plaintiffs' proposed amended complaint simply bolsters their allegations against the NRA Foundation in a way that will allow this case to be properly heard on the merits. Plaintiffs should be permitted to include the Foundation as a defendant.

3. **Ackerman McQueen**

Plaintiffs seek to add Ackerman McQueen as a defendant because newly discovered facts demonstrate Ackerman's centrality to the alleged fraudulent scheme and alleged pattern of racketeering activity. Proceeding without Ackerman would be manifestly unjust to Plaintiffs. Ackerman, as Plaintiffs allege, instituted a pass-through arrangement with Defendant NRA that allowed, with Ackerman's knowledge and participation, the NRA to use donor funds for illicit purposes without scrutiny. Without Ackerman's participation, the NRA's fraudulent scheme could not have succeeded for so many years.

Under Sixth Circuit law, the addition of a new defendant creates a "new independent cause of action," which can only exist if the claim independently satisfies the statute of limitations. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010). The statute of limitations for civil RICO actions is four years. *See Agency Holding Corp. v. Malley-*

11

Case 3:19-cv-00679   Document 131   Filed 06/30/23   Page 11 of 15 PageID #: 1392

*Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The four-year period begins when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation. *Rotella v. Wood*, 528 U.S. 549, 553-55 (2000); as cited by *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005).

Plaintiffs proposed RICO claims against Ackerman McQueen falls within the statute of limitations, meaning that adding Ackerman to this lawsuit should be uncontroversial. Plaintiffs did not learn of the NRA's pass-through arrangement with Ackerman and Ackerman's role as a money launderer until these facts were revealed through investigations undertaken by the NYAG's office, which filed its complaint in August 2020, less than three years ago. As a result, Plaintiffs' learned of Ackerman's relevant conduct well within the four-year limitations period. Although Plaintiffs learned that Ackerman McQueen was receiving huge sums of money from the NRA as early as 2019 and filed their complaint in August of that year, they did not know of the pass-through arrangement at that time. And even Plaintiffs' original filing in August 2019 was under four years ago, meaning within the limitations period.

Furthermore, Ackerman McQueen would not be prejudiced by a grant of leave to amend because it had adequate notice that it could be sued. Ackerman was aware that it was an integral part of the Defendants' scheme to defraud donors. The facts uncovered as part of multiple lawsuits across the country reveal that Ackerman has been intimately involved in the pattern of racketeering activity at issue in this case for many years. In addition, Ackerman was specifically on notice regarding its violations of RICO. Revan McQueen, a co-CEO of Ackerman, testified during a 2021 deposition that, according to the law firm currently representing the NRA, "Ackerman McQueen would possibly be indicted under RICO charges." Because Ackerman McQueen has been on notice for years that the activities they engaged in with the NRA and the

NRA Foundation could result in RICO liability, and because this case is at an early stage, Ackerman will not be unduly prejudiced by being added as a defendant at this stage.

## II. There Has Been No Undue Delay, Bad Faith, Dilatory Motive, Failure to Cure, or Prejudice.

Plaintiffs have worked diligently to have this lawsuit heard and have persisted in the face of major setbacks that were beyond their control and were unrelated to the merits of their claims, including the suspension from practice of their prior counsel. Without "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002) (citing *Foman*, 371 U.S. at 178.); *see also Seals v. General Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008). None of the factors counseling against amendment are present in this case.

Although some time has passed since this case was originally filed, it is still in the early stages of fact discovery, and Plaintiffs now propose to add information to their complaint that was only recently uncovered as part of nationwide litigation involving the NRA. Repleading claims and adding newly discovered facts and defendants to the case will not throw this case into scheduling disarray or result in any unfair prejudice to the Defendants. Because allowing Plaintiffs to amend their complaint is the only way for their claims to be adequately heard on the merits, they should be permitted to do so.

## Conclusion

WHEREFORE, Plaintiffs respectfully request that the Court grant them leave to file the proposed Third Amended Complaint, attached to this motion as Exhibit 1.

DATED: June 30, 2023                    Respectfully submitted,

<pre>                                        s/ Julia Rickert          </pre>
*One of Plaintiffs' Attorneys*

Michael I. Kanovitz (pro hac vice)
Jonathan I. Loevy (pro hac vice)
Julia Rickert (pro hac vice)
Thomas Hanson (pro hac vice)
Heather Sticht (BPR 030827)
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: (312) 243-5900
julia@loevy.com

Elizabeth Wang (pro hac vice)
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: (720) 328-5642
elizabethw@loevy.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, a true and exact copy of Motion for Leave to File Third Amended Complaint was electronically filed with the Clerk's Office using the the CM/ECF filing system and served via the Court's CM/ECF system and/or via email and/or U.S. Mail upon the parties listed below. Parties may also access this filing through the Court's CM/ECF system.

William A. Brewer
Malvina Palloj
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Ave., 14th Floor
New York, NY 10022
Email: wbb@brewerattorneys.com
mpalloj@brewerattorneys.com

and

Wallace A. McDonald
LACY, PRICE & WAGNER, P.C.
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
Email: amcdonald@lpwpc.com

                                              Respectfully submitted,
                                              s/ Julia Rickert
                                              *One of Plaintiffs' Attorneys*

Michael I. Kanovitz (pro hac vice)
Jonathan I. Loevy (pro hac vice)
Julia Rickert (pro hac vice)
Thomas Hanson (pro hac vice)
Heather Sticht (BPR 030827)
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: (312) 243-5900
julia@loevy.com

Elizabeth Wang (pro hac vice)
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: (720) 328-5642
elizabethw@loevy.com

15