**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| DAVID DELL'AQUILA, LORANNDA BORJA, TODD CHESNEY, and BRENT WEBER, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>NATIONAL RIFLE ASSOCIATION OF AMERICA<br><br><br>     Defendant. | Case No. 3:19-cv-00679<br><br><br>Judge William L. Campbell, Jr.<br><br><br>Magistrate Jefferey S. Frensley |

<u>**MEMORANDUM OF LAW IN SUPPORT OF THE NATIONAL RIFLE ASSOCIATION OF AMERICA'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. RELEVANT FACTS ...........................................................................................2

    A.    Procedural History ...............................................................................2

    B.    Plaintiffs' Allegations .........................................................................3

        i.    The NRA and the NRA Foundation.......................................3

        ii.    Alleged solicitations for donations. ......................................3

        iii.    Alleged "promises made to all donors." .................................4

        iv.    Plaintiffs' alleged donations. ................................................5

        v.    The alleged scheme..............................................................5

        vi.    Class action allegations........................................................6

III. LEGAL STANDARDS .......................................................................................6

IV. ARGUMENT .......................................................................................................7

    A.    Plaintiffs fail to state a claim for fraud. .............................................7

        i.    Plaintiffs fail to allege that the NRA knowingly made false promises of future performance. .............................................8

        ii.    Plaintiffs fail to allege reasonable reliance. .........................11

    B.    Plaintiffs fail to state a claim for violations of RICO. ......................13

        i.    Plaintiffs fail to adequately plead predicates acts of mail and wire fraud..........................................................................14

        ii.    Plaintiffs fail to adequately plead money laundering. ..............18

        iii.    Plaintiffs fail to plead causation..............................................18

    C.    Plaintiffs fail to state a claim for RICO conspiracy...........................20

    D.    Plaintiffs' claim for breach of contract fails. .....................................21

        i.    Plaintiffs' claim for breach of contract is time barred. ..............21

        ii.    Plaintiffs fail to state a claim for breach of contract................22

    E.    Plaintiffs' claim for tortious interference with contract fails...............23

        i.    Plaintiffs' claim for tortious interference with contract is time-barred. ...................................................................................23

        ii.    Plaintiffs' fail to state a claim for tortious interference with contract. .................................................................................24

V. CONCLUSION ....................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amos v. Lambo Group, LLC*,
    2023 WL 8631674 (M.D. Tenn. Dec. 13, 2023)....................................................................12

*Baugh v. Novak*,
    340 S.W.3d 372 (Tenn. 2011)....................................................................7, 8, 11

*Coffey v. Foamex L.P.*,
    2 F.3d 157 (6th Cir. 1993) ....................................................................7

*Courser v. Mich. House of Rep.*,
    831 F.App'x 161 (6th Cir. 2020) ....................................................................21

*Dunaway v. First Presbyterian Church of Wickenburg*,
    103 Ariz. 349 (1968)....................................................................24

*Foster v. Health Recovery Servs.*,
    493 F.Supp.3d 622 (S.D. Ohio 2020) ....................................................................24

*General Motors, LLC v. FCA US, LLC*
    44 F.4th 548 (6th Cir. 2022) ....................................................................19, 20, 21

*Gifford v. City of Gatlinburg*,
    900 X.W.2d 293, 295 (Ct. App. Tenn. 1995) ....................................................................24

*Griffith Motors, Inc. v. Parker*,
    633 S.W.2d 319 (Tenn. Ct. App. 1982) ....................................................................16

*Hale v. Woodward*,
    __ F.Supp.3d __, 2024 WL 1540220 (M.D. Tenn. Apr. 9, 2024) ....................................................................9

*Hayes v. Burns*,
    2013 WL 4501464 (M.D. Tenn. Aug. 22, 2013) ....................................................................8, 10

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
    668 F.3d 393 (6th Cir. 2012) .................................................................... *passim*

*Hemi Group LLC v. City of New York*,
    559 US 1 (2010)....................................................................19

*Innovation Ventures, LLC v. Custom Nutrition Laboratories, LLC*,
    912 F.3d 316 (6th Cir. 2018) ....................................................................22

*Kantz v. Rubin Lublin, PLLC*,
2015 WL 1543531 (M.D. Tenn. Apr. 6, 2015)......................................................6, 7

*Kieth v. Aerus, LLC*,
2010 WL 3883434 (E.D. Tenn. Nov. 29, 2010) .........................................................25

*Modesty v. Shockley*,
434 F. App'x 469 (6th Cir. 2011)......................................................................23, 25

*Moon v. Harrison Piping Supplies*,
465 F.3d 719 (6th Cir. 2006) ...................................................................................13

*Oppong v. Owensboro Health Medical Group, Inc.*,
2024 WL 1199446 (W.D. Ken. Mar. 20, 2024)........................................................18

*Orlowski v. Bates*,
2015 WL 1485980 (W.D. Tenn. Mar. 31, 2015) ......................................................14

*Otworth v. Budnik*,
594 Fed. Appx. 859 (6th Cir. 2014)........................................................................19

*Ouwinga v. Beinstar 419 Plan Servs, Inc.*,
694 F.3 783, 791-92 (6th Cir. 2012) .......................................................................14

*Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*,
447 F.3d 923 (6th Cir. 2006) ..............................................................................7, 9

*Pritchard v. Thompson*,
2023 WL 5817658 (W.D. Tenn. Aug. 3, 2023) .......................................................23

*Reg. v. Nature Conservancy*,
2014 WL 6909042 (E.D. Ky. Dec. 9, 2014) .............................................................24

*Santoni v. Mueller*,
2022 WL 97049 (M.D. Tenn. Jan. 10, 2022).............................................................26

*Shaw v. FSGBank, N.A.*,
2015 WL 5169155 (Tenn. App. 2015).................................................................23, 25

*Smith v. Bank of America Corp*,
485 Fed. Appx. 749 (6th Cir. 2012).................................................................8, 9, 10

*Thompson v. Bank of America, N.A.*,
773 F.3d 741 (6th Cir. 2014) ...................................................................................25

*Thornton v. Dutch Naturals Processing, LLC*,
629 F.Supp.3d 777 (M.D. Tenn. 2022)....................................................................23

*United States v. Frost*,
125 F.3d 346 (6th Cir. 1997) .......................................................................................13

*Vanderbilt Univ. v. Scholastic, Inc.*,
382 F. Supp. 3d 734 (M.D. Tenn. 2019).....................................................................26

*United States ex rel. Whitcomb v. Physiotherapy Assocs., Inc.*,
555 F. Supp. 2d 949 (W.D. Tenn. 2008)..............................................................22, 24

**Statutes**

18 USC 1956(a)(1).............................................................................................................19

18 USC § 1341 ...................................................................................................................13

18 USC § 1962(c) ...............................................................................................................13

Tenn. Code Ann. 28-3-109(a)(3) .......................................................................................22

**Other Authorities**

Rule 9(b) ...................................................................................................................*passim*

Rule 12(b)(6)........................................................................................................................6

Rule 15(c).....................................................................................................................22, 24

Defendant the National Rifle Association of America ("NRA"), submits the following Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Third Amended Complaint (the "Complaint").

## I.   INTRODUCTION

Plaintiff Dell'Aquila filed this action as part of a publicity campaign intended to remove the NRA's then-CEO Wayne LaPierre from office. Relying on a tenuously pleaded and almost-abandoned claim for fraud, Plaintiffs nevertheless pushed forward with more than a year of costly discovery. Now, more than four years later, Plaintiffs and their new counsel seek to revive previously dismissed RICO claims and assert new farfetched claims for breach of contract and tortious interference.

As noted in Magistrate Judge Frensley's recent order granting leave to amend, "there is a substantial argument to be made on the question of whether the proposed amendments are futile." (Dkt. 163). Indeed, the Third Amended Complaint unconvincingly repackages stale allegations from unrelated lawsuits involving compliance with state not-for-profit laws into a pleading asserting a scheme by the NRA to defraud its donors. The facts alleged fail to support each of Plaintiffs' claims.

Plaintiffs fail to state a claim for fraud based on statements attributed to the NRA. Plaintiffs do not adequately allege statements that make promises as to how Plaintiffs' donated funds will be used. Importantly, Plaintiffs also fail to plead that they actually *and* reasonably relied on the statements when they made donations.

Plaintiffs also fail to allege RICO violation and RICO conspiracy claims. Plaintiffs' attempt to plead a RICO enterprise in which the NRA and LaPierre caused the Foundation to fraudulently solicit donations for improper uses. Dell'Aquila is the only Plaintiff alleged to have donated to the

1

NRA Foundation. The Complaint fails to plausibly allege the predicate acts—mail fraud, wire fraud, and money laundering—upon which the RICO violations are premised. Crucially, Plaintiffs fail to plausibly allege that any of the Foundation's statements were the factual or proximate cause of Dell'Aquila's "injuries." These defects are fatal to the RICO and conspiracy claims.

Plaintiffs' breach of contract and tortious interference with contract claims are time-barred and fail to allege necessary elements, including the existence of a contract.

The NRA respectfully requests that the Complaint be dismissed in its entirety with prejudice.

## II.  RELEVANT FACTS

### A.  Procedural History

On August 6, 2019, David Dell'Aquila filed a putative class action against the NRA, Wayne LaPierre, and the NRA Foundation ("Foundation") on behalf of donors located in the United States and claimed fraud and violations of RICO based on alleged misuse of NRA funds. (Dkt. 1). After each Defendant moved to dismiss, (Dkts. 20, 32, 35), Dell'Aquila amended and added three additional Plaintiffs, Lorannda Borja, Todd Chesney, and Brent Weber. (Dkt. 43). The NRA, NRA Foundation, and LaPierre each moved to dismiss. (Dkts. 46, 48, 50). On September 30, 2020, the Court granted the motions to dismiss filed by LaPierre and the NRA Foundation, and dismissed them as defendants in this case. (Dkt. 64). The Court also granted the NRA's motion to dismiss Plaintiffs' RICO claim, leaving only Plaintiffs' fraud claim. (Dkt. 64).

The parties engaged in discovery for more than four months. After a brief stay precipitated by the NRA's bankruptcy proceedings, the stay lifted. (Dkt. 69 § E, G; Dkt. 71). On August 29, 2022, more than fifteen months after the bankruptcy stay lifted, the case was reopened. (Dkt. 95). Thereafter, the parties again engaged in extensive discovery, which included production by the

NRA of communications to potential donors. (Dkt. 127 at 2). Now, more than four years after initiating the lawsuit, Plaintiffs file their Third Amended Complaint ("Complaint").

**B. <u>Plaintiffs' Allegations</u>**

     *i.  The NRA and the NRA Foundation.*

In describing the NRA and the Foundation, Plaintiffs cite to two statements that allegedly appeared on the NRA's website and three statements that allegedly appeared on the Foundation's website that generally discuss the NRA's history, activities, and goals. (Compl. ¶15-25). Plaintiffs characterize these statements as affirmative statements of the "mission" of the NRA and Foundation. (Compl. ¶15-16, 21, 22-25). However, none of the cited statements state that they are the "mission" of either organization.

Plaintiffs also assert that the NRA and NRA Foundation are tax exempt 501(c)(4) and 501(c)(3) entities, as well as New York and Washington D.C. charitable organizations, respectively. (Compl. ¶18-20). Plaintiffs cite to purported statements of "mission" in the respective "tax filings" of the NRA and Foundation. (Compl. ¶17, 23). Plaintiffs do not identify what these tax filings are, when they were filed, or any other identifying facts.

Plaintiffs do not allege that Plaintiffs viewed or relied on any these statements in making any donations.

     *ii.  Alleged solicitations for donations.*

After making the vague allegation that the NRA and Foundation "solicit donations in various ways," without alleging any specific statements by either entity (Compl. ¶27-30), Plaintiffs cite to thirteen purported "solicitations" for donations. (Compl. ¶31-42).

Plaintiffs allege six communications to the "donor base," not any specific recipients, which they assert contain solicitations for donations. (Compl. ¶31-35, 42). None of these solicitations are alleged to have been received by or relied by any Plaintiff in making any donation.

3

Plaintiffs point to one statement on the NRA website that "ran" "throughout the relevant time period." (Compl. ¶36). Plaintiffs do not allege that they viewed the statement or relied on it in making a donation.

Plaintiffs also cite to six communications to Plaintiff Dell'Aquila, including one from LaPierre (Compl. ¶37), four from the Foundation (Compl. ¶37, 38), and two from the NRA (Compl. ¶41). Dell'Aquila is alleged to have "visit[ed] the website during the [three-plus-year] class period" at some unspecified time. (Compl. ¶40). But Plaintiffs do not allege that Dell'Aquila (or any other Plaintiff) relied on any of the foregoing communications in making any donation to the NRA, and fail to allege what statements, if any, Dell'Aquila viewed on the website.

### iii. Alleged "promises made to all donors."

Plaintiffs go on to point to five "promises" purportedly "made to all donors." (Compl. at 13). First, they allege that the NRA sends a dues renewal notification to "all donors," which contains a "Uniform Disclosure Statement," which states, "Contributions raised will be used to advance the mission of the NRA." (Compl. ¶43, 45). Plaintiffs allege that they each received a copy of the notice. (Compl. ¶43). But they do not allege when or how, and they do not allege that they relied on the "Uniform Disclosure Statement" in making any donation.

Plaintiffs next point to two alleged statements on the NRA website (Compl. ¶44, 48) and three alleged statements on the Foundation website (Compl. ¶46-47). There is no allegation that Plaintiffs even saw these statements—much less reasonably relied on them in making donations.

In a final attempt to conjure representations upon which to base their claims, Plaintiffs allege that, because they are tax exempt entities, the NRA and the Foundation made "implicit" promises to donors that donations would be expended in accordance with restrictions on how such organizations use money. (Compl. ¶49). Plaintiffs do not allege that any Plaintiff relied on these

4

purported "implicit promises" to make any donations. Nowhere do Plaintiffs allege that their donations were not in fact tax exempt.

### iv. Plaintiffs' alleged donations.

Plaintiffs conclusorily state that they "reasonably relied" on the "solicitations" and "promises" and "made donations as a result" (Compl. ¶50-51, 56). Plaintiffs go on to list the various donations allegedly made by all four Plaintiffs to the NRA and by Dell'Aquila alone to the Foundation. (Compl. ¶52-54). Nowhere in the Complaint do Plaintiffs specify which "solicitations" or "promises," if any, were relied upon by Plaintiffs, when they were relied upon, and which donations were made a result.

### v. The alleged scheme.

Plaintiffs assert that, instead of spending donations on the "purposes enumerated in their solicitations and accompanying disclosures, Defendant used significant portions of the donated funds for purposes unrelated to the NRA's mission of gun rights, advocacy and firearm safety, education, and training." (Compl. ¶57). Plaintiffs do not specify which, if any, statements by the NRA or Foundation to Plaintiffs represented that their donations would be used for the "mission" as defined by Plaintiffs, nor do they allege that Plaintiffs relied on any such representation in making any donation.

Instead, Plaintiffs spend the next forty-seven paragraphs of the Complaint recycling allegations of purported financial malfeasance from the New York Attorney General ("NYAG") lawsuit in New York state court, which is now concluded (the "NYAG Lawsuit"). (Compl. ¶58-104). Generally, the allegations concern discrepancies in billing practices with the NRA's former vendors, including Ackerman McQueen (which the NRA has sued numerous times for taking advantage of the NRA), Inc., and purported improper benefits to the NRA's former CEO and

Executive Vice President Wayne LaPierre, his wife, and his "associates." (Compl. ¶58-104). Plaintiffs conclusorily assert that the Foundation transferred funds to the NRA in violation of the law. (Compl. ¶58-59).

> *vi. Class action allegations.*

Plaintiffs bring this suit on behalf of two putative classes of donors, all donors residing in the United States who donated funds to the NRA from November, 30, 2015 through January 26, 2019 (the "NRA Class") and those who donated funds to the Foundation from November 30, 2015 through January 26, 2015 (the "Foundation Class"). (Compl. ¶106-107). All Plaintiffs are allegedly members of the NRA Class. (Compl. ¶113). Dell'Aquila is the only Plaintiff who is a member of the Foundation Class. (Compl. ¶114). Plaintiffs do not specify which misrepresentation, if any, the members of the putative classes relied upon in making any donations.

Plaintiffs assert the following claims against the NRA: Dell'Aquila, Borja, Chesney, and Weber (and the putative NRA Class) assert fraud claims (Count I); Dell'Aquila, Borja, Chesney, and Weber (and the putative NRA Class) assert breach of contract claims (Count II); Dell'Aquila (and the putative NRA Foundation Class) assert tortious interference with contract claims (Count III); Dell'Aquila (and the putative NRA Foundation Class) assert RICO violations (Count IV); and Dell'Aquila (and the putative NRA Foundation Class) assert RICO conspiracy (Count V).

## III. <u>LEGAL STANDARDS</u>

A complaint only survives a Rule 12(b)(6) motion to dismiss "if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[1] Although the court must accept a plaintiff's allegations as true on a motion to dismiss, the court "need not

---

[1] *Kantz v. Rubin Lublin, PLLC*, 2015 WL 1543531, at *7 (M.D. Tenn. Apr. 6, 2015) (quoting *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (internal citations and quotations omitted)).

accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."[2]

## IV.    ARGUMENT

Each of Plaintiffs claims should be dismissed for failure to state a claim upon which relief can be granted. As a result, the Complaint should be dismissed in its entirety.

### A.  Plaintiffs fail to state a claim for fraud.

Under Tennessee law,[3] a plaintiff asserting a claim for fraudulent inducement must plausibly allege that defendant "(1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance."[4]  "Conclusory statements of reliance are not sufficient to explain with particularity how a plaintiff detrimentally relied on the alleged fraud."[5]  Further, "reliance on a fraudulent misrepresentation must be reasonable; if one knows the truth and is not deceived, he is not defrauded."[6] When a fraud claim relates to the alleged promise of some future action by defendant, there must be a "misrepresentation[] made without the present intention to carry it out."[7]  "Neither the failure to in fact keep the promise, nor the plaintiff's subjective impression will demonstrate that there was no present intention to carry out the promise."[8] A plaintiff asserting a claim for fraud must state with particularity the circumstances constituting the

---

[2] *Kantz*, 2015 WL 1543531, at *7 (citing *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotations omitted)).
[3] The parties and the Court have analyzed Plaintiffs' tort claims pursuant to Tennessee law. (Dkts. 63, 152, 155),
[4] *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).
[5] *Kantz*, 2015 WL 1543531, at *6 (internal citations and quotations omitted).
[6] *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (internal citations and quotations omitted).
[7] *Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006).
[8] *Id.*

7

fraud pursuant to Rule 9(b).[9]  In order to satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[10]

Plaintiffs' assert fraud based on alleged (1) statements by LaPierre and the NRA that donated funds "would be used for the NRA's mission of gun rights advocacy and firearm safety education, and training" and (2) "implicit" promises due to the NRA's tax-exempt status that the NRA would not violate tax laws (citing 501(c)(4)(B))—both of which were known by the NRA to be false. (Compl. ¶120-122, 125-126). Plaintiffs assert that they relied on those "statements" and donated to the NRA. (Compl. ¶123-124, 127).

Plaintiffs fail to allege that the NRA knowingly made false promises and that Plaintiffs reasonably relied on the statements. Failure to plead these essential elements merits dismissal.

i.  *Plaintiffs fail to adequately allege that the NRA knowingly made false promises of future performance.*

Plaintiffs cite to three categories of statements allegedly made by the NRA: (1) the NRA website, (2) unspecified tax filings, (3) and direct mail/e-mail. Plaintiffs fail to allege that the NRA made false statements of material fact, because the alleged statements make no promises as to how donations will be spent in the future—much less any affirmative representations that they will be spent on the alleged "mission" or in accordance with tax laws.[11] As a result, the statements do not constitute, as is required to plead a promissory fraud claim, "misrepresentation[s] made without

---

[9] *See Hayes v. Burns*, 2013 WL 4501464, at *5 (M.D. Tenn. Aug. 22, 2013).
[10]  *Smith v. Bank of America Corp,* 485 Fed. Appx. 749, 752 (6th Cir. 2012) (internal citations and quotations omitted).
[11] *See Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).

8

the present intention to carry [them] out."[12]

First, the majority of the website's alleged statements describe the NRA's history, accomplishments, and goals (Compl. ¶15, 16), make vague statements about Second Amendment advocacy (Compl. ¶36), or give recognition to members (Compl. ¶48). They contain no statements of how donated funds will be used. The remaining alleged statement from the website, under a heading entitled, "How does the NRA use my membership dues?" states that the donations will "help" or "support" the NRA achieve certain goals, including Second Amendment advocacy, and cultivation of youth, women, and police trainings and programs. (Compl. ¶44). The statement, which refers specifically to "membership dues," does not cover all donated funds, nor does it *limit* the ways in which the NRA may use such funds.[13]

Second, as to the unspecified tax filing that purportedly characterizes the NRA's mission of promoting "firearms safety, education, and training; and advocacy on behalf of safe and responsible gun owners," the alleged statement does not contain any promise of future performance regarding the use of funds. (Compl. ¶17). Moreover, Plaintiffs fail to allege to which "tax filing" they are referring, when the filing was made, who prepared it, and the manner in which it was made. (Compl. ¶17). This lack of particularity is fatal a fraud claim. [14]

Third, the direct mailings/emails alleged to come from the NRA (or individuals at one time associated with the NRA) do not contain promises of future use of donor funds. Rather, the statements contain messages of thanks for past donations (Compl. ¶37) and calls to raise awareness

---

[12] *Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc*., 447 F.3d 923, 931 (6th Cir. 2006); *see also Hale v. Woodward*, __ F.Supp.3d __, 2024 WL 1540220, at *3 (M.D. Tenn. Apr. 9, 2024) (dismissing promissory fraud claim because statement failed to contain a promise of future performance).

[13] With the exception of Weber, whose donations are not alleged with specificity, Plaintiffs are not alleged to be members—as such, "membership dues" is not alleged to be relevant to them.

[14] *Smith,* 485 Fed. Appx. at 752.

9

for, and participate in, policy issues that the NRA supports (Compl. ¶¶31-35, 41, 42). Plaintiffs also assert that each Plaintiff received the "Uniform Disclosure Statement," which provides that "Contributions raised will be used to advance the mission of the NRA." (Compl. ¶43). But Plaintiffs again fail to satisfy the basic requirements of Rule 9(b) as they do not allege who sent or made the statement, the substance or context of the communication, and when and where the statement was made.[15] Moreover, the Uniform Disclosure Statement is not alleged to define the NRA's "mission," nor does it specify or limit how the funds may be used. (Compl. ¶121). Indeed, *not one* of the communications purportedly viewed or received by Plaintiffs is alleged to actually contain *any* promise that donor funds would be spent on the purported "mission" as defined by Plaintiffs. Plaintiffs' repeated use of the word "mission" to describe the NRA statements upon which they rely does not give them such meaning.

To the extent Plaintiffs' fraud claim arises from the NRA's alleged "implicit promise" to donors based on its status as a tax-exempt entity, it also fails. As an initial matter, Plaintiffs fail to specify, as they must, what allegedly fraudulent statements the NRA made, the speaker of those statements, and where and when the statements were made.[16] Plaintiffs' failure to allege the time, place, and manner of the NRA's purported promise requires dismissal pursuant to Rule 9(b).[17] The idea that the NRA made an "implicit" promise sufficient to withstand a motion to dismiss solely as a result of existing with a certain legal status highlights the absurdity of Plaintiffs' claim.

---

[15] *Smith,* 485 Fed. Appx. at 752.

[16] *See Hayes v. Burns*, 2013 WL 4501464, at *5 (M.D. Tenn. Aug. 22, 2013).

[17] Plaintiffs assert that "mailed solicitations" "assured Dell'Aquila that his donations are tax deductible because the NRA Foundation is a charitable organization." (Compl. ¶40). Again, Plaintiffs fail to allege this statement with the required particularity. Plaintiffs also do not allege that Dell'Aquila's donations were not, in fact, tax deductible.

*ii. Plaintiffs fail to allege reasonable reliance.*

Plaintiffs fail to allege that they actually or reasonably relied on the statements they cite in support of their fraud claim.[18] This pleading deficiency merits dismissal.[19]

As an initial matter, the vast majority of the NRA's alleged statements are not alleged to have been received or seen by Plaintiffs. *None* of the statements attributed to the NRA website are alleged to have been viewed by even a single Plaintiff. (Compl. ¶15, 16, 36, 44, 45, 48, 49).[20] Nor do Plaintiffs claim to have received or seen many of the mail and email communications from the NRA. Instead, they generally allege that the communications were sent to "donors" or "members." (Compl. ¶31, 32, 33, 34, 35, 42, 43). But those vague descriptions of alleged recipients not only are plainly insufficient to satisfy notice and heightened pleading standards required to state a claim for fraud, but also fail to include Plaintiffs as Plaintiffs are not alleged to be donors at all relevant times (donations are sporadic and infrequent) or members at any time (with the exception of Weber). (Compl. ¶50-55). In fact, the only Plaintiff that is alleged to have ever received any communications from the NRA is Dell'Aquila. (Compl. ¶37, 41). Of course, if Plaintiffs did not see the alleged statements, they cannot claim to have relied on them.

Even if Plaintiffs' vague allegations were sufficient to plausibly allege that Plaintiffs received the alleged statements (they are not), Plaintiffs fail to adequately allege that they actually relied on them.[21] The full extent of Plaintiffs' allegations in support of their reliance on the NRA's

---

[18] *See Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).

[19] *Id*.

[20] These allegations include the alleged "implicit promise" to donors regarding tax laws. As with any other statement upon which a fraud claim is based, Plaintiffs must allege a representation upon which Plaintiffs ultimately relied in making in donation. They fail to do so. Instead, they cite to the NRA's website, but fail to allege that Plaintiffs viewed the cited statements. (Compl. ¶49).

[21] *Evans v. Pearson Enterprises, Inc*., 434 F.3d 839, 852 (6th Cir. 2006) ("conclusory statements of reliance are not sufficient to explain with particularity how [Plaintiffs] detrimentally relied on

statements are as follows: (1) "Plaintiffs Dell'Aquila, Borja, Chesney, and Weber reasonably relied upon Defendant's solicitations and the promises they contained and made donations to the NRA as a result." (Compl. ¶51); and (2) "Dell'Aquila, Borja, Chesney, Weber and each member of the NRA Class reasonably relied upon the statements made by Defendant and LaPierre concerning the proposed use of the solicited funds. As a result of such reliance, [they] donated funds to the NRA during the time period from November 30, 2015 to January 26, 2019." (Compl. ¶123-124). Plaintiffs then list their alleged donations.[22] Plaintiffs' "mere recitation of the element" of reliance is not sufficient to plead the element.[23] Plaintiffs fail to allege upon which statements they relied in making their donations, making it impossible for the NRA to identify which alleged statement purportedly led Plaintiff to make a donation. If Plaintiff's allegations are to be believed, all four Plaintiffs relied on *every* statement attributed to the NRA in making every donation they made over a three plus year period. Indeed, Plaintiffs purportedly made donations based on statements that are alleged to have occurred *after* the donation was made. Of course, that is not plausible, or even possible. To underscore the absurdity of Plaintiffs' claims, numerous of the statements allegedly relied on were produced during the months of discovery already conducted in this matter—Plaintiffs cannot have relied on a statement of which they had no knowledge.

In addition, even if Plaintiffs pleaded actual reliance (they do not), they fail to allege that their reliance on the NRA's statements was reasonable. As discussed in Section IV.A above, not a

the alleged fraud") citing *Smith v. Mitlof*, 198 F.Supp.2d 492, 504–05 (S.D.N.Y.2002) (holding the complaint's allegation that the plaintiffs reasonably relied on the fraudulent representations insufficient to meet the heightened pleading requirements of Rule 9(b)); *Amos v. Lambo Group, LLC*, 2023 WL 8631674, at *12-13 (M.D. Tenn. Dec. 13, 2023) (granting motion to dismiss fraud claim because Plaintiff alleged reliance in "very cursory, conclusory fashion" and thus did not "plead reliance (reasonable or otherwise) with particularity").

[22] Plaintiffs fail to allege when or how much Weber donated. (Compl. ¶55).

[23] *Heinrich*, 668 F.3d at 403.

12

single alleged statement by the NRA made a promise to use Plaintiffs' donations to fund the sole and specific "mission" of "gun rights advocacy and firearm safety, education, and training." (Compl. ¶121). Plaintiffs' patchwork of disparate sources, which are not even alleged to have been relied on by Plaintiffs in making donations, is not sufficient to put words in the NRA's mouth and form the basis for a fraud claim. In light of Plaintiffs' failure to allege that the NRA made such a representation to Plaintiffs, Plaintiffs cannot use different statements to plead the element of reasonable reliance. Although the NRA surely used donations in furtherance of the "mission" as Plaintiffs define it, like any other not for profit, the NRA also potentially used donations for overhead, payroll, administrative costs, and other expenses necessary to run a not-for-profit organization. If Plaintiffs believed otherwise, that is not reasonable.

Plaintiffs' pleading failures merit dismissal of their fraud claim.

## B. Plaintiffs fail to state a claim for violations of RICO.

In order to plead a RICO violation under 18 USC § 1962(c), a plaintiff must adequately allege that defendant conducted an enterprise through a pattern of racketeering activity.[24] A RICO violation may be predicated on mail fraud,[25] wire fraud,[26] or money laundering used to conceal the proceeds of the fraud.[27] In pleading such predicate acts, a plaintiff must meet the Rule 9(b) pleading standard.[28] A plaintiff alleging such predicates acts "must also demonstrate *scienter* to establish a scheme to defraud, which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading

---

[24] *See Moon v. Harrison Piping Supplies*, 465 F.3d 719, 723 (6th Cir. 2006).

[25] To state a claim for a mail fraud in violation of RICO pursuant to 18 USC § 1341, a plaintiff must allege (1) a scheme to defraud involving the use of mail (2) for the purpose of executing the scheme. *See United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997).

[26] The elements of wire fraud are essentially the same except using the wires in furtherance of the scheme. *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012).

[27] *Id.*

[28] *See id.*; *Orlowski v. Bates*, 2015 WL 1485980, at *10 (W.D. Tenn. Mar. 31, 2015).

13

information."[29]   In addition, the predicate act must be the "but-for" and proximate cause of the alleged injury.[30]   A plaintiff must "set forth allegations to establish that the defendant conducted or participated, directly or indirectly, in the conduct of the RICO enterprise's affairs."[31]  While "RICO liability is not limited to those with primary responsibility for the enterprise's affairs, the defendants must have conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs."[32]

Plaintiffs' RICO claims are premised on mail and wire fraud stemming from solicitations for donations from the Foundation, as well as money laundering of the donated funds. Plaintiffs allege that the NRA and LaPierre knowingly caused the Foundation to solicit donations from Dell'Aquila through the mails and wires based on statements that donated funds would be used to advance the Foundation's "mission." (Compl. ¶144-149). Relying on such statements, Dell'Aquila allegedly contributed to the Foundation. (Compl. ¶150-151). The NRA allegedly knew that such solicitations were false, and "siphoned" funds the Foundation to the NRA and used them for alternative purposes, including improper expenditures to Ackerman to allow for use as personal expenditures and to avoid compliance with the tax code. (Compl. ¶152-169).

Plaintiffs fail to plead a claim for RICO violations because they fail to adequately plead the predicate acts and do not adequately plead causation.

     *i.*   *Plaintiffs fail to adequately plead predicates acts of mail and wire fraud.*

A plaintiff asserting the predicate acts of mail and wire fraud must plead a scheme to defraud and use of the mails and wires. A plaintiff must allege "(1) specify the statements the

---

[29] *Heinrich,* 668 F.3d at 404.
[30] *Id.* at 405.
[31] *Ouwinga v. Beinstar 419 Plan Servs, Inc*., 694 F.3 783, 791-92 (6th Cir. 2012) (internal quotations omitted).
[32] *Id*. (internal quotations omitted) (emphasis in original)

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[33] A plaintiff must allege facts that support an inference that the representations were fraudulent and that the speaker either had a specific intent to defraud or acted with recklessness.[34]

As a threshold matter, Plaintiffs fail to plead the basic requirement of a "scheme to defraud," which is necessary to plead predicate acts of mail and wire fraud.[35] Although Plaintiffs conclusorily assert that the NRA and LaPierre "knowingly" coerced the Foundation to solicit funds by fraudulent means (Compl. ¶153), the Complaint's factual allegations instead refer to violations of the NRA's internal policies and tax reporting issues. (E.g., Compl. ¶58-98). This is unsurprising, given that the allegations are derived from the NYAG Lawsuit, which did not assert fraud but violations of New York charities laws. Importantly, failure to comply with internal policies, tax, and charitable oversight measures does not translate into a specific intent to defraud on the part of the NRA.[36] Plaintiffs' failure to allege a scheme to defraud merits dismissal.[37]

The alleged statements also fail to support predicate acts of mail and wire fraud. The statements attributed to the Foundation fall into three categories: direct communications to

---

[33] *Heinrich*, 668 F.3d at 404.

[34] *Id*.

[35] *Id*.

[36] Moreover, Plaintiffs fail to plead that the NRA itself benefited from the purported fraudulent scheme. The only individuals who are alleged to have benefitted from the alleged misconduct are LaPierre, his wife, and other "associates" who are not named as defendants here—not the NRA itself. But LaPierre's alleged conduct should not be imputed to the NRA. *See Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322 (Tenn. Ct. App. 1982) (the adverse interest exception to imputation applies, alleviating the NRA of any wrongdoing—and in fact making the NRA the victim). Indeed, LaPierre was ordered to repay funds *to* the NRA in the NYAG Lawsuit from which Plaintiffs pull many of their allegations. *See* "Jury Orders Ex-NRA Chief Wayne LaPierre to Pay More than $4 Million Back to Gun-Rights Group," *Wall Street Journal*, https://www.wsj.com/us-news/law/jury-orders-ex-nra-chief-wayne-lapierre-to-pay-4-million-back-to-gun-rights-group-24be61fb.

[37] Having failed to allege a specific intent to defraud, the Complaint makes no alternative allegation that the NRA acted with recklessness.

15

Dell'Aquila (alleged mail fraud), the Foundation's website (alleged wire fraud), and its tax filings (unclear because not alleged).

Plaintiffs fail to allege predicate acts of mail fraud. Plaintiffs cite to four letters sent to Dell'Aquila purportedly seeking solicitations from the Foundation. (Compl. ¶37-40). The first letter allegedly from LaPierre states, "Your leadership inspires so many to stand up and fight for the values we hold dear." (Compl. ¶37). As with other communications attributed to LaPierre, there is no indication that this communication seeks to elicit donations of any kind, nor for the benefit of the Foundation in particular. The three remaining letters to Dell'Aquila from Office of Advancement employee Laura Evans are alleged to say: "Thank you for your generous pledge commitment of $100,000 to the NRA Foundation's Leadership Fund Endowment. For your convenience, this letter serves to remind you of your next schedule gift of $20,000." (Compl. ¶38). Plaintiffs fail to "explain why [any of the foregoing] statements were fraudulent."[38] Importantly, not one of these alleged statements supports Plaintiffs' contention that they promise that donated funds will be used for the "mission" of the Foundation. Instead, they seem to indicate that Dell'Aquila *already committed* to make donations to the Foundation—the letters merely remind him of that commitment. And, although they refer to the "NRA Foundation's Leadership Fund Endowment," nowhere in the Complaint do Plaintiffs specify what that means or whether it relates to the purported "mission" of the Foundation as defined by Plaintiffs. Nor do Plaintiffs allege that Ms. Evans acted with knowledge or reckless disregard for the falsity of the statements. Plaintiffs therefore fail to plead predicate acts of mail fraud based on these communications.

---

[38] Although Plaintiffs attempt to conflate communications from LaPierre with communications from the Foundation, it is clear on the face of the allegations that communications from LaPierre concern the NRA. (Compl. ¶31-37). In any event, as discussed throughout, LaPierre's communications make no promises as to how funds will be used.

16

Plaintiffs also fail to allege wire fraud. Plaintiffs' core allegation of wire fraud is that the Foundation represented that it would use donor funds only on its "mission" via its website. However, nowhere in the Complaint do Plaintiffs point to where the Foundation's website made such a statement. As with their fraud claim, Plaintiffs editorialize various references to the Foundation's website with the term "mission," without alleging that the NRA Foundation actually defined such a mission and then stated its intent to spend all donated funds on it. (Compl. ¶21-22, 24-25). Indeed, none of those alleged statements make any representation regarding the use of funds. (*Id*.). Plaintiffs cite to certain statements on the Foundation's website regarding the use of funds. (Compl. ¶46-47). But the Complaint is devoid of any allegations that the Foundation had knowledge or acted with reckless disregard as to the truth of those representations, and, as argued below, Plaintiffs fail to allege causation with respect to these limited statements.

With respect to the Foundation's tax filings, Plaintiffs also fail to plead a predicate act. Plaintiffs allege that the Foundation made a statement of its "mission" via its "IRS filings." (Compl. ¶23). Plaintiffs do not allege who made the statement, when the statement was made, which "IRS filings" contain the alleged statements, or whether such filings were made via the mail or wires. The allegations therefore fail to satisfy Rule 9(b). Here again, Plaintiffs also fail to allege, as they must, that the statements were made with knowledge or reckless disregard of their falsity. Indeed, Plaintiffs fail to allege how the statement, which states that the Foundation "supports" and "promotes" various Second Amendment related activities, was fraudulent, as it neither makes any representation regarding the use of funds nor do Plaintiffs allege that the Foundation did not "support" and "promote" the stated activities. (Compl. ¶23).

17

*ii. Plaintiffs fail to adequately plead money laundering.*

To plead money laundering, a plaintiff must allege that a defendant "conducted financial transactions knowing that the transactions involved the proceeds of specific unlawful activity and engaged in the transaction with the intent to either promote the continuation of the unlawful activity or knowing that the transactions were designed to conceal the proceeds of the unlawful activity."[39]

Plaintiffs fail to plausibly allege facts in support of their claims of money laundering asserting improper payments from the NRA to Ackerman "to evade scrutiny" of improper personal expenditures and transfers from the Foundation to the NRA to avoid tax disclosures. Even if true, because Plaintiffs fail to assert claims for mail and wire fraud, such transactions neither involve nor are being used to continue or conceal the "proceeds of some form unlawful activity," and are therefore not a predicate act for purposes of Plaintiffs' RICO claim.[40] Further, Plaintiffs do not assert any facts to support their vague assertions that the Foundation "improperly transferred" funds to the NRA (Compl 58-59) or that the NRA used Foundation funds on improper "lobbying purposes" and other unlawful purposes. (Compl. ¶16-165). Such bare conclusions are insufficient to state a claim for relief, especially in the fraud context.[41]

*iii. Plaintiffs fail to plead causation.*

A plaintiff pleading a RICO claim "must allege that the defendant's violation was both a factual and proximate cause of the injury. Factual cause is established whenever a particular outcome would not have happened but-for the purported cause. And in the RICO context,

---

[39] *Oppong v. Owensboro Health Medical Group, Inc.*, 2024 WL 1199446, at *5 (W.D. Ken. Mar. 20, 2024).
[40] 18 USC 1956(a)(1).
[41] *Otworth v. Budnik*, 594 Fed. Appx. 859, 862 (6th Cir. 2014).

proximate cause asks whether the alleged violation led directly to plaintiff's injuries."[42] Although a plaintiff need not plead first person reliance,[43] "a link that is too remote, purely contingent, or indirect is insufficient."[44]

Plaintiffs' vague and conclusory allegation that Dell'Aquila "reasonably relied upon the statements made by the Foundation concerning the proposed use of the solicited funds" and "donated funds [at some point] during the time period" are plainly inadequate to allege causation. (Compl. ¶150-151). As with their fraud claim, Plaintiffs fail to allege which statements, if any, led to which, if any, of Dell'Aquila's donations[45]. Plaintiffs' failure to allege any factual nexus does not satisfy Rule 9(b) and does not adequately allege the causation required to state a claim.

Moreover, Plaintiffs fail to allege how the purported "predicate acts" caused Dell'Aquila to donate funds to the Foundation. As illustrated above, none of the mailings to Dell'Aquila, general statements regarding the Foundation's history and activities, or the unspecified tax filing[46] are alleged to reflect any statements that the funds were to be used only for the purposes purportedly believed. (Compl. ¶21-25, 37-39). Plaintiffs fail to plausibly allege that *any* of the statements attributed to the Foundation (and allegedly caused by the NRA) led to Dell'Aquila to donate based on a belief that the Foundation would spend their funds *only* on the "mission" as Plaintiffs define it.[47] As with Plaintiffs' fraud claim, it is not plausible that these statements caused Dell'Aquila to donate based on a belief that the funds would not be used for *any* other purpose—

---

[42] *General Motors, LLC v. FCA US, LLC* 44 F.4th 548, 558-59 (6th Cir. 2022).

[43] *Heinrich*, 668 F.3d at 404.

[44] *Hemi Group LLC v. City of New York*, 559 US 1 (2010).

[45] *Heinrich,* 668 F.3d at 404 ("a plaintiff must ... 'explain why the statements were fraudulent.' "); *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 at 253 (6th Cir.2012) ("[n]owhere does it indicate when, where, or to whom the alleged misstatement was made").

[46] No allegation that Dell'Aquila ever saw these website statements or the tax filing.

[47] *General Motors*, 44 F.4th at 560 ("reasonable foreseeability may be necessary but it not sufficient").

19

e.g., overhead. Plaintiffs' allegations give them away: Dell'Aquila—the only Plaintiff who allegedly donated to the Foundation—did so in installments, which seems to largely track the cited "reminders" to donate for the same amount. (Compl. ¶38). Those reminders, which "thank" Dell'Aquila for his *prior* pledge and remind him of his *already scheduled* gifts, neither say anything about how the funds will be used nor solicit Dell'Aquila to make a donation he had not already committed to make. (Compl. ¶38).

Perhaps sensing the futility of their allegations, Plaintiffs point to statements on the Foundation's website in hopes that it might create enough uncertainty to withstand dismissal. However, although Plaintiffs assert that the Foundation's website made representations as to the use of funds, Plaintiffs only vaguely allege that Dell'Aquila "visited the website during class period," without any allegation that he viewed even a single one of the statements cited. (Compl. ¶40). That allegations does not support a reasonable inference that those statements were the but-for and proximate cause of the alleged injuries.[48] Moreover, Plaintiffs' failure to allege *when* Dell'Aquila allegedly viewed the website occurred highlights another causation problem: if he only accessed the website after he made the donations, the statements cannot have caused him to make a donation.

Plaintiffs' pleading deficiencies merit dismissal of the RICO claim.

**C.  Plaintiffs fail to state a claim for RICO conspiracy.**

In order to state a claim for RICO conspiracy, a plaintiff must adequately plead an underlying RICO violation as well as "the existence of an illicit agreement to violate the substantive RICO provision."[49] The existence of an agreement may be shown where the defendant

---

[48] *Id.*
[49] *Heinrich*, 668 F.3d at 411.

"objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise."[50]

As an initial matter, a RICO conspiracy claim fails if the underlying RICO claim fails.[51] Because Plaintiffs fail to plead violations of RICO, they also fail to state a claim for RICO conspiracy. Plaintiffs' conspiracy claim also fails because they fail to allege that the NRA "objectively manifested an agreement to participate" in the RICO enterprise. As argued above, although Plaintiffs allege facts to support an inference that the NRA may have been aware of internal policy and tax reporting issues, they fail to allege facts supporting an inference that the NRA was aware of a fraudulent enterprise based on misrepresentations to donors.

Plaintiffs' RICO conspiracy claim should be dismissed.

## D. Plaintiffs' claim for breach of contract fails.

### i. Plaintiffs' claim for breach of contract is time barred.

In Tennessee, a claim for breach of contract has a six-year statute of limitations.[52] Plaintiffs claim is based on the NRA's alleged breaches of promises purportedly reflected in solicitations for donations. (Compl. ¶129-133). Plaintiffs' breach of contract claim was brought for the first time on June 30, 2023. (Dkt. 131-1). As a result, any claim based on conduct predating June 30, 2017 is time barred.  Numerous of Plaintiffs' allegations involve alleged breaches based on donations made prior to June 30, 2017. (Compl. ¶52-54).  Any claims for breach arising prior to that date are time barred.

Rule 15(c), which provides for an amendment to "relate back" to the date of the original pleading when the amendment asserts a claim based on the conduct, transaction, or occurrence set

---

[50] *Id.*
[51] *See Courser v. Mich. House of Rep.*, 831 F.App'x 161, 187 (6th Cir. 2020).
[52] Tenn. Code Ann. 28-3-109(a)(3).

out in the original pleading, does not save the time-barred claims. In construing Rule 15(c), courts "ask whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading."[53] The original complaint, First Amended Complaint, and Second Amended Complaint did not plead the existence of a contract between NRA and Plaintiffs—a crucial element of Plaintiffs' breach of contract claim. Because Plaintiffs' prior allegations did not put the NRA on notice of the newly asserted claim, the amendment does not relate back, and is time barred.[54]

 *ii. Plaintiffs fail to state a claim for breach of contract.*

In order to state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract, (2) plaintiff performed under the contract, (3) defendant breached the contract, and (4) damages.[55]

Plaintiffs assert that the NRA "promised to use for lawful purposes and to promote the mission of the NRA." (Compl. ¶130). Plaintiffs sent the NRA donations based on those promises. The NRA breached by "misusing the donated funds, including, without limitation, by paying for lavish personal expenses of NRA executives." (Compl. ¶132).

Plaintiffs' fail to adequately allege the elements of the claim.[56] Instead, Plaintiffs allege the elements of the claim in a strictly conclusory fashion, which is insufficient to withstand a motion

---

[53] *Innovation Ventures, LLC v. Custom Nutrition Laboratories, LLC*, 912 F.3d 316, 333-34 (6th Cir. 2018) (antitrust claim did not relate back because original pleading failed to allege a core element of the new claim).

[54] *United States ex rel. Whitcomb v. Physiotherapy Assocs., Inc*., 555 F. Supp. 2d 949, 953 (W.D. Tenn. 2008) (finding no relation back because the original complaint failed to allege the newly asserted claim.)

[55] *Thornton v. Dutch Naturals Processing, LLC*, 629 F.Supp.3d 777, 787 (M.D. Tenn. 2022).

[56] *See Northampton Rest. Group., Inc. v. FirstMerit Bank, N.A*., 492 F. App'x 518, 522 (6th Cir. 2012) "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.")

to dismiss.[57] Plaintiffs fail to allege the formation of what they assert are numerous contracts between the NRA and Plaintiffs, because they fail to allege any specific promises made by the NRA as well as whether and how Plaintiffs accepted or performed.[58] As illustrated in Section IV(A), the NRA made no promises of future performance to Plaintiffs upon which a contract could be based. Unsurprisingly, Plaintiffs also fail to allege the terms of any purported contracts between the parties, which also results in a failure to plead breach and how such breach caused any harm to Plaintiffs.[59] As a result, Plaintiffs' breach of contract claim should be dismissed.

**E. Plaintiffs' claim for tortious interference with contract fails.**

    *i.  Plaintiffs' claim for tortious interference with contract is time-barred.*

In Tennessee, a claim for tortious interference with contract has a three-year statute of limitations.[60] Plaintiffs claim tortious interference based on the NRA allegedly causing the NRA Foundation to breach between the NRA Foundation and Plaintiffs. (Compl. ¶134-139). Plaintiff's first plead facts in support of their tortious interference claim on December 29, 2023. (Dkt. 152-1). As a result, any tortious interference claims arising before December 29, 2020 are time barred.

---

[57] *See Shaw v. FSGBank, N.A.*, 2015 WL 5169155, at *6 (Tenn. App. 2015); *Modesty v. Shockley*, 434 F. App'x 469, 472 (6th Cir. 2011).

[58] *See Pritchard v. Thompson*, 2023 WL 5817658 (W.D. Tenn. Aug. 3, 2023), *rep. & rec. adopted*, 2023 WL 5746922 (W.D. Tenn. Sept. 6, 2023) (dismissing breach of contract claim because "[t]here are no facts that detail an offer, acceptance, and consideration, nor is it clear what was promised by each party…").

[59] Plaintiffs' previously cited cases involve donations made for a specific use, i.e., "restricted." *See Reg. v. Nature Conservancy*, 2014 WL 6909042, at *6 (E.D. Ky. Dec. 9, 2014) (donor offered with explicit conditions as to use); *Dunaway v. First Presbyterian Church of Wickenburg*, 103 Ariz. 349, 351 (1968) (same). Here, there is no allegation that the donations were "restricted" to certain uses by the donors. *See Vendeven v. Wyndham Vacation Resorts, Inc.,* WL 5567033 (M.D. Tenn. Nov. 29, 2021) (dismissing breach of contract claim because "the Complaint… does not identify any particular contractual obligation that any particular defendant failed to satisfy"); *Foster v. Health Recovery Servs.*, 493 F.Supp.3d 622, 640 (S.D. Ohio 2020) (observing that "[t]he Sixth Circuit does not permit a party to allege, in a cursory manner, the existence of a contract without citing to specific language that was allegedly breached").

[60] *Gifford v. City of Gatlinburg*, 900 X.W.2d 293, 295 (Ct. App. Tenn. 1995)

23

Here, all relevant conduct is alleged to have occurred prior to 2020. As a result, the claims are untimely. Again, Rule 15(c) does not save Plaintiffs' claim, because no prior pleading alleged the existence of a contract between the Foundation and Plaintiffs, nor that the NRA exercised so much control as to cause the breach. Because Plaintiffs' prior allegations did not put the NRA on notice Plaintiffs' new claim, the amendment does not relate back, and is time barred.[61]

    *ii. Plaintiffs' fail to state a claim for tortious interference with contract.*

A plaintiff asserting a claim for tortious inference with contract must allege the following elements: "(1) that there was a legal contract; (2) that the defendant knew of the existence of the contract; (3) that the defendant intended to induce a breach of the contract; (4) that the defendant acted maliciously; (5) that the contract was actual breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that the plaintiff suffered damages resulting from the breach."[62]

Plaintiffs assert that the NRA Foundation and Plaintiffs were party to contracts based on the NRA Foundation's promises to "use the donated funds for lawful purposes and to promote the mission of the NRA Foundation." (Compl. ¶135). The NRA and LaPierre tortiously interfered by "us[ing] [their] influence over the Foundation to cause it to breach the contracts that were formed, including, without limitation, by paying for lavish personal expense of NRA executives, as set out above." (Compl. ¶137).

Plaintiffs fail to allege numerous elements of the claim. As an initial matter, Plaintiffs fail to allege that the NRA Foundation made any promises to Plaintiffs and as a result fail to plead the

---

[61] *Whitcomb.*, 555 F. Supp. 2d at 953.
[62] *Kieth v. Aerus, LLC*, 2010 WL 3883434, at *4 (E.D. Tenn. Nov. 29, 2010) ("knowledge alone by defendant is [not] sufficient to show intent and malice." )

existence of contracts with which the NRA purportedly interfered.[63] Consequently, Plaintiffs also fail to allege that the NRA knew of any contract between Plaintiffs and the Foundation, that the NRA intended to induce any breach, and that there was breach in fact and proximate cause of any harms.[64]

Plaintiffs also fail to allege that the NRA acted maliciously in interfering with any contracts. In order to plead malice, a plaintiff must allege that defendant acted intentionally and without legal justification, which requires allegations that the defendant acted with the indirect purpose of injuring plaintiff or benefitted the defendant at plaintiff's expense.[65] As shown in Section IV(B) above, Plaintiffs fail to allege beyond mere conclusions that the Foundation's transfers to the NRA were unlawful. Nor do Plaintiffs allege facts to support an inference that the transfers from the Foundation were for the explicit purpose of inuring Plaintiff.[66] And, while Plaintiffs may have alleged that LaPierre benefitted at Plaintiffs' expense, the facts alleged do not support a similar conclusion that the NRA benefited as well.

Plaintiffs' failure to allege these necessary elements of the claim merits dismissal.

---

[63] *See Shaw v. FSGBank, N.A.*, 2015 WL 5169155, at *6 (Tenn. App. 2015); *Modesty v. Shockley*, 434 F. App'x 469, 472 (6th Cir. 2011).

[64] *Thompson v. Bank of America, N.A.*, 773 F.3d 741 (6th Cir. 2014) (plaintiffs who merely asserted that a contract existed failed to state a claim for intentional interference with the contractual relations absent any allegations identifying the contract).

[65] *Santoni v. Mueller*, 2022 WL 97049, at *10 (M.D. Tenn. Jan. 10, 2022); *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 760 (M.D. Tenn. 2019) (although Federal Rule of Civil Procedure 9(b) permits a party to allege "generally" "[m]alice, intent, ... and other conditions of a person's mind," "factual allegations corroborating Defendant's malicious intent are still necessary.")

[66] *Vanderbilt Univ.*, 382 F. Supp. 3d at 760. (knowledge may be "relevant to the question of intent, but simple knowledge of the contract cannot be automatically equated with intent to induce a breach. What plaintiff must allege is plausible facts to show an intent to induce a breach.")

## V.   CONCLUSION

For the foregoing reasons, the NRA respectfully requests an order dismissing Plaintiffs'

Third Amended Complaint in its entirety with prejudice and any other relief as is just and proper.

Date: August 2, 2024

Respectfully submitted,

By: */s/ William A. Brewer*
William A. Brewer (admitted *pro hac vice*)
Malvina Palloj (admitted *pro hac vice*)
**BREWER, ATTORNEYS &
COUNSELORS**
750 Lexington Ave, Floor 14s
New York, NY 10013
Phone:  212-489-1400
wbb@brewerattorneys.com
mpalloj@brewerattorneys.com
*Attorneys for Defendant*

Wallace A. McDonald
BPR No. 016210
LACY, PRICE & WAGNER, P.C.
249 N. Peters Rd.
Suite 101
Knoxville, TN 37923
Phone:  865-246-0800
Email: amcdonald@lpwpc.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, William A. Brewer, hereby certify that I caused a true and exact copy of the foregoing

to be electronically filed with the Clerk of the Court on August 2, 2024, using the CM/ECF system,

which will send notification to all counsel of record as listed below.

John R. Wingo, Esq.
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Email: john.wingo@stites.com

Thomas M. Hanson
Michael Kanovitz
Jonathan I. Loevy
Jordan Cosby Poole
Julia Rickert
Heather Elizabeth Sticht
Loevy & Loevy
311 N Aberdeen Street
Third Floor
Chicago, IL 60607
Email: hanson@loevy.com
Email: mike@loevy.com
Email: jon@loevy.com
Email: poole@loevy.com
Email: julia@loevy.com
Email: sticht@loevy.com

Elizabeth C. Wang
Loevy & Loevy
2060 Broadway
Suite 460
Boulder, CO 80302
Email: elizabethw@loevy.com

Wallace Allen McDonald, Esq.
Lacy, Price & Wagner, P.C.
249 North Peters Rd.
Suite 101
Knoxville, TN 37923
Email: amcdonald@lpwpc.com

Malvina Palloj

27

Brewer, Attorneys & Counselors
750 Lexington Ave.
14th Floor
New York, NY 10022
Email: mpalloj@brewerattorneys.com


Dated: August 2, 2024                          Respectfully submitted

                                               */s/William A. Brewer*
                                               William A. Brewer