IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID DELL'AQUILA, LORANNDA BORJA, TODD CHESNEY, and BRENT WEBER, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )   NO. 3:19-cv-00679<br>) |
| v. | )   JUDGE CAMPBELL<br>)   MAGISTRATE JUDGE FRENSLEY<br>) |
| THE NATIONAL RIFLE ASSOCIATION OF AMERICA, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant The National Rifle Association of America's ("NRA") motion to dismiss the Third Amended Complaint. (Doc. No. 168) Plaintiffs David Dell'Aquila, Lorannda Boja, Todd Chesney, and Brent Weber (collectively, "Plaintiffs") filed a response in opposition to the motion to dismiss (Doc. No. 171), and the NRA filed a reply (Doc. No. 172). The NRA also filed a motion for oral argument, which is unopposed. (Doc. No. 180).

The Court finds oral argument is not necessary to resolve the pending motion. Accordingly, the motion for oral argument (Doc. No. 180) will be **DENIED**. For the reasons stated below, the NRA's motion to dismiss will be **DENIED**.

### I.   BACKGROUND

Plaintiffs allege the NRA solicited and caused the NRA Foundation to solicit membership and donations by claiming membership fees and donations would be used to advance the mission of the NRA, and then used a significant portion of the donated funds for purposes unrelated to that mission, including for lavish personal expenses of NRA President Wayne LaPierre. (Third

Amended Complaint ("TAC"), Doc. No. 64). Plaintiffs claim the NRA conspired with its CEO Wayne LaPierre and advertising agency Ackerman McQueen to solicit fraudulent donations to the NRA Foundation and "employed a series of schemes to launder the proceeds of these fraudulent solicitations," including transferring money donated to the NRA Foundation to LaPierre and Ackerman McQueen for LaPierre and his family's personal use, and to evade restrictions on lobbying by 501(c)(3) organizations. (*Id*. at ¶¶ 174-183).

In the Third Amended Complaint, Plaintiffs bring claims against the NRA for fraud, breach of contract, tortious interference with contract, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*., and RICO conspiracy. The NRA seeks to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed under Rule 12(b)(6). *Id*. at 683.

### III. ANALYSIS

#### A. Fraud

The Court already considered and denied the NRA's motion to dismiss Plaintiffs' fraud claim as set forth in the Second Amended Complaint. (*See* Memorandum Opinion, Doc. No. 63). The allegations in the Second Amended Complaint supporting Plaintiffs' fraud claim are substantially similar to those set forth in the Third Amended Complaint. (*Compare* Doc. Nos. 43, 164). The Court is not persuaded to revisit the prior ruling. Accordingly, for the reasons set forth in the previous Memorandum Opinion and Order (Doc. Nos. 63, 64), the Court concludes that Plaintiffs have sufficiently alleged a claim for fraud.

## B. Relation Back of Amendments

Defendant argues that Plaintiffs' breach of contract and tortious interference claims, which were added on June 30, 2023, do not relate back to the date of the original complaint for purposes of the statute of limitations and therefore must be dismissed in whole or in part.

Relation back of an amendment is governed by Federal Rule of Civil Procedure 15(c), which provides that an amendment relates back to the date of the original pleading when the amendment asserts a claim based on the conduct, transaction, or occurrence set out in the original pleading. Courts "ask whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Innovation Ventures, LLC v. Custom Nutrition Laboratories, LLC*, 912 F.3d 316, 333-34 (6th Cir. 2018). "The rule is based on the notion that once litigation involving particular conduct[,] ... transaction[,] or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of ... claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." *Whitcomb*, 555 F. Supp. 2d at 953 (citing *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999)). The rule is "liberally construed." *Id*. (citing *United States ex rel. Bledsoe v. Cmty. Health Sys.,* 501 F.3d 493, 516 (6th Cir.2007)).

Defendant argues it was not on notice that it would be called to answer for breach of contract and tortious interference claims because Plaintiffs' prior allegations did not plead the existence of a contract between Plaintiffs and the NRA or the NRA Foundation. (Doc. No. 167 at 22 (citing *United States ex rel. Whitcomb v. Physiotherapy Assocs., Inc*., 555 F. Supp. 2d 949, 953 (W.D. Tenn. 2008), and *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 333-34 (6th Cir. 2018)). Plaintiffs respond that the newly added claims relate back to the date of the original complaint because they are based on the same core facts: the NRA solicited donations

from Plaintiffs by promising the funds would be spent on the NRA's mission and then breached that promise by instead spending the funds on "LaPierre's lavish lifestyle." (Doc. No. 171 at 17). Plaintiffs argue that the new claims are merely a new legal theory based on the same facts as the original complaint and seeking the same damages. (*Id.*).

Generally, "[a] court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence." *See Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000). Defendant is correct that Plaintiffs did not expressly plead the existence of a contract in earlier pleadings, but the factual allegations from which the existence of a contract can be inferred were included in the original complaint. (*See* Doc. No. 1, ¶ 11 ("Defendants solicited donations from [Plaintiffs]. In their solicitations, Defendants alleged that the donations would be used for [the NRA's "core mission." … "Instead of spending the money on the solicited purposes, Defendants use significant portions of the donated funds for purposes unrelated to the NRA's core mission.").

The cases relied upon by Defendant are distinguishable. In *Innovation Ventures*, the court found that the newly added antitrust claim did not relate back to the original complaint because it was based on new factual allegations. *Innovation Ventures*, 912 F.3d at 334 (noting the factual allegations that "might establish an antitrust injury" "were absent from the original and first amended counterclaims"). In *Whitcomb*, the court found the newly asserted retaliation claim did not relate back because the "original complaint [was] devoid of any facts or allegations" to support the newly added claim. *Whitcomb*, 555 F. Supp. 2d at 953.

Unlike in *Innovation Ventures* and *Whitcome*, Plaintiffs' breach of contract and tortious interference claims are based on the same core operative facts as prior claims, therefore, they relate back to the original pleading under Fed. R. Civ. P. 15(c).

5

Case 3:19-cv-00679    Document 186    Filed 03/26/25    Page 5 of 15 PageID #: 2536

### C. Breach of Contract

Under Tennessee law,[1] the elements of a breach of contract claim are: (1) the existence of an enforceable contract; (2) nonperformance amounting to breach of the contract; and (3) damages caused by the breach of contract. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc*., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). "In Tennessee and generally, two essential elements in the formation of a valid contract are (1) consideration and (2) mutual assent." *Sevier Cty. Schs. Fed. Credit Union v. Branch Banking and Trust Co*., 990 F.3d 470, 476 (6th Cir. 2021) (citing *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.,* 160 S.W.3d 521, 524 (Tenn. 2005)). "A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, [must be] free from fraud or undue influence, [must] not [be] against public policy and [must be] sufficiently definite to be enforced.'" *Id*.

The NRA argues Plaintiffs fail to adequately allege the elements of a claim for breach of contract and instead allege the elements in a "strictly conclusory fashion" without alleging "any specific promises made by the NRA as well as whether and how Plaintiffs accepted or performed." (Doc. No. 167 at 22-23).

Plaintiffs argue they have adequately alleged a claim for breach of contract. Plaintiffs point to allegations that the NRA mails a dues renewal notification to all members that includes a

---

[1] The parties rely upon Tennessee law for the state law claims. (*See* Doc. No. 167 at 7-13, 21-29). However, the Court notes that although Tennessee is the forum state, that does not mean that Tennessee contract law necessarily applies to the contract claims. Instead, the Court applies the choice of law rules of the forum state, which in this case is the rule of "lex loci contractus" – a contract is presumed to be governed by the law of the jurisdiction in which it was executed. *See Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). Here, only two of the four named Plaintiffs reside in Tennessee and the NRA is incorporated in New York and has a principal place of business in Delaware. It appears unlikely that contracts formed between the NRA and Plaintiffs in states other than Tennessee are subject to Tennessee law. Nevertheless, at this juncture, none of the parties have identified material differences between Tennessee law and the law of other potentially applicable jurisdictions. Accordingly, for purposes of the motion to dismiss, the Court will assume that Tennessee law applies.

"Uniform Disclosure Statement" which states that "Contributions raised will be used to advance the mission of the NRA." (Doc. No. 171 at 18 (citing TAC ¶ 43)). The NRA also solicits donations through its website, which contains the same statement. (*Id*. at 18-19 (citing TAC ¶¶ 43-45)). Plaintiffs contend this statement sets forth a contractual promise to use donated funds to advance the mission of the NRA, that Plaintiffs and other donors accepted this offer by sending donations, and that the NRA breached the promise by using the solicited funds for purposes not in furtherance of the NRA's mission. (*Id*. at 19 (citing TAC ¶ 131)).

Defendant argues Plaintiffs failed to allege facts to support a plausible inference that they relied upon the NRA's "Uniform Disclosure Statement" that it would use all donations in support of its mission, and that any promise implicit in the Uniform Disclosure Statement cannot form the basis of a contract because it "does not make any representation as to what constitutes the 'mission' [of the NRA]" and therefore lacks "clear terms." (Doc. No. 172 at 5).

Defendant's argument that no contract can be formed because the Uniform Disclosure Statement does not make any representations as to what constitutes the NRA's mission is somewhat disingenuous. This is not a case where Plaintiffs claim some technical deviation from the organizational mission. If it were, the specific mission statement Plaintiffs read and relied upon would be more pertinent. But even if the NRA mission is not described with specificity, this deficiency does not render the terms unclear such that no contract could be formed. Moreover, here, Plaintiffs allege that the NRA publicly states that its mission is to "support firearm-related public interest activities to defend and foster the Second Amendment right of law-abiding Americans,' specifically by 'promot[ing] firearms and hunting safety, enhance[ing] marksmanship skills of shooting sports participants, and educat[ing] the general public about firearms in their

7

historic, technological and artistic context." (*See* TAC ¶¶ 2, 16, 23). This is sufficiently specific to form the basis of a contract.

Plaintiffs have plausibly alleged a claim for breach of contract based on the NRA's solicitation of donations with the express promise that any donations would be used to further its mission and its use of donated funds for purposes unrelated to that mission.

### D. Tortious Interference with Contract.

A claim for tortious interference with contract under Tennessee law requires Plaintiffs show the following:[2] "(1) that there was a legal contract; (2) that the defendant knew of the existence of the contract; (3) that the defendant intended to induce a breach of the contract; (4) that the defendant acted maliciously; (5) that the contract was actually breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that the plaintiff suffered damages resulting from the breach." *Lee v. State Volunteer Mut. Ins. Co.,* 2005 WL 123492 (Tenn. Ct. App. 2005) (unreported) (citing *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.,* 13 S.W. 3d 343, 359 (Tenn. Ct. App. 1999)).

Plaintiffs' claim for tortious interference with contract is based on the NRA's alleged interference with contracts between Plaintiffs and the NRA Foundation whereby the NRA Foundation solicited donations with a promise to use those donations to further the mission of the NRA. (TAC ¶ 135). Plaintiffs contend "the NRA, which effectively controlled the NRA Foundation, caused the Foundation to make the promises set out above and used its influence over the Foundation to cause it to breach the contracts that were formed, including [] by paying for

---

[2] As explained *supra, note 1*, for purposes of this motion, the parties assume Tennessee law applies to the state law claims. Tennessee applies the "most significant relationship" approach for conflict-of-law analysis with regard to tort claims. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). Here the parties have not engaged in any conflict-of-law analysis, and the Court declines to do so *sua sponte*. Accordingly, as with the breach of contract claim, for purpose of this motion, the Court applies Tennessee law.

8

lavish personal expense of NRA executives." (*Id.* ¶ 137). Plaintiffs allege "Defendant NRA and its CEO LaPierre were aware of the contracts formed between the NRA Foundation and the members of the NRA Foundation class and acted maliciously to induce the Foundation to breach those contracts." (*Id.* ¶ 138).

Defendant argues Plaintiffs have not adequately alleged the existence of a contract between Plaintiffs and the NRA Foundation because they failed to allege the NRA Foundation made any promises to Plaintiffs; therefore, Plaintiffs necessarily fail to adequately allege the NRA knew of a contract and that there was a breach. Further, Defendant argues Plaintiffs fail to allege that the NRA intentionally induced a breach or that it did so with malice.

Plaintiffs' allegations concerning contracts with the NRA Foundation are substantially the same as its allegations concerning contracts with the NRA. (*See* TAC ¶¶ 3, 23, 27, 47, 135). For the reasons discussed above, the Court finds Plaintiffs have plausibly alleged the existence of a contract with the NRA Foundation and breach of that contract.

"[T]o properly plead malice in a tortious interference claim, Plaintiff must allege that Defendant acted intentionally and without legal justification." *Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049, at *10 (M.D. Tenn. Jan. 10, 2022) (citing *Clippinger v. Audatex N.A., Inc.*, No. 2:20-cv-0250, 2021 WL 1823117, at *3 (W.D. Tenn. May 6, 2021)). Interference is without justification if it is done "for the indirect purpose of injuring plaintiff or benefiting the defendant at the plaintiff's expense." *Id.* (citing *Crye-Leike Realtors, Inc. v. WDM, Inc.*, No. 02A01-9711-CH-00287, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998)). A general allegation of malice is sufficient under the federal pleading rules. *See* Fed. R. Civ. P. 9(b).

Defendants argue that nothing in the allegations suggests that the NRA acted with the indirect purposes of injuring Plaintiffs or that the NRA itself benefitted from using its funds for

9

the benefit of LaPierre. Plaintiff responds that its "detailed allegations of the decades of fraud and money laundering" by the NRA support an inference that the NRA acted with malice.

Plaintiffs' allegation that the NRA misappropriated funds from the NRA Foundation, used those funds for purposes unrelated to the NRA's mission, and concealed the misuse of funds by funneling the money through Ackerman McQueen satisfies the pleading requirement. (TAC ¶¶ 57-76). Defendant's contention that these allegations are insufficient to establish malice because the funds were misused and therefore did not benefit the NRA, is unpersuasive. At the very least, the NRA's approval of such expenditures raises a plausible inference that it benefitted from the expenditure and, because the funds were those donated by Plaintiffs to support the NRA mission, one can also infer that the benefit to the NRA was at Plaintiffs' expense.

### E. RICO

"To prevent organized crime from 'obtaining a foothold in legitimate business,' Congress created a civil cause of action for RICO violations." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013). RICO, 18 U.S.C. § 1961, *et seq.*, provides that it shall be unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). To state a claim under the statute, a plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *ClassicStar*, 727 F.3d at 483. Racketeering activity includes acts that are indictable under the federal statutes listed in 18 U.S.C. § 1961(1)(B). Here, Plaintiffs allege as predicate acts of racketeering activity: mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and money laundering, 18 U.S.C. § 1956.

In support of the RICO claim, Plaintiffs allege the NRA and LaPierre "knowingly participated in the conduct of the NRA Foundation's affairs with the unlawful purpose of

defrauding Plaintiff Dell'Aquilla and the NRA Foundation Class by misappropriating their donation money for the benefit of [the NRA], and for the benefit of its associates, and by laundering money with the purpose of perpetuating this scheme." (*Id*. ¶ 144). Plaintiffs allege that in furtherance of the scheme, the NRA committed "multiple acts of mail and wire fraud, in violation of 18 U.S.C. § 1341 and 1343, and money laundering, in violation of 18 U.S.C. § 1956," and that these acts constitute a pattern of racketeering activity. Plaintiffs claim the NRA and LaPierre caused the NRA Foundation to solicit funds from Dell'Aquilla and others by means of the United States Postal Service, electronic mail, and the NRA Foundation's website, and advised that the funds would be used to advance the NRA Foundation's "gun rights' mission," knowing that the funds would not in fact be used for that purpose. (*Id*. ¶¶ 148, 149, 153). Plaintiffs further allege the NRA and LaPierre used "pass-through arrangements" with Ackerman McQueen to conceal and perpetuate the fraud. (*Id*. ¶ 157).

Defendant argues Plaintiffs have not adequately pleaded the underlying predicate offenses of mail fraud, wire fraud, or money laundering, and have not adequately alleged causation. The Court begins with the alleged predicate offenses of mail and wire fraud.

Mail fraud consists of "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Heinrich*, 668 F.3d at 404 (citing *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). "The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud." *Id*. (citing *United States v. Daniel*, 329 F.3d 480, 486 n.1 (6th Cir. 2003)). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id*. (quoting *Jamieson*, 427 F.3d at 402).

"When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id*. (citing *Frank v. Dana Corp*., 547 F.3d 564, 570 (6th Cir. 2008)). "A plaintiff must also establish scienter to establish a scheme to defraud, which is satisfied by showing the defendant acted with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Id*. (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). A general averment of the sender's "knowledge" of material falsity is insufficient "unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Heinrich*, 668 F.3d at 406 (citing *Greenstone v. Cambex Corp*., 975 F.2d 22, 25 (1st Cir. 1992)).

Plaintiffs point to three mail communications from the NRA Foundation "reminding" Dell'Aquilla of his "pledge commitment of $100,000 to the NRA Foundation's Leadership Fund Endowment" and of his scheduled gift of $20,000. (*Id*. ¶ 38). Plaintiffs allege these communications stated that the donated funds will be used for the NRA Foundation's Leadership Fund Endowment. (*Id*. ¶ 39). The same communications directed the recipient to the NRA Foundation website itself solicited funds and stated that "all funds generated will go directly to the support of firearm-related activities and preserving our cherished right to bear arms." (*Id*. ¶ 46). Plaintiffs allege the NRA and LaPierre employed "pass-through arrangements" with Ackerman McQueen to "evade scrutiny of their improper personal expenditures and fraudulent scheme to perpetuate those improper expenditures." (*Id*. ¶ 157).

Defendant argues letters sent from the NRA Office of Advancement cannot form the basis for the underlying fraud claim because they do not contain solicitations or promises regarding the

12

use of funds and there is no allegation that the author of the letters from the NRA Office of Advancement knew that statements concerning the use of funds were false. (Doc. No. 167 at 16). Defendant contends that the letters are mere reminders of funds already pledged and that the implication that the funds will be used for NRA Foundation's Leadership Fund Endowment is not a commitment that the funds will be used to further the mission of the NRA.

With regard to funds solicited via the NRA Foundation's website, Defendant acknowledges there are "certain statements on the Foundation's website regarding the use of funds," but argues these statements do not support a claim for wire fraud because Plaintiffs have not alleged that the NRA Foundation defines a "mission" or promised to "spend all donated funds on it." (Doc. No. 167 at 17). Defendant also argues that the TAC contains no allegations that the NRA Foundation had knowledge or acted with reckless disregard as to the truth of representations concerning the use of donated funds and that Plaintiffs have not "alleged causation with respect to these limited statements." (*Id.*).

Plaintiffs plausibly allege that the letters represent that the funds donated will be used for "The NRA Foundation's Leadership Fund Endowment" and that the funds were not used for that purpose. (TAC ¶ 39). Instead, donated funds were "routinely transferred to the NRA without oversight and were then used for illicit purposes." (*Id.*). Although the ultimate question of whether the letters contain misrepresentations concerning the use of funds will be for the trier of fact, at this juncture, viewing the allegations in the light most favorable to Plaintiffs, the mailed communications could be viewed as a solicitation of funds for the NRA Foundation's Leadership Fund Endowment.

Likewise, Plaintiff has adequately alleged that the NRA Foundation's website solicits funds and promises that donated funds will be used "to provide funding for essential firearm related

13

programs of the NRA and other organizations that defend and foster the Second-Amendment rights of all law-abiding Americans" and that "all funds generated will go directly to the support of firearm-related activities" and that the donated funds were not, in fact, used for the stated purpose. (TAC ¶¶ 46, 57-86).

Plaintiffs' allegation that the NRA Foundation is controlled by the NRA provides a sufficient basis from which to infer that the soliciting party knew that the NRA would use the funds for purposes other than those promised. (*See* TAC ¶¶ 26, 61, 137, 149).

Defendant next argues that Plaintiffs have not plausibly alleged that its conduct was a factual and proximate cause of the injury: "Plaintiffs' vague and conclusory allegation that Dell'Aquilla 'reasonably relied upon the statements made by the Foundation concerning the proposed use of the solicited funds' and 'donated funds [at some point] during the time period' are plainly inadequate to allege causation." (Doc. No. 167 at 19). The Court disagrees. Indeed, Defendant acknowledges that Dell'Aquilla's donations "largely 'track' the [] 'reminders' to donate for the same amount." (*Id*. at 20). It is therefore plausible that the "reminders" caused him to make donations. It is also plausible that the statements on the website, which echo the statement in mailed solicitations concerning the use of funds cause Plaintiffs and others to make donations.

The Court finds Plaintiff has sufficiently pleaded predicate acts of mail and wire fraud based on the conduct described above. Because Plaintiffs have sufficiently alleged predicate acts of mail and wire fraud, the Court does not separately consider whether Plaintiffs have also alleged money laundering as a predicate act.

**F. RICO Conspiracy**

To plausibly state a claim for RICO conspiracy, 18 U.S.C. § 1962(d), Plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an

illicit agreement to violate the substantive RICO provision.'" *Heinrich*, 668 F.3d at 411 (citing *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

Defendant argues the RICO conspiracy claim fails for two reasons: (1) because the because the underlying RICO claims fails; and (2) because Plaintiffs fail to allege that the NRA "objectively manifested an agreement to participate" in the RICO enterprise, specifically, that the NRA was "aware of a fraudulent enterprise based on misrepresentations to donors." (Doc. No. 167 at 21).

As discussed above, Plaintiffs have sufficiently alleged a RICO claim. With regard to Defendant's second argument, Plaintiffs point to allegations that the NRA "agree[d] to participate in the conduct of the affairs of the NRA Foundation enterprise through a pattern of racketeering activity," specifically, that NRA had a "decades-long arrangement pursuant to which the NRA solicited funds through the [NRA Foundation] under false pretenses, transferred those funds to the NRA, and laundered them through Ackerman [McQueen] to support Mr. LaPierre's extravagance." (Doc. No. 171 at 16; TAC ¶¶ 58-76, 147-153; 177). For purposes of the motion to dismiss, these allegations are sufficient to plausibly allege that the NRA "objectively manifested an agreement to participate" in the RICO enterprise.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (Doc. No. 168) is **DENIED**. An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE